**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| In re ACCREDO HEALTH, INC.<br>SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | )<br>)<br>)<br>)<br>)   Civil Action No. 03-CV-2216-BBD<br>)<br>)          <u>CLASS ACTION</u><br>) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Accredo Health, Inc. ("Accredo"), David D. Stevens, and Joel R. Kimbrough (collectively, "Defendants"), respectfully submit this Memorandum in Opposition to Lead Plaintiffs' Motion for Partial Summary Judgment ("Motion" or "Pls.' Mot.") (Docket No. 360).

### I.   <u>INTRODUCTION</u>

Plaintiffs' Motion should be denied because they have not satisfied their burden of proof with respect to the two elements on which they seek summary judgment – materiality and loss causation.[1] As an initial matter, Plaintiffs concede that they cannot satisfy their burden of proof as to the element of a material misstatement regarding the allowance for doubtful accounts receivable ("A/R Reserve"), because they acknowledge that they cannot produce evidence sufficient to prove any of their alleged misstatements as a matter of law. (Pls.' Mot. at 7 n. 5.) Notwithstanding, Plaintiffs request that the Court grant summary judgment on the materiality of

---

[1] Plaintiffs' Motion contains multiple inaccuracies. For example, Plaintiffs cite *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 681 (6th Cir. 2005), for the proposition that summary judgment is appropriate as to the element of materiality. (Pls.' Mot. at 7.) The *Bridgestone* opinion, however, was decided at the motion to dismiss stage and does not discuss the circumstances under which a finding of materiality on summary judgment would be appropriate. Rather than expend unnecessary space and time on these inaccuracies, Defendants herein instead focus on the substance of Plaintiffs' Motion and their overall inability to satisfy their burden of proof.

alleged misstatements that they acknowledge they cannot yet prove. But, materiality cannot be analyzed in a vacuum. Rather, the issue of materiality is a fact intensive inquiry that is inherently contextual and necessarily dependent on the establishment of each alleged misstatement. Where, as here, the alleged misstatements relate to an A/R Reserve estimate, a determination of whether Plaintiffs can satisfy their burden of proving, as they must, that each separate alleged misstatement was material when made cannot be made as a matter of law absent a statement-by-statement analysis of both the magnitude of each alleged understatement and the probability of its occurrence at any given point during the Class Period. Plaintiffs fail to conduct such an analysis.

Indeed, Plaintiffs do not even attempt to apply the legal standard applicable to proving the element of materiality! Instead, they attempt to argue that, because the one-time charge ultimately recorded by Accredo in the 3rd Quarter of fiscal year 2003 (the determination of which was made after the close of the Class Period), was material in amount, then each of the earlier alleged misstatements (which they admit they cannot prove), was necessarily also material when made. This 20-20 hindsight view, however, is a red herring. The evidence shows that Plaintiffs cannot even arguably satisfy their burden of proof as to the element of materiality until April 2003 at the earliest, which is precisely when Accredo made its announcement of a potential A/R Reserve issue, along with its simultaneous, but unrelated, announcement revising revenue and earnings per share ("EPS") guidance. Merely reiterating the amount of the charge that Accredo ultimately recorded in an attempt to prove the materiality of the alleged misstatements is both legally and factually insufficient. Instead, the law requires that Plaintiffs prove that a material amount should have been recorded <u>at each prior period for each of their</u>

<u>separate alleged misstatements</u>, which they cannot do because the facts do not support (and actually disprove) such a conclusion.

Contrary to Plaintiffs' assertions, Defendants have not "admitted" the element of materiality as to any of the alleged misstatements. Defendants do agree that the increase in the A/R Reserve ultimately recorded (in 2003) as a change in accounting estimate was material in amount to Accredo's financial statements when announced on May 5, 2003. If it had not been material in amount, it would not have been necessary for Accredo to have adjusted its financial statements. That is a wholly separate issue, however, from whether Plaintiffs can satisfy their burden of proving legal materiality, both in magnitude and probability, at each point in time for each of the separately alleged misstatements *prior* to May 5, 2003, and the facts do not and cannot support such a conclusion. Even if they could, the "truth-on-the-market" defense prevents a finding of materiality.

Similarly, Plaintiffs cannot prove loss causation. Although Plaintiffs contend that Defendants have "admitted" loss causation, they are wrong. Plaintiffs' only support on this point are three events/statements, taken out of context, and made in (1) the complaint filed by Accredo against Ernst & Young, LLP ("E&Y Complaint") in May 2003 (after the Class Period), which was quickly withdrawn only four months later; (2) a PowerPoint presentation prepared at approximately the same time; and (3) a vague statement made during an informal Securities and Exchange Commission ("SEC") inquiry. Each of these has been misconstrued by Plaintiffs, and none of these constitutes an admission of the element of loss causation. Further, none of the statements were intended to speak to what amount, if any, of the decline in Accredo's stock price was attributable to the announcement of the potential A/R Reserve issue, which was disclosed simultaneously with the downward revision of revenue and EPS guidance. Moreover, none of

these alleged "admissions" considered or discussed that the entire amount of the stock price decline could have been attributable to the simultaneous disclosure of the revision of Accredo's revenue and EPS estimates or to other general market factors, as opposed to the potential A/R Reserve issue announcement. To be sure, Defendants' damages expert, Professor Christopher M. James, testified that the amount of the stock price decline attributable to the potential A/R Reserve announcement could have been zero. Because no loss can be attributable to the relevant portion of the disclosure, Plaintiffs cannot prove loss causation. Accordingly, Plaintiffs are not entitled to judgment as a matter of law, and their Motion should be denied.

## II.    ARGUMENT

### A.    Summary Judgment Standard.

Summary judgment is appropriate only when the record evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of proof to show the absence of any genuine issue of material fact; if that burden is satisfied, the nonmoving party bears the burden of producing evidence demonstrating that a genuine issue exists. *Harris v. Bornhorst*, 513 F.3d 503, 509 (6th Cir. 2008). In deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the nonmoving party. *Stavroff v. Meyo*, No. 95-4118, 1997 WL 720475, at *3 (6th Cir. 1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Here, Plaintiffs have not established (nor can they) the critical elements of materiality and loss causation.

### B.    Plaintiffs Cannot Prove Materiality.

Plaintiffs have failed to prove that no genuine issue of material fact remains as to the element of materiality. To prove a securities fraud claim under Section 10(b) and Rule 10b-5, a

plaintiff must establish "(1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001). Statements or omissions in the context of a securities fraud claim are material only if each alleged statement or omission "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). The materiality requirement of Section 10(b) and Rule 10b-5 depends "at any given time upon a balancing of both the indicated probability an event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic*, 485 U.S. at 239 (quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968)); *see also* Expert Report of J. Allen Overby, pp. 11-12, attached as Exhibit A; Expert Report of Professor Randall Thomas, pp. 16-22, attached as Exhibit B.[2] Because Plaintiffs wholly ignore the applicable legal standard, they necessarily fail to satisfy their burden on summary judgment.[3] Further, as Plaintiffs concede, materiality in the context of a securities fraud case is a mixed question of fact and law that is usually reserved for the trier of fact. (Pls.' Mot. at 7; *Brewer v. Lincoln Int'l. Corp.*, 148 F. Supp. 2d 792, 803 (W.D. Ky. 2000) (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998).

      Here, without regard to the applicable legal standards, Plaintiffs ask the Court to make a blanket materiality finding with respect to each of the alleged misstatements, regardless of the

---

[2] Full copies of the expert reports are attached to Defendants' Memorandum in Support of their Motion for Summary Judgment.

[3] Moreover, based on the evidence, Defendants were not in possession of any material non-public information regarding the amount or probability of any A/R Reserve issue until April 2, 2003 at the earliest, which was only a few days before the potential A/R Reserve issue announcement was made. (*See* Exhibits A and B.) Plaintiffs have not produced (nor can they) any evidence that Defendants were even aware of *any* information regarding a possible issue with the A/R Reserve until February 2003 at the earliest and, at that point, any such information was preliminary, believed to be erroneous, and, thus, cannot satisfy the applicable legal test for materiality. (*See id.*; Defendants' Response and Opposition to Plaintiffs' Statement of Undisputed Facts, Tab 50; Defendants' Memorandum in Support of Their Motion for Summary Judgment, sect. III(B)(1)(c), Docket # 363-2.)

magnitude or probability of each alleged A/R Reserve understatement or the fact that Plaintiffs acknowledge they cannot prove any of the alleged misstatements as a matter of law. Plaintiffs' carte blanche materiality request should be denied.

      1.    <u>Defendants Have Not Conceded the Element of Materiality.</u>

Contrary to Plaintiffs allegations, Defendants have not conceded materiality. In an effort to bypass their obligation to affirmatively establish materiality, Plaintiffs have instead identified each instance in which Defendants use the word "material" or some derivative thereof, regardless of context, and claim that such usage is tantamount to a concession of materiality in a securities fraud context. (Pls.' Mot. at 8-10.) But, even a cursory review of the "admissions" cited by Plaintiffs reveals that they are not admissions of any type and certainly not admissions of the legal element of materiality in the context of a securities fraud claim. The statements cited by Plaintiffs, including Defendants' alleged statements that the A/R Reserve was a "material" part of the financial statements, are not admissions by Defendants that any alleged A/R Reserve understatement, regardless of amount or probability, would be material to a reasonable investor.

Plaintiffs cite to additional so-called "admissions" that are similarly fictitious. For example, Plaintiffs argue that, because Accredo considered that during due diligence "the accounts receivable was a 'material' concern" and directed E&Y to do the same, Accredo has admitted that the A/R Reserve at any point in time was also legally "material." (Pls.' Mot. at 8.) Plaintiffs' argument is fatally flawed, however, because it fails to differentiate between A/R and an A/R Reserve estimate, which are completely separate concepts both from an accounting and business standpoint. Identifying a potential acquisition target's A/R as a significant area on which to focus during the financial due diligence period cannot be equated to an admission that the A/R Reserve during the entire Class Period should be considered to have been legally

material in the context of a securities fraud claim. And, such emphasis during financial due diligence fails to speak whatsoever to the importance an investor would place on an alleged understatement of such A/R Reserve, regardless of the size of the understatement. (*Id.*) Moreover, contrary to Plaintiffs' arguments, Mr. Kimbrough never stated that the A/R Reserve for the Specialty Pharmaceutical Services ("SPS") Division was Accredo's "largest asset class" on the balance sheet; rather, he testified that the A/R Reserve is the most subjective estimate related to the largest asset class.[4] (Kimbrough Dep. 349:4-11, attached as Exhibit C.) Regardless, Mr. Kimbrough's testimony cannot be read to serve as an admission that any alleged understatement of the A/R Reserve in connection with any of the alleged misstatements throughout the Class Period was material as a matter of law when the statements were made. Indeed, Mr. Kimbrough testified to the exact opposite – he did not believe any potential understatement could possibly be material or even probable until the beginning of April 2003, when Accredo announced the potential A/R Reserve issue. (*See* Kimbrough Dep. 525:17-527:4, attached as Exhibit D.)

The remainder of Plaintiffs' arguments contradicts their concession that the issue of whether a misstatement can be proven remains a question of fact by focusing on a "reproduction" of a chart attached to an email prepared in June 2003 by Accredo's then-Controller, Sam Daniel. (Pls.' Mot. at 9.) Plaintiffs wrongly claim that their reproduction proves that Defendants knew that the A/R Reserve was understated by over $53 million or 43% during the Class Period. (Pls.' Mot. at 9-10.) Plaintiffs argue that, because the amount in the email

---

[4] In fact, Tab No. 70 of Plaintiffs' Statement of Undisputed Facts contradicts their own erroneous conclusion. Tab No. 70 states that the SPS A/R itself, and not the A/R Reserve, is the largest asset on Accredo's financial statements. It should be noted, however, that Tab No. 70 is also incorrect. Accredo's consolidated financial statements show that goodwill is, indeed, the largest asset. *See* Defendants' Response and Opposition to Plaintiffs' Statement of Undisputed Facts, Tab 70.

7

would be material, the element of materiality is established as a matter of law as to each of their alleged misstatements made *prior* to the email.  Plaintiffs' argument must fail.

Importantly, Plaintiffs' "reproduction" distorts the actual email and alters and/or wholesale adds certain headings, language, and calculations.  (*See* June 30, 2003 email from Sam Daniel to Brian Jenkins and Brian Johnson with attached A/R Reserve Worksheet, ACDO-SD 111870-71, attached as Exhibit E.)  For example, column C of Plaintiffs' "reproduction" states that the A/R Reserve was "corrected," which the original email did not reference and which inaccurately implies an error was made by Defendants. (Pls.' Mot. at 9; Exhibit E.)  More importantly, however, is that the email, which was created *after* the Class Period and *after* the potential A/R Reserve issue was announced, was created to discuss what the balance sheet impact *could* be *if* a purchase price adjustment was made, not to establish what the proper accounting treatment of the adjustment should be under Generally Accepted Accounting Principles ("GAAP") or that there was in fact an understatement in any given amount at any point in time. (*See* Johnson Dep. 528:14-535:15, attached as Exhibit F; Feb. 24, 2003 email from Brian Johnson to Sam Daniel, attached as Exhibit G.)  Thus, Plaintiffs' "evidence" that the A/R Reserve was understated by at least 43% during the Class Period cannot withstand scrutiny and cannot support their claim that a finding of materiality as a matter of law is appropriate.  Put simply, Plaintiffs have manufactured documents to say what they need them to say to support their theory of the case.

    2.    <u>A Blanket Finding of Materiality is Inappropriate.</u>

Plaintiffs' Motion also should be denied because a finding of generalized materiality is inappropriate.  Determining whether a statement or omission is material turns upon a fact-intensive inquiry.  *Pullins v. Klimey*, No. 3:05-CV-082, 2008 WL 85871, at *21 (S.D. Ohio

8

2008). And, where Plaintiffs have failed to adduce sufficient evidence to satisfy the element of materiality, a finding on summary judgment is inappropriate. *See Securities and Exchange Commission v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007). Notwithstanding, Plaintiffs ask the Court to make a blanket finding of materiality as to all alleged misstatements on the *assumption* that they can prove *a misstatement* occurred.

Even assuming that Plaintiffs can prove a misstatement, however, materiality is not a foregone conclusion. To make a determination of whether any of the alleged misstatements was material, Plaintiffs must prove that both the magnitude and probability of a potential understatement of the A/R Reserve estimate for each of the alleged misstatements at each period was satisfied and, thus, rose to the level of materiality. *See Basic*, 485 U.S. at 239 (quoting *Texas Gulf Sulphur*, 401 F.2d at 849); *see also* Exhibits A and B. As explained above, Plaintiffs cannot (nor have they even attempted to) prove the magnitude or probability of any alleged misstatement at any point in time or even prove that a single misstatement was made at all. This alone renders a finding of blanket materiality inappropriate.

3. The Truth-On-The-Market Defense Prevents a Finding of Materiality.

Even if Plaintiffs could establish materiality, the truth-on-the-market defense prevents a finding of materiality as a matter of law.[5] The truth-on-the-market defense states that an alleged misrepresentation is immaterial if the information is publicly disclosed through analyst reports, company disclosures, or other public sources, because, if the information is already known or knowable, the alleged misrepresentation cannot defraud the investing public. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000); *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 516 (7th Cir. 1989); *see also Stavroff*, 1997 WL 720475, at *4 ("[m]isrepresentations are

---

[5] This issue was fully briefed in Defendants' Memorandum in Support of Their Motion for Summary Judgment, filed with the Court on May 16, 2008, pp. 39-41, Docket # 363-2.

not material . . . if the investing public is privy to the truth."). The truth-on-the-market defense permits a defendant to rebut a presumption that an alleged misrepresentation affected a company's stock price by showing that the truth of the matter was already known and, therefore, was already reflected in the stock price.

*Wielgos* is a particularly instructive case on the proper application of the truth-on-the-market defense. In *Wielgos*, a utility company was building a nuclear power plant, which was running behind schedule in construction. 892 F.2d at 512. The utility company disclosed its projected cost estimates and delays for completing the project, but internal cost estimates turned out to be higher than expected. *Id.* The court determined that the market was well aware of the fact that the company had underestimated its costs, and, because the underestimates were widely known to investors, the discrepancies between the company's estimates and its actual costs were immaterial. *Id.* at 516. The court affirmed the lower court's grant of summary judgment for the defendants. *Id.* at 518.

In this case, Plaintiffs allege that Defendants either knew, or were severely reckless in not knowing, that virtually all of the acute portion of the SPS Division's A/R was uncollectible and that, therefore, Accredo's A/R Reserve was understated. (Compl. ¶¶ 4-5(a), 6-7, 28(a), 28(c), 28(f), 31-32, 63, 75, 77, 83, 84.) Plaintiffs base this theory, in part, on the false notion that anyone looking at the SPS Division's days sales outstanding ("DSOs"), which Plaintiffs describe as "incredibly high" and "much higher than 'industry standards,'" would recognize that the majority of the acute portion of the SPS Division's A/R was uncollectible, thus rendering the A/R Reserve in Accredo's consolidated financial statements materially understated. (Compl. ¶¶ 5(a), 28(a), 32, 84.) Although Plaintiffs' theory is refuted by the real facts in the case, should

one accept it as true, one must also accept that any alleged misstatement regarding the A/R Reserve would be immaterial pursuant to the truth-on-the-market defense.

It is undisputed that the truth regarding the DSOs of the SPS Division, and specifically the DSOs for the acute portion of the SPS Division's A/R, was publicly known. For instance, in an August 26, 2002 Fourth Quarter 2002 Earnings Conference Call related to Accredo's press release of the same date, Mr. Kimbrough remarked that,

> [P]robably the most significant thing that can happen to the overall AR [accounts receivable] at Gentiva will be as we exit the acute business and actually wind it down so we can concentrate on the 20 products that we're presently involved in. That DSO for the acute business is obviously somewhere in the 150, 160--day range that really does create some overall inefficiency long-term, a lot more product.

(Aug. 26, 2002 Transcript of Q4 2002 Accredo Earnings Conference Call, p. 5, attached as Exhibit H.) In addition, in an August 9, 2002 Morgan Keegan Analyst Report stated that,

> CFFO [cash flows from operations] should continue to improve as Accredo's management is successful in paring down SPS's lofty days sales outstanding. If there is one "issue" we have with the SPS acquisition it is that SPS's days sales outstanding are considerably higher than Accredo's and the industry average. Although they were once much higher (Gentiva took a $91 million charge in 2000 relating to aged receivables) the chronic-business DSOs are in the 110-115 range compared to Accredo's 69 in the most recent quarter . . . We believe the bulk of the problem stemmed from either inefficient systems or management or both. Accredo has always kept receivables in an acceptable range, and we believe one of management's first initiatives will be to bring the combined receivables back down.

(Aug. 9, 2002 Morgan Keegan Analyst Report, p. 15, attached as Exhibit I.) Another public disclosure occurred in a February 3, 2003 Second Quarter 2003 Earnings Conference Call, during which Mr. Kimbrough stated to a Southwest Securities analyst that,

> Now, as it relates to the overall DSO, I think we will continue to see DSO fall some during the course of the next six months . . . I think through fiscal '03, you know, if we get to the mid-80's, Ann, I'll probably be pretty happy. My goal going into this year, quite frankly, was to make sure post-deal to stabilize DSO and to get some slight improvement if we could, but more than anything else,

11

> not to let the integration and affect DSO and cash flow, which it has not obviously. So, you know, right now we're making some improvement. I think '04 will be the year that we'll actually end up having probably much more improvement than not.

(Feb. 3, 2003 Transcript of Q2 2003 Accredo Earnings Conference Call, p. 12, attached as Exhibit J.)

As shown above, the truth about the DSOs for both the SPS Division and acute A/R were regularly publicly disseminated and known. Defendants never attempted to hide this information from the public. If, as Plaintiffs allege, Defendants knew or should have known that a majority of the SPS Division's A/R were uncollectible because of high DSOs for acute A/R or the SPS Division's A/R, this same knowledge must be imputed to the investing public. The truth-on-the-market defense necessarily precludes a finding that any of the alleged misstatements was material. Accordingly, Plaintiffs' Motion should be denied.

**C.     Plaintiffs Cannot Prove Loss Causation.**

Plaintiffs' Motion should also be denied because they have not established loss causation as a matter of law. Indeed, there is no genuine issue of material fact that supports that the element of loss causation CAN be proven, as set forth in Defendants' Motion for Summary Judgment. (Defendants' Memorandum in Support of Their Motion for Summary Judgment, sect. III(D), Docket # 363-2.) Plaintiffs can only point to the E&Y Complaint, a PowerPoint presentation, and a statement by Mr. Kimbrough taken out of context. (Pls.' Mot. at 11-13.) None of this evidence proves, as it must, that the element of loss causation has been satisfied. Rather, the actual evidence shows to the contrary!

        1.     <u>The E&Y Complaint Does Not Establish Loss Causation.</u>

Plaintiffs' assertion that Defendants have admitted loss causation as a result of the allegations contained in the E&Y Complaint is fundamentally flawed. The E&Y Complaint was,

of course, filed in another action, and was subsequently and quickly withdrawn. (Accredo Notice of Voluntary Nonsuit, filed Sept. 24, 2003, attached as Exhibit K.) As a result, the E&Y Complaint cannot serve as conclusive evidence of loss causation, and any factual allegations contained therein are not binding or conclusively established.

It is indisputable that pleadings that have been withdrawn, amended, or filed in another action against a different party do not constitute judicial admissions, but rather are viewed as merely evidentiary, like any other factual evidence, which may be controverted, rebutted, or explained by the party filing the complaint. *Dixie Sand & Gravel Corp. v. Holland*, 255 F.2d 304, 310 (6th Cir. 1958); Wright and Miller, Federal Practice and Procedure: Civil 3d §7026 (2004) ("Ordinary evidentiary admissions . . . may be controverted or explained by the party. Within this category fall the pleadings in another case, superseded or withdrawn pleadings in the same case. . . .") (footnotes omitted). There is no dispute that the E&Y Complaint was filed in another action, against another party, and was subsequently withdrawn. (Exhibit K.) Nothing in the E&Y Complaint, therefore, including any statement allegedly bearing on the element of loss causation or otherwise, is established and may be rebutted.

Plaintiffs attempt to bolster their argument that the allegations in the E&Y Complaint should be viewed as conclusive admissions by arguing that Defendants have admitted that the E&Y Complaint is factually accurate. (Pls.' Mot. at 11-12.) Once again, however, Plaintiffs misrepresent the evidence. Defendants have not admitted that the E&Y Complaint allegations are currently factually accurate; rather, Plaintiffs have only shown that Defendants believed the E&Y Complaint had a good faith basis when it was filed in May 2003. (*See* Kimbrough Dep. 631:22-635:5; 638:4-6; 641:2-11; Bell Dep. 431: 11-17, 19-25; Stevens Dep. 523:6-524:1, attached collectively as Exhibit L.) Moreover, there is specific testimony that rebuts Plaintiffs'

erroneous argument. For example, Mr. Kimbrough testified that, although at the time the E&Y Complaint was filed in May 2003 Accredo believed the allegations were made in good faith, the facts as alleged therein were not borne out, and, based on the actual facts as now known, he does not believe anyone, either individually or on a corporate level, is at fault for the increase in the A/R Reserve. (*See* Kimbrough Dep. 638:15-644:10, attached as Exhibit M.) Such testimony actually rebuts the accuracy of the allegations as stated in the E&Y Complaint.

Further, nowhere in the E&Y Complaint does it allege that any specific amount of the stock price decrease was attributable to the potential A/R Reserve issue announcement. Any allegation contained in the E&Y Complaint concerning potential alleged damages (which Plaintiffs improperly try to bootstrap into allegations of loss causation in the securities fraud context here), was made in a different case involving different parties, counsel, and claims, and was made without the benefit of discovery, including the benefit of expert discovery. Based on the significant costs expended by both parties on experts in this case, Plaintiffs cannot seriously question that the burden of establishing what amount, *if any*, of the stock price decline can be attributable to the announcement of the potential A/R Reserve issue, as opposed to the simultaneous disclosure of the revenue and EPS revisions, is one necessitating the opinion of an expert. No damages expert was consulted on loss causation prior to the filing of the E&Y Complaint.[6]

But, here, Defendants' damages expert, Professor James, testified on numerous occasions during his deposition that the amount of loss attributable to the announcement of the potential A/R Reserve issue could be zero. (James Dep. 156:15-158:4; 161:23-166:10, attached as

---

[6] Neither Mr. Stevens nor Mr. Kimbrough is qualified to act as an expert on this issue. If necessary to place the E&Y Complaint allegations upon which Plaintiffs rely to prove loss causation in their proper context, Defendants will testify at trial that, although they reviewed the E&Y Complaint, they did not know, nor were they qualified to opine on, what amount, *if any*, of the decline in stock price on April 8, 2003 was attributable to the disclosure of the potential A/R Reserve issue or the simultaneous announcement of Accredo's revised revenue and EPS guidance.

Exhibit N.) And, at least one analyst observed that "the market overlooked the [A/R] adjustment. . . ." (May 6, 2003 Raymond James Analyst Report, p.1, attached as Exhibit O.) In addition, Professor James' expert reports support that the April 8, 2003 decline in stock price was related to Accredo's announcement lowering revenue and EPS guidance for fiscal year 2003 and not related to the simultaneous announcement related to the potential A/R Reserve issue. (Expert Report of Professor James, pp. 3, 9-13, attached as Exhibit P; Expert Rebuttal Report of Professor James, pp. 8-12, 27-29, attached as Exhibit Q.)[7] Nevertheless, Plaintiffs cannot satisfy their burden of proof by merely citing to allegations taken out of context from a withdrawn complaint in another case.

      Similarly, the fact that the charge was a one-time event rebuts any finding of loss causation. (*See* Exhibit P, ¶¶ 6, 21, 23, 27, 30 and Exhibit Q, ¶¶ 20, 53-54.) It is indisputable that Defendants planned to discontinue the acute business. (Stevens Dep. 235:1- 4, attached as Exhibit R; Jan. 2, 2002 Accredo Press Release, ADCO 014 0523-25, attached as Exhibit S.) A/R from the acute portion of the SPS Division, therefore, would have no implications on expected cash-flows associated with Accredo's future business. (*See* Exhibit P, ¶¶ 6, 21.) "Generally, the value of a firm is equal to its discounted value of its future cash flows []." (Exhibit P, ¶ 22.) Because the price for a security, in this case Accredo's stock, reflects the present value of its expected future cash flows, one-time events are not relevant for firm valuations. (*Id.* at ¶¶ 22, 23.) Such one-time events are not taken into account in firm valuation because analysts and shareholders generally do not consider special non-recurring losses. (*Id*. at ¶ 27.) Accordingly, the A/R Reserve issue, which was a one-time event, was not important to Accredo's investors and was not the cause of the stock price decline on April 8, 2003. Such evidence further rebuts a

---

[7] Full copies of the expert reports are attached to Defendants' Memorandum in Support of their Motion for Summary Judgment.

15

finding of loss causation in Plaintiffs' favor as a matter of law. Without a loss attributable to the announcement of the potential A/R Reserve issue, there can be no loss causation.

    2.    <u>Plaintiffs Concede that Their Remaining "Evidence" Does Not Conclusively Establish Loss Causation.</u>

The remainder of Plaintiffs' so-called "evidence" – a PowerPoint slide and testimony from an informal SEC inquiry – similarly fails to prove loss causation, which Plaintiffs concede. (Pls.' Mot. at 11 n.9, 12 n.10.)

Plaintiffs' reliance on a June 2003 PowerPoint slide from a presentation given by Mr. Stevens at a Midwest Healthcare Summit is puzzling, particularly in light of the fact that Plaintiffs acknowledge in their Motion that Mr. Stevens testified under oath that the one slide on which Plaintiffs focus contained an error and had never been reviewed by anyone else prior to its use. (Pls.' Mot. at 12 n.10; Stevens Dep. 529:2-530:23; 568:3-569:9, attached as Exhibit T.) Plaintiffs attempt to discredit Mr. Stevens' testimony by pointing out that Mr. Stevens also testified that he did not realize the error in the presentation until preparing for his deposition. (Pls.' Mot. at 12 n.10.) But, Plaintiffs' argument is nothing more than a misguided attempt at dressing up a non-issue in sinister clothing. Mr. Stevens gave a one-time business presentation in June 2003 for which he created PowerPoint slides without assistance and without regard to technical accounting rules and principles or the legal concept of loss causation. (Exhibit T.) It is not suspicious in the least that he would not have reviewed the presentation for accuracy between the time he gave the presentation and the time of his deposition in this case, during which he was questioned about the slide's content. Because there was no reason for Mr. Stevens to review the presentation prior to preparing for his deposition, there is nothing improper or suspicious about the fact that it was not until that time that he discovered the error. And, that he did not notice the inaccuracy until the time he reviewed it in preparation for his deposition fails to discredit the

veracity of his testimony given under oath. Regardless, the information in the slide is disputed and cannot be used to "prove" loss causation.

Plaintiffs argue that the slide, as well as Mr. Kimbrough's testimony taken informally by the SEC, prove that Accredo's revision of its revenue and EPS guidance, which was announced simultaneously with the potential A/R Reserve issue, was linked to the potential A/R Reserve issue and that, therefore, the decline in stock price was caused by the potential A/R Reserve issue announcement. (*See* Pls.' Mot. at 12-13.) But, Defendants have clearly and affirmatively testified in this matter that the revision of Accredo's revenue and EPS guidance was not linked to the simultaneous potential A/R Reserve issue announcement. (*See* Kimbrough Dep. 807:7-11;[8] Stevens Dep. 497:21-499:2, attached collectively as Exhibit U.) As a result, this "evidence" cannot establish loss causation.

All Plaintiffs have left to try to support a showing of loss causation is the April 8, 2003 announcement and the stock price decline on the same day. (Pls.' Mot. at 11 n.9.) But, as explained above, Plaintiffs have not satisfied their burden of proof (as they must) with respect to loss causation because they cannot prove that the announcement of the potential A/R Reserve issue *caused any* portion of the decline in Accredo's stock price as opposed to the simultaneous and separate revenue and EPS guidance revision announcement. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 – 346 (2005); *In re Cardinal health, Inc. Sec. Litig.*, 426 F.Supp. 2d 688, 758 (S.D. Ohio 2006) (Plaintiffs must prove a disclosure related to the alleged fraud resulted in a decline in stock price). It is for this reason that summary judgment on loss causation is actually appropriate in favor of Defendants. (*See* Defendants' Memorandum in Support of Their Motion for Summary Judgment, sect. III(D), Docket # 363-2.)

---

[8] When viewed in its full and proper context, it is clear that Mr. Kimbrough's testimony taken by the SEC during its informal inquiry on December 20, 2004, was not directed at the element of loss causation and was vague at best and taken out of context. (*See* Kimbrough Dep. 49:13-50:1, attached as Exhibit V.)

### III.     CONCLUSION

Plaintiffs have not established the elements of materiality and loss causation.  Plaintiffs' arguments largely rest on their claim that Defendants have conclusively conceded these two elements, which, as established above, is not the case.  As a result, Defendants respectfully request that the Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Respectfully submitted this 2nd day of July, 2008.

        s/ Douglas F. Halijan
        Jef Feibelman  (BPR # 7677)
        Douglas F. Halijan  (BPR # 16718)
        BURCH, PORTER & JOHNSON, PLLC
        130 North Court Avenue
        Memphis, TN  38103
        (901) 524-5000

        Peter Q. Bassett
        Kelly C. Wilcove
        Scott N. Sherman
        Mark D. Trainer
        ALSTON & BIRD LLP
        1201 West Peachtree Street
        Atlanta, GA  30309-3424
        (404) 881-7000

        Attorneys for Defendants Accredo Health, Inc.,
        David D. Stevens, and Joel R. Kimbrough.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded *via* the Court's electronic filing system, this 2nd day of July, 2008 to:

Tor Gronborg
Mark Solomon
Trig R. Smith
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, CA  92101

Timothy A. DeLange
Blair A. Nicholas
BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
12544 High Bluff Drive, Suite 150
San Diego, CA  92130

B.J. Wade
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street Building
Memphis, TN  38103

　　　　　　　　　　　　　　　　　　　　s/ Douglas F. Halijan