IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION | ) ) ) ) ) Civil Action No. 03-CV-2216-BBD ) ) CLASS ACTION ) ) |
| This Document Relates To: | |
| ALL ACTIONS | |

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR *DAUBERT* MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF D. PAUL REGAN**

---

Defendants Accredo Health, Inc. ("Accredo"), David D. Stevens, and Joel R. Kimbrough (collectively, "Defendants"), respectfully submit this Memorandum in Support of their *Daubert* Motion to Exclude Expert Opinions and Testimony of D. Paul Regan.

## I.   INTRODUCTION

Plaintiffs retained Mr. Regan to provide expert testimony regarding Accredo's treatment of the Gentiva Health Services, Inc. ("Gentiva") Specialty Pharmaceutical Services ("SPS") Division allowance for doubtful A/R ("A/R Reserve") under Generally Accepted Accounting Principles ("GAAP"). On December 20, 2007, Mr. Regan submitted his report detailing the findings of his analysis and his expert opinion (the "Regan Report").[1] Mr. Regan submitted an expert rebuttal report on February 14, 2008 ("Regan Rebuttal"), and provided deposition testimony regarding his opinions on March 7, 2008. The purported expert opinion provided by Mr. Regan is inadmissible under the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137

---

[1] The Regan Report is attached hereto as Exhibit "1." The Regan Rebuttal is attached hereto as Exhibit "2."

(1999). Accordingly, the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan in this matter.

## II.   LAW AND ANALYSIS

### A.   Standards for Admissibility of Expert Opinions and Testimony

Federal Rule of Evidences 702 governs the use of expert testimony. In *Daubert*, the Supreme Court established the standard for admissibility of scientific expert testimony under Rule 702. The Supreme Court held that Rule 702 requires a trial judge to exercise a "gatekeeping" role and assure both the reliability and the relevance of scientific testimony or evidence. *Id.* at 589. "The relevance requirement directs that there be a 'fit' between the testimony and the issue to be resolved by the trial. The reliability requirement is designed to focus on the methodology and principles underlying the testimony." *United States v. Pollard*, 128 F. Supp. 2d 1104, 1116 (E.D. Tenn. 2001) (citing *United States v. Bonds*, 12 F.3d 540, 555-56 (6th Cir. 1993). As the Sixth Circuit has stated:

> a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Second, *the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue."* Third, *the testimony must be reliable.* Rule 702 guides the trial court by providing general standards to assess reliability: whether *the testimony is based upon "sufficient facts or data,"* whether *the testimony is the "product of reliable principles and methods,"* and whether *the expert "has applied the principles and methods reliably to the facts of the case."* In addition, *Daubert* provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: *"testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community."*

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (internal citations omitted) (emphasis added).

The Supreme Court extended *Daubert* to non-scientific expert testimony in *Kumho*. Under *Kumho*, the obligations imposed on a trial judge by *Daubert* apply to all expert testimony and "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, [ ] the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). Moreover, ***if any step of a purported expert's analysis is found unreliable, the entire testimony must be excluded***. See *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

Mr. Regan contends that Accredo failed to comply with GAAP in recording the increase in the A/R Reserve discovered during the preparation of the 2003 third quarter ("3Q 2003") financial statements. According to Mr. Regan, Accredo should have recorded the adjustment to the A/R Reserve, announced by Accredo on May 5, 2003, as an accounting error rather than a change in accounting estimate. Mr. Regan's conclusions are not supported by GAAP and, therefore, cannot be replicated and are seriously flawed. In fact, Mr. Regan's purported expert opinion actually contradicts GAAP. Accordingly, the purported expert opinions and testimony provided by Mr. Regan are neither reliable nor relevant, and the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan.

B.  **Mr. Regan's Purported Expert Opinions and Testimony are Not Reliable.**

The crux of Mr. Regan's purported expert opinions, and any related testimony, is the determination that Accredo failed to comply with GAAP in its treatment of an adjustment to the A/R Reserve announced on May 5, 2003.[2] As noted in Mr. Regan's report, on May 5, 2003, Accredo reported that it was increasing the A/R Reserve and recording the increase as a change

---

[2] Regan Report at p.4.

in accounting estimate resulting in a charge to earnings in its Q3 2003 financial statements.[3] Mr. Regan opines that Accredo's treatment of the adjustment to the A/R Reserve did not comply with GAAP because, although Accredo treated the adjustment as a change in accounting estimate, the adjustment should have been recorded as an accounting error.

In his expert report, Mr. Regan claims that:

> the additional allowance did not result from a change in accounting estimate as defined by GAAP, but **was a result of an error as defined by GAAP. As a result, the additional allowance was required to be reported as a reduction of earnings in Accredo's financial statements as of June 14, 2002, FYE 2002, Q1 2003 and Q2 2003** . . . .[4]

Mr. Regan contends that Accredo's adjustment to the A/R Reserve "was the result of oversight or misuse of facts that existed prior to and at the time Accredo's FYE 2002, Q1 2003 and Q2 2003 financial statements were prepared."[5] Under Mr. Regan's analysis, "Accredo's calculation of the corrected reserve did not result from new information or subsequent developments."[6] Mr. Regan opines that Accredo should have treated the adjustment to the A/R Reserve as an accounting error, not a change in accounting estimate, and, therefore, should have reported the correction of the error in its post-acquisition financial statements.[7] According to Mr. Regan, Accredo's failure to properly account for the adjustment to the A/R Reserve resulted in the material misstatement of Accreo's FYE (fiscal year end) 2002, Q1 (first quarter) 2003 and Q2 (second quarter) 2003 financial statements.[8] Plaintiffs' allegations of fraud depend upon the legitimacy of their claim that Accredo's FYE 2002, Q1 2003 and Q2 2003 financial statements were materially misstated.[9] As discussed below, Mr. Regan's purported expert opinion as to

---

[3] *See id.* at p.8.
[4] *Id. See* Regan Dep. 163:14-165:10, attached hereto as Exhibit "3."
[5] Regan Report at p.15, ¶ 7.3.b.
[6] *Id.*
[7] *See id.* at p.15, ¶ 7.4.
[8] *See id.* at p. 43.
[9] Compl. at ¶¶ 45-59.

why Accredo's financial statements are misstated – upon which Plaintiffs must rely to prove the alleged fraud – is unfounded and unreliable.

1. **Mr. Regan's Purported Expert Opinion and Testimony Ignore Critical Accounting Guidance.**

Mr. Regan's purported expert opinion that the increase in the A/R Reserve should have been recorded in the post-acquisition financial statements is itself inconsistent with the treatment of a correction of an accounting error. Indeed, Mr. Regan's contentions are themselves inconsistent with GAAP. Mr. Regan ignores direct accounting authority that wholly contradicts his opinion regarding the proper treatment of the adjustment to the A/R Reserve.

Securities and Exchange Commission's ("SEC") Staff Accounting Bulletin ("SAB") No. 61 – "*Adjustments to Allowances for Loan Losses in Connection with Business Combinations,*" 51 Fed. Reg. 17331-01 (1986) ("SAB 61"), provides guidance regarding post-acquisition accounting for adjustments to A/R Reserves.[10] Under SAB 61, if the seller's pre-acquisition financial statements are not fairly stated in accordance with GAAP because of an unreasonable A/R Reserve – which Plaintiffs and Mr. Regan contend occurred when Accredo purchased Gentiva's SPS Division[11]– the A/R Reserve should not serve as a basis for recording the acquired A/R in the purchaser's post-acquisition financial statements.[12] Rather, according to SAB 61, **the seller** should restate its **pre-acquisition** financial statements to reflect an appropriate

---

[10] SAB 61 is attached hereto as Exhibit "4." On June 14, 1999, Lynn E. Turner, Chief Accountant, SEC, remarked that:

> SAB 61 prohibits an acquiring company from adjusting an acquiror's loss reserves on a loan receivable portfolio unless the acquiring company's plans for ultimate recovery of loans acquired from the acquiror are demonstrably different from plans that have served as the basis for the acquiror's estimate of loan losses. *Issues similar to loss reserves on loan receivable portfolios arise in other business combinations with other loss accrual accounts, such as allowances for bad debt reserves* and obsolete and excess inventory reserves, and with contingent liabilities. *The staff believes that the guidance provided in SAB 61 is analogous to other loss accrual and contingent liability balances in business combinations.*

A copy of the complete June 14, 1999 remarks are attached hereto as Exhibit "5."
[11] *See* Regan Report at p. 6; Compl. ¶ 11.
[12] *See* Exhibit "4."

allowance and apply the resulting adjustment to its *pre-acquisition* income statement.[13] Here, this would have required **Gentiva** to restate its financial statements, which it did not. Accordingly, if Accredo had treated the adjustment to the A/R Reserve as a correction of an accounting error, as purportedly required based on Mr. Regan's expert opinion,[14] applying SAB 61, Accredo – as the purchaser of the SPS Division – would *not* have recorded the adjustment in its post-acquisition income statement. Rather, Gentiva – as the seller of the SPS Division – would have been forced to restate its pre-acquisition income statements. This simple application of GAAP alone directly contradicts Mr. Regan's purported expert opinion.[15]

Mr. Regan's purported expert opinion suggesting that Accredo should have recorded the increase in the A/R Reserve as a correction of an accounting error in its post-acquisition financial statements is contrary to SAB 61 and, therefore, is unreliable, erroneous, and cannot be reproduced by anyone else in Mr. Regan's field. Indeed, Mr. Regan did not even consider SAB 61 in his purported expert report[16] and testified that he could not recall what SAB 61 was without refreshing his recollection.[17] Accordingly, the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan.

   2. **Mr. Regan's Purported Expert Opinion and Testimony Erroneously Intimate that Defendants Had Some Incentive to Treat the Adjustment to the A/R Reserve as a Change in Accounting Estimate.**

Mr. Regan contends that Accredo would have realized a negative impact on earnings had it treated the adjustment to the A/R Reserve as a correction of an accounting error, presumably in support of the false insinuation that Accredo had a disincentive to record the adjustment as an

---

[13] *See id.*
[14] *See* Regan Report at p.8.
[15] *See id.*
[16] *See id.* at pp. 13-18, "Relevant Accounting Standards."
[17] *See* Regan Dep. 188:2-6, attached hereto as Exhibit "6."

accounting error.[18] This opinion, however, does not square with the treatment of an accounting error under GAAP or the evidence in this matter. Recording the adjustment to the A/R Reserve as an accounting error – as opposed to a change in accounting estimate in Q3 2003 – would have resulted in a much more favorable earnings impact for Accredo, as compared to the accounting treatment actually adopted by Accredo.[19]

If Accredo had recorded the increase in A/R Reserve as an accounting error, as proposed by Mr. Regan, an adjustment of approximately $56.8 million to the SPS Division balance sheet, as of June 13, 2002, would have been recorded.[20] This adjustment would have had a balance sheet impact.[21] Therefore, when compared to the accounting treatment actually adopted by Accredo, a cumulative increase in net income of approximately $34.2 million and cumulative diluted earnings per share of $0.70 would have resulted.[22]

Indeed, Defendants actually had a financial incentive to record the adjustment to the A/R Reserve as a correction of an accounting error. Notwithstanding, Accredo recorded the increase in A/R Reserve as a change in accounting estimate – even though it did not produce the most financially-advantageous outcome – because it was the appropriate accounting treatment under GAAP.[23] Mr. Regan has not reliably applied proper accounting guidance to Accredo's financial statements. The fact that Mr. Regan failed to recognize the correct balance sheet implications of his own purported expert opinion further exposes the unreliability of his potential testimony.

---

[18] Regan Report at p. 8.
[19] *See* Defendants' Statement of Undisputed Material Facts at ¶ 111. The evidence cited by Defendants in support of ¶ 111 are attached hereto as Exhibit "7."
[20] Rebuttal Expert Report of Glennon E. Moyers ("Moyers Rebuttal") at pp. 19-20. The portion of the Moyers Rebuttal addressing the Regan Report is attached hereto as Exhibit "8."
[21] *See* Moyers Rebuttal at p. 20.
[22] *See id.*
[23] *See* Bell Dep. 336:11-338:20; Carney Dep. 224:20-226:11; Daniel Dep. 372:3-373:24; Drummond Dep. 290:7-13; Kimbrough Dep. 118:12-119:17; Moyers Dep. 240:16-250:5; Stevens Dep. 468:24-469:9; 518:3-24. The cited deposition excerpts are attached collectively hereto as Exhibit "9."

Accordingly, the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan.

      3.    **Mr. Regan's Purported Expert Opinion and Testimony Ignore the Independent Opinions of Ernst & Young, LLP, Deloitte & Touche, LLP, PricewaterhouseCoopers, LLP, and KPMG, LLP.**

It is undisputed that Ernst & Young, LLP ("E&Y"), Deloitte & Touche, LLP ("D&T"), PricewaterhouseCoopers, LLP ("PwC"), and a partner from KPMG, LLP ("KPMG") all reviewed Accredo's treatment of the increase in the A/R Reserve and independently determined that Accredo properly recorded the adjustment as a change in accounting estimate.

In its review of Accredo's financial statements for the quarterly period ended March 31, 2003, E&Y concurred with Accredo that the proper accounting treatment under GAAP for the increase in the A/R Reserve was to record a current period charge in the financial statements for Q3 2003.[24] E&Y partner, William Drummond, testified that, based on all of its work, E&Y believed that the proper treatment of the adjustment to the A/R Reserve was as a change in estimate.[25] Amy Carney, an E&Y senior manager assigned to the Accredo audits, also testified that Accredo took the charge in the appropriate period and she had no reason to believe that Accredo should have taken the charge in the period prior to the period in which it was taken.[26] It is undisputed that E&Y issued unqualified audit opinions during the Class Period related to Accredo's financial statements, which included the adequacy of the A/R Reserve for the SPS Division as of June 30, 2002.[27] In addition, E&Y prepared unqualified audit opinions specifically for the SPS Division for the fiscal years 1999, 2000, 2001, the nine-month period

---

[24] *See* Carney Dep. 175:2-178:13; 225:22-226:11; Corona Dep. 105:19-107:8; Drummond Dep. 290:7-13; Apr. 24, 2003 E-mail from William Drummond to Jane Anderson and attached Accredo Memo, EY001545-46. The cited deposition excerpts are attached collectively hereto as Exhibit "10." The April 24, 2003 E-mail is attached hereto as Exhibit "11."
[25] *See* Drummond Dep. 290:7-13, attached hereto as Exhibit "12."
[26] *See* Carney Dep. 225:22-226:11, attached hereto as Exhibit "13."
[27] *See* Defendants' Statement of Undisputed Facts at ¶ 34. The evidence cited by Defendants in support of ¶ 34 is attached hereto as Exhibit "14."

ended September 30, 2001, and the balance sheet as of June 13, 2002.[28] E&Y testified that it stands by its unqualified audit opinions.[29]

As part of its audit of Accredo's financial statements for fiscal year ended June 30, 2003, D&T, in a litigation environment, also confirmed the treatment under GAAP of the increase in the A/R Reserve by issuing an unqualified audit opinion.[30] Specifically, Tom Corona – the D&T lead partner responsible for the Accredo audits – testified that D&T "tested the company's methodology" related to the increase in the A/R Reserve.[31] Mr. Corona further stated that D&T considered the increase in the A/R Reserve because "[i]t was so significant[;] I don't know how we could have issued an opinion on the financials without taking a position on that."[32] D&T concluded that the increase in the A/R Reserve was attributable to facts and circumstances that occurred during Q3 2003 – switching to the use of updated blended average collection rates versus the most recent period's collection rates to calculate A/R reserves – and that the appropriate accounting treatment was a change in accounting estimate recorded as a current period charge in the financial statements for the quarter ended March 31, 2003.[33] D&T testified that it too stands by its unqualified audit opinions.[34]

PwC performed annual audits of Gentiva's financial statements, which were included in Gentiva's filings with the SEC, through December 31, 2002, the fiscal year including Gentiva's

---

[28] See id. at ¶ 16. The evidence cited by Defendants to support ¶ 16 is attached hereto as Exhibit "15."
[29] See Carney Dep. 228:19-229:3; 236:13-22; Drummond Dep. 384:10-385:9. The cited deposition excerpts are attached collectively hereto as Exhibit "16."
[30] See Corona Dep. 105:19-107:8; 364:11-365:24; 530:25-531:16; Golden Dep. 125:21-131:17; 139:6-143:7; 143:24-145:18; 276:24-278:9. The cited deposition excerpts are attached collectively hereto as Exhibit "17."
[31] Corona Dep. 70:25-71:18, attached hereto as Exhibit "18."
[32] Corona Dep. 70:5-24, included in Exhibit "18."
[33] See Corona Dep. 105:19-107:8; 364:11-365:24; 530:25-531:16; Golden Dep. 125:21-131:17; 139:6-143:7; 143:24-145:18; 276:24-278:9. The cited deposition excerpts are attached collectively hereto as Exhibit "19."
[34] See Corona Dep. 103:5-18; 365:21-24; 530:25-531:16; Golden Dep. 276:24-278:9; Moore Dep. 271:25-272:3. The cited deposition excerpts are attached collectively hereto as Exhibit "20."

sale of its SPS Division to Accredo.[35] Included in PwC's work papers – for both annual audits and interim quarterly reviews of financial statements – were the valuation analyses of Gentiva's A/R and A/R Reserve.[36] According to PwC partner, Timothy Weld, PwC was comfortable with the A/R Reserve for the SPS Division through June 13, 2002, the closing date for Accredo's purchase of Gentiva's SPS Division.[37] Because PwC concurred that the A/R Reserve was prepared in accordance with GAAP and not materially misstated as of June 13, 2002 – the date Mr. Regan opines that the A/R Reserve calculation contained an error – there was no accounting error known to Accredo that could have been recorded on that date. Accordingly, any problems that might arise relating to the adequacy of the A/R Reserve would have to be treated as a change in accounting estimate. PwC testified that it stands by its unqualified audit opinions.[38]

Glennon E. Moyers, a partner at KPMG, provided a detailed and well-reasoned expert opinion regarding Accredo's treatment of the increase in the A/R Reserve. According to Mr. Moyers, the increase in the A/R Reserve was not the result of a correction of an accounting error, but a change in accounting estimate.[39] As Mr. Moyers stated:

> Accredo properly recorded the increase in the [A/R Reserve] as a change in accounting estimate in the financial statements included in the Form 10-Q for the quarter ended March 31, 2003, filed with the SEC on May 5, 2003, as prescribed by APB Opinion 20 – "Accounting Changes" – resulting from better insight and improved management judgment.[40]

Mr. Regan's expert opinion does not involve the application of a complex expert methodology, but rather his analysis should consist of a simple review of the actions taken by Accredo with respect to the A/R Reserve through the lens of GAAP. The "expert" principles at

---

[35] Weld Dep. 19:16-20:12. All cited excerpts from the deposition of Timothy Weld are attached collectively hereto as Exhibit "21."
[36] Weld Dep. 56:7-57:20; 59:12-22.
[37] Weld Dep. 180:25-182:8.
[38] Weld Dep. 181:18-21.
[39] *See* Expert Report of Glennon E. Moyers ("Moyers Report") at p. 42, attached hereto as Exhibit "22"; Moyers Rebuttal at pp. 14-16.
[40] Exhibit "22."

issue – and to be applied – are GAAP and other associated accounting guidance. Accordingly, pursuant to Rule 702, the admissibility of Mr. Regan's purported expert opinion depends upon the reliability of his application of GAAP to the facts of this case. "*Daubert* provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: 'testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (citing *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94)). Mr. Regan's opinions are not necessarily suitable for evaluation under the aforementioned factors, given that it is his application of established accounting principles to the facts. Regardless, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). As the facts of this case show, two independent audits by two "Big Four" accounting firms and the expert opinion of a partner from another "Big Four" accounting firm all agree that Accredo properly treated the adjustment to the A/R Reserve as a change in accounting estimate and recorded the adjustment in Q3 2003. Moreover, the fourth "Big Four" accounting firm concurred that the A/R Reserve was prepared in accordance with GAAP and not materially misstated as of June 13, 2002, the date Mr. Regan opines that the A/R Reserve calculation contained an error. To accept Mr. Regan's opinions is to invalidate these facts and the work of notable experts in the relevant accounting community, all of which are in concurrence. Accordingly, the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan.

### C.      Mr. Regan's Purported Expert Opinions and Testimony are not Relevant.

Pursuant to Rule 702, to be relevant, expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Mr. Regan's testimony will offer no such assistance to the jury. According to Mr. Regan, Accredo's failure to properly account for the adjustment to the A/R Reserve resulted in the material misstatement of particular Accredo financial statements.[41] Mr. Regan's purported expert opinion as to why these statements are misstated – upon which Plaintiffs must rely to prove the alleged fraud – does not assist the jury in determining if those financial statements were, in fact, misstated, so as to support Plaintiffs' claims.

Not only does Mr. Regan erroneously present opinions contrary to both every other accounting firm (and their unqualified audit opinions) involved in this case and the record facts, but he opines in direct contradiction to the same accounting guidance he was hired to apply to those facts. Permitting Mr. Regan to present his opinions to the jury regarding Accredo's treatment of the increase in the A/R Reserve presents information to the jury that is contradictory to applicable accounting guidance, SAB 61, and to GAAP. Rather than assist the jury in determining any issue of fact, Mr. Regan's expert opinions and associated testimony will only serve to confuse the jury. The Court should, therefore, exclude all expert analysis, opinions, and testimony provided by Mr. Regan as irrelevant to this matter because it offers no assistance to the jury in determining whether Accredo complied with GAAP in its accounting treatment of the increase in the A/R Reserve.

---

[41] *See* Regan Report at p. 43.

### D.  Mr. Regan's Purported Expert Opinions and Testimony are Substantially More Prejudicial than Probative.

Even if the Court were to find Mr. Regan's analysis reliable and relevant under *Daubert*, the Court should still exclude his purported expert opinions and testimony, pursuant to Federal Rule of Evidence 403, because they will only serve to confuse the issues and mislead the jury, thereby unfairly prejudicing Defendants. As stated above, not only does Mr. Regan erroneously present opinions contrary to the facts in this case, but he opines in direct contradiction to the same accounting guidance he was hired to analyze. Permitting Mr. Regan to present his opinions to the jury regarding Accredo's treatment of the increase in the A/R Reserve will only permit the presentation of information to the jury that is contradictory to applicable accounting guidance, SAB 61, and GAAP. Rather than assist the jury in determining any issue of fact, Mr. Regan's expert opinions and associated testimony will only serve to confuse the jury, unduly and unfairly prejudicing Defendants. Accordingly, the Court should exclude all expert analysis, opinions, and testimony provided by Mr. Regan as irrelevant to this matter under Rule 403.

### I.  CONCLUSION

For the reasons stated above, the Court should grant Defendants Motion to Exclude the Expert Opinions and Testimony of D. Paul Regan.

Respectfully submitted this 8th day of September, 2008.

        s/ Douglas F. Halijan
        Jef Feibelman   (BPR # 7677)
        Douglas F. Halijan (BPR 16718)
        BURCH, PORTER & JOHNSON, PLLC
        130 North Court Avenue
        Memphis, TN  38103
        (901) 524-5000

        Peter Q. Bassett
        Kelly C. Wilcove
        Scott N. Sherman
        Mark D. Trainer
        ALSTON & BIRD LLP
        1201 West Peachtree Street
        Atlanta, GA  30309-3424
        (404) 881-7000

        Attorneys for Defendants Accredo Health, Inc.,
        David D. Stevens, and Joel R. Kimbrough

- 15 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded *via* the Court's electronic filing system, this 8th day of September, 2008 to:

Tor Gronborg
Mark Solomon
Trig R. Smith
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
401 B Street, Suite 1700
San Diego, CA 92101

Timothy A. DeLange
Blair A. Nicholas
BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
12544 High Bluff Drive, Suite 150
San Diego, CA 92130

B.J. Wade
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street Building
Memphis, TN 38103

s/ Douglas F. Halijan