IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION ) ) ) ) ) ) ) ) ) | Civil Action No. 03-CV-2216-BBD  CLASS ACTION |
| This Document Relates To: | |
| ALL ACTIONS | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR *DAUBERT* MOTION TO EXCLUDE THE EXPERT OPINIONS AND TESTIMONY OF MERCER BULLARD**

Defendants Accredo Health, Inc. ("Accredo"), David D. Stevens ("Stevens"), and Joel R. Kimbrough ("Kimbrough") (collectively, "Defendants"), respectfully submit this Memorandum in Support of their *Daubert* Motion to Exclude The Expert Opinions and Testimony of Mercer Bullard ("Defendants' Motion").

## I.    INTRODUCTION

Plaintiffs retained Professor Mercer Bullard solely to provide expert testimony regarding the Sarbanes-Oxley Act of 2002 (hereinafter "SOX") and to render an opinion as to whether Mr. Stevens, the former Chief Executive Officer ("CEO") of Accredo, and Mr. Kimbrough, the former Chief Financial Officer ("CFO") of Accredo, violated Sections 302 and 906 of SOX by filing purportedly false and misleading certifications for Accredo's 2002 Form 10-K, 1Q 2003 Form 10-Q and 2Q 2003 Form 10-Q. Professor Bullard submitted his report on December 20, 2007 (the "Bullard Report"), submitted his rebuttal report on February 22, 2008 (the "Bullard Rebuttal Report") (collectively the "Bullard Reports" attached hereto as Exhibits "A" and "B"),

and provided related deposition testimony on March 19, 2008 (Bullard Deposition transcript attached hereto as Exhibit "C"). The purported expert opinions and related testimony provided by Professor Bullard are inadmissible under the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., v. Carmichael*, 526 U.S. 137 (1999) for the following three reasons:

- The Bullard Reports and related testimony provide irrelevant information because purported SOX violations are neither discussed nor alleged in the Complaint;

- The Bullard Reports and related testimony are impermissible legal conclusions; and

- The Bullard Reports and related testimony are not reliable, are misleading, and will confuse the trier of fact, unequivocally rendering them more prejudicial than probative in violation of Fed. R. Evid. 403.

Accordingly, the Court should exclude the Bullard Reports and all related testimony, analyses, opinions, and/or documents relied on by Professor Bullard in this matter.

## II.   LAW AND ANALYSIS

### A.   Standards for Admissibility of Expert Opinions and Testimony.

Federal Rule of Evidence 702 governs the use of expert testimony. In *Daubert*, the Supreme Court established the standard for admissibility of scientific expert testimony under Rule 702. The Supreme Court held that Rule 702 requires a trial judge to exercise a "gatekeeping" role and assure both the reliability and the relevance of scientific testimony or evidence. *Id.* at 589. "The relevance requirement directs that there be a 'fit' between the testimony and the issue to be resolved by the trial. The reliability requirement is designed to focus on the methodology and principles underlying the testimony." *United States v. Pollard*,

2

128 F. Supp. 2d 1104, 1116 (E.D. Tenn. 2001) (citing *United States v. Bonds*, 12 F.3d 540, 555-56 (6th Cir. 1993). As the Sixth Circuit has stated:

> a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Second, ***the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue."*** Third, ***the testimony must be reliable***. Rule 702 guides the trial court by providing general standards to assess reliability: whether ***the testimony is based upon "sufficient facts or data,"*** whether ***the testimony is the "product of reliable principles and methods,"*** and whether ***the expert "has applied the principles and methods reliably to the facts of the case."*** In addition, *Daubert* provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: "***testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community***."

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (internal citations omitted) (emphasis added).

The Supreme Court extended *Daubert* to non-scientific expert testimony in *Kumho*. Under *Kumho*, the obligations imposed on a trial judge by *Daubert* apply to all expert testimony and "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, [ ] the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). <u>Moreover, if any step of a purported expert's analysis is found unreliable, the entire testimony must be excluded.</u> *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

### B. <u>Professor Bullard's Opinions Are Irrelevant and Unreliable, Are Impermissible Legal Conclusions, And Therefore Inadmissible.</u>

The opinions expressed in the Bullard Reports contain no independent analysis of the underlying record evidence, and merely conclude without support that based on an unfounded

3

assumption that Plaintiffs' Complaint allegations of fraud are true, necessarily Mr. Stevens and Mr. Kimbrough violated SOX Sections 302 and 906. (Bullard Report at 19; Bullard Dep.167:10-19.) The Bullard Reports otherwise contain only general background information concerning SOX. All such discussions concerning and conclusions related to SOX are entirely irrelevant to this litigation where there exists no SOX claim or any reference thereto anywhere in the Complaint or otherwise. Moreover, the Bullard Reports are not reliable and provide no guidance that will assist the trier of fact and will only serve to confuse the jury. As Professor Bullard conceded during his deposition, the Bullard Report contains no independent factual analysis. (Bullard Dep. 112:10-19, 115:6-8, 122:4-7, 147:7-14, 167:101-19, 171:22-172:6 321:11-19.) In fact, Professor Bullard failed to consider key deposition testimony and record evidence, notably, for example, failing to review any of the testimony, exhibits, or audit work papers of any of the external auditors involved in this case. Nevertheless, he opines that Mr. Stevens' and Mr. Kimbrough's certifications were false and misleading, even though he does not (nor can he) testify that the financials did in fact contain materially false or misleading information. Notably, Professor Bullard completely discounts the fact that Accredo's financial statements at issue have never been restated, and that Accredo's external auditors during the Class Period have never withdrawn their unqualified audit opinions concerning Accredo's financial statements and, in fact, have testified that Accredo's financial statements during the Class Period were not materially misstated in any respect. (*See* Defendants' Statement of Undisputed Facts, ¶¶ 16, 61 (Drummond Dep. 182:10-184:11; 357:21-358:17; 371:24-373:13; 374:14-379:18; Harding Dep. 127:10-24; Kimbrough Dep. 330:3-331:5; 427:14-428:13; SPS Division Audited Balance Sheet as of June 13, 2002, with Report of Independent Auditors, EY002857, 2859; SPS Division Audited Financial Statements for years ended December 30, 2001, December 31, 2000 and

January 2, 2000, with Report of Independent Auditors, SPS-E-00741147, 00741149; SPS Division Audited Financial Statements for nine months ended September 30, 2001, and years ended December 31, 2000 and January 2, 2000, with Report of Independent Auditors, ACDO-SD 044725, 044727; Aug. 6, 2001 Gentiva Audit Committee Meeting Minutes, PWC 002369-70 (filed under seal); May 9, 2002 Gentiva management representation letter for the quarterly period ended Mar. 31, 2002, PWC 002809 (filed under seal); Aug. 13, 2002 Gentiva management representation letter for the quarterly period ended June 30, 2002, PWC 004186-87 (filed under seal); May 9, 2002 Gentiva management representation letter for the quarterly period ended Mar. 31, 2002, PWC 000989-90 (filed under seal); May 8, 2002 Gentiva management representation letter for the years ended Dec. 30, 2001 and Dec. 31, 2000, PWC 000988 (filed under seal); Apr. 9, 2002 Gentiva management representation letter for the years ended Dec. 30, 2001, Dec. 31, 2000 and Jan. 2, 2000, SPS1117-21; Apr. 19, 2002 Gentiva management representation letter for the years ended Dec. 30, 2001 and Dec. 31, 2000, PWC 000997 (filed under seal); Mar. 22, 2002 Gentiva management representation letter for the years ended Dec. 30, 2001 and Dec. 31, 2000, PWC 000991-96 (filed under seal); Feb. 8, 2002 Gentiva management representation letter for the years ended Dec. 30, 2001, Dec. 31, 2000 and Jan. 2, 2000, SPS1122-26.) D&T, Accredo's subsequent external auditor to E&Y, ensured that the A/R Reserve, which was calculated using the same Methodology, was not materially misstated at the end of the quarterly periods ended September 30, 2002 and December 31, 2002 by performing audit procedures at those specific reporting periods. (*See* Defendants' Statement of Undisputed Facts, ¶¶ 119 (Corona Dep. 395:4-18; Kimbrough Dep. 574:5-575:18; Moore Dep. 34:7-23; Sept. 25, 2003 Memo from Thomas Corona re: Accredo 3rd Quarter Bad Debts Charge, DT 002600 (filed under seal).) Moreover, Professor Bullard's purported expert opinions are nothing more than impermissible legal

5

conclusions. For that reason alone, the Bullard Reports and any related testimony should be excluded.

Accordingly, the Bullard Reports and any related testimony are neither relevant nor reliable, contain improper legal conclusions, and the Court should exclude them from the trial of this matter.

### 1. Professor Bullard's Purported Expert Opinions And Testimony Will Not Assist The Trier of Fact.

Under Sixth Circuit precedent and pursuant to Rule 702, to be relevant, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue," and if it does not meet this relevancy requirement, otherwise called "fit" test, then the testimony should be excluded. *United States v. LeBlanc*, 45 F. App'x 393, 399 (6th Cir. 2002). The Bullard Reports and accompanying testimony will offer no such assistance to the trier of fact because they fail to relate in any way to the relevant legal issues involved in this case, and instead focus entirely on whether Defendants violated SOX, which is nowhere referenced in the Complaint. Indeed, there is no private right of action under the certifications provisions of SOX discussed by Professor Bullard. (Bullard Dep. 132:4-11.); *see e.g., In re Intelligroup Securities Litigation*, 468 F. Supp. 2d 670, 706-07 (D.N.J. 2006). Significantly, at no time during the last five years of this litigation outside of the Bullard Reports and related testimony was SOX even mentioned.

In the end, the Bullard Report contains nothing more than irrelevant conclusions based on an impermissible assumption that Plaintiffs' allegations are true. This conclusion fails to assist the trier of fact in any capacity other than to tell them what conclusion to reach if Plaintiffs are able to prove their allegations – which they cannot. Professor Bullard even confirmed during his deposition that the Bullard Report is not a "a real world opinion . . . as to the violations of the

law based on the actual facts . . . [but] based on a hypothetical set of facts." (Bullard Dep. 172:14-173: 9.)

In addition, Professor Bullard's Reports largely provide irrelevant extensive background information on SOX -- roughly twelve and one-half pages of the Bullard Report summarize the background of SOX generally. (*See* pages 1-12.) Mr. Bullard then spends the next three pages discussing additional Sox Sections SOX, 303, 306, 402, 406, 409, 403 and 304, on which Plaintiffs do not even attempt to rely. Similarly, roughly half of the Bullard Rebuttal Report discusses irrelevant background information on various portions of SOX. (*See* Rebuttal Report at 1-13.) For example, SOX Section 306 discusses the prohibition of directors and officers from buying and selling company shares during blackout periods and Section 402 discusses the prohibition of companies from making personal loans to their executives - no such claims exist in this case, and the introduction of any such irrelevant and non-probative discussion will only serve to confuse the jury. *Lake Mich. Contractors, Inc. v. Manitowoc Co.*, 225 F. Supp. 2d 791, 796 (W.D. Mich. 2002) (excluding expert report that did not meet the "fit" requirement for allowing expert testimony – "[i]n fact, portions of the Supplemental Report are so far a field that one familiar with the facts in this case would be compelled to wonder after reading the report whether it was prepared for a different case").

Moreover, Plaintiffs' only purpose in attempting to introduce irrelevant expert testimony is presumably to belatedly argue in circular fashion that, assuming Mr. Stevens and Mr. Kimbrough are found liable for the conduct as alleged in Plaintiffs' Complaint, they necessarily filed false and misleading certifications in violation of SOX, which, in turn, means that that Mr. Stevens and Mr. Kimbrough acted with scienter under Sections 10(b) and 20(a) of the Securities Exchange Act. The law does not allow Plaintiffs to try to establish scienter in this manner,

particularly where, as here, Plaintiffs fail to allege a claim for a SOX violation or otherwise even attempt to mention SOX in their Complaint. Indeed, nowhere do Plaintiffs even attempt to explain the purported link between SOX certifications, internal controls, and their Complaint allegations regarding the SPS accounts receivable and related reserve, which notably never led to any restatement of Accredo's financial statements. *See e.g., Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007) (holding that the Sarbanes-Oxley certification did not permit an inference of scienter where "CLPF does not clearly explain the link between these statements about the internal controls and the actual accounting and reporting problems that arose" and where "IES urges that there is not an allegation that on a particular date the certifications were made, the internal controls at IES were inadequate").

Here, not only are such allegations conspicuously lacking from the Complaint, but at no time during the five years of litigating this case have Plaintiffs ever raised a SOX claim against Defendants. Now they attempt to confuse the trier of fact with this irrelevant information in an effort to bolster their baseless claims of securities fraud.

Professor Bullard indeed has no relevant "expertise" to even be proffered in this matter. As he testified during his deposition, even if SOX were relevant here, he has no practical experience concerning SOX. Although he is a law professor who teaches securities-related courses, he has never written any peer-reviewed article, presented at a panel or meeting specifically related to SOX, or ever testified concerning SOX. He also has no experience with healthcare companies or related to A/R reserves. (Bullard Dep. 35:23-36:5; 36:15-17; 48:22-24; 73:16-24.)

The Court should exclude all expert reports and associated opinions and testimony provided by Professor Bullard.

8

## 2. Mr. Bullard's Expert Opinions Are Improper Legal Conclusions.

The Sixth Circuit, along with the other circuit courts across the country, recognizes the well-established evidentiary principle under Fed. R. Evid. 704 that "testimony offering nothing more than a legal conclusion - *i.e.,* testimony that does little more than tell the jury what result to reach -- is properly excludable under the Rules." *Woods v. Lecreux*, 110 F.3d 1215, 1220 (6th Cir. 1997); *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994); *see also Good Sheperd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992); *Morris v. Kee*, No. 06-2244 M1V, 2008 WL 2073492, at *3 (W.D. Tenn. Feb. 26, 2008).

The Western District of Tennessee has dealt squarely with this issue and has excluded expert opinions and testimony based on impermissible legal conclusions. Recently, in *Morris v. Kee,* Judge Diane Vescovo granted a motion to exclude the legal conclusions of a plaintiff's purported expert, holding that a legal expert cannot "recite[] his understanding of the law . . . and then offer[] his opinion on what legal conclusion the jury should reach if the jury finds certain facts. It is the judge's province to instruct the jury on the law, and the jury's province to apply the law to the facts." 2008 WL 2073492, at *3; *Jones v. J.B. Hunt Transp., Inc.*, No. 2-2018, 2003 WL 25676127, at *3 (W.D. Tenn. July 21, 2003) (granting motion to exclude testimony and opinions of legal expert and ruling that "[t]estimony offering a legal conclusion, that is, testimony that does little more than tell the jury what result to reach, is not likely to assist the factfinder in its determination"); *see also Klaczak v. Consol. Med. Transport Inc.*, No. 96 C 6502, 2005 WL 1564981, *4 (N.D. Ill. May 26, 2005) ("established Seventh Circuit precedent, as well as case law from this district, specifically teaches that an expert may not offer opinion testimony as to whether a defendant violated a statute or regulation . . . .") (citing *McCabe v.*

9

*Crawford & Co.*, 272 F. Supp. 2d 736, 740 (N.D. Ill. 2003) (holding that plaintiff's expert, a law professor who specialized in consumer law "may not expound on what complies and does not comply with [Fair Debt Collection Practices Act]; these are inappropriate legal conclusions")).

As the Sixth Circuit has held, "the issue embraced must be a factual one," *Berry*, 25 F.3d at 1353, and the expert cannot simply "take[] the facts, analyze[] them, and conclude[] that the Defendants" violated the law. *Bonne v. Premier Athletics*, No. 3:04-CV-440, 2007 WL 3181289, at *8 (E.D. Tenn. Oct. 29, 2007) (citing *Berry*, 25 F.3d at 1353); *Yancey v. Carson*, No. 3:04-CV-556, 2007 WL 3088232, at *5 (E.D. Tenn. Oct. 19, 2007) (same). Nevertheless, that situation is exactly what Professor Bullard provides here.

As Professor Bullard acknowledged in his deposition and is made clear in the Bullard Reports, he does not analyze any facts, but simply assumes Plaintiffs' allegations as true and then concludes that "if the allegations are proven as true," Mr. Stevens and Mr. Kimbrough violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SOX sections 302 and 906.[1] (Bullard Dep. 112:10-19, 115:6-8, 122:4-7, 147:7-14, 167:101-19, 171:22-172:6 321:11-19.) The Bullard Rebuttal Report is no better, and the scope of his opinion remains the same -- that Mr. Stevens' and Mr. Kimbrough's certifications violated SOX Sections 302 and 906. (Bullard Rebuttal Report at 22-26.) Accordingly, this Court should exclude the Bullard Reports and any related testimony in this matter.

### 3. Professor Bullard's Purported Expert Opinions and Testimony are Substantially More Prejudicial than Probative.

Even if the Court were to find the Bullard Reports otherwise admissible under *Daubert*, it should still exclude Professor Bullard's reports and related opinions and testimony pursuant to

---

[1] Also troubling is that the Bullard Reports fail to even discuss the elements of Sections 10(b) and 20(a) of the Exchange Act, but nevertheless "opines" that, if Plaintiffs' allegations are true, Mr. Stevens' and Mr. Kimbrough's certifications violated SOX Sections 302 and 906.

10

Federal Rule of Evidence 403, because they will only serve to confuse the issues and mislead the trier of fact, thereby unfairly prejudicing Defendants.

As shown, Professor Bullard's opinions and proffered testimony are not probative. In addition to the reasons discussed above, however, any potential probative value of the Bullard Reports would be substantially outweighed by the prejudice Defendants would suffer if the Bullard Reports and related opinions and testimony were permitted to be introduced.

Professor Bullard attempts to give the impression in the Bullard Reports that he conducted an analysis of the facts and relevant law to render his misguided opinion that Mr. Stevens' and Mr. Kimbrough's certifications violated SOX Sections 302 and 906. He includes in the Bullard Reports a section entitled "Evidence Considered," in which he identifies certain documents and testimony that he purportedly considered in rendering his opinions. But, as he testified during his deposition, he in fact considered none of these documents and testimony in rendering his opinion in the Bullard Report, but instead relied solely on an assumption that some, although not all,[2] of the complaint allegations in Plaintiffs' Complaint were true and that certain allegations in Accredo's withdrawn complaint against E&Y also were true. (Bullard Dep. 112:10-19, 115:6-8, 122:4-7, 147:7-14, 167:101-19, 171:22-172:6 321:11-19.) The Bullard Reports also make the bald conclusion that Mr. Stevens and Mr. Kimbrough violated Section 10(b) and 20(a) of the Securities Exchange Act. (Bullard Report at 19.) Yet, he provides no analysis of either Section of the Exchange Act and provides no analysis of the facts to the law concerning those claims.

---

[2] The allegations he admits he does not assume as true are those in Accredo's withdrawn complaint against E&Y wherein Accredo states that it did not have knowledge of any accounting issues. Thus, he only excludes allegations that specifically would not support the apparent foregone conclusion that SOX and Sections 10(b) and 20(a) of the Exchange Act were violated. (Bullard Dep. 164:14-18 ("obviously if I assumed that Accredo and its executives had absolutely no knowledge and no reason to know of the error, then I would've had a different opinion in the first report").)

11

Similarly, although he claims that the Bullard Rebuttal Report is based on his analysis of the relevant facts and testimony, during his deposition, he admitted that, although over forty depositions were taken in this case, he was only given between ten and fifteen to review and ultimately only considered five fact witness depositions. (Bullard Dep. 239:4-7; *see generally* Bullard Reports.) Those depositions notably excluded every one of the external auditors in this case, including a review of any of the depositions, exhibits, or work papers of PwC, E&Y, or D&T. (Bullard Depo. 120:23-126:25.) Nevertheless, although he has no ability to state one way or the other whether any of Accredo's financial statements were in fact false or misleading (Bullard Dep. 313:20-23), he opines that Mr. Stevens' and Mr. Kimbrough's certifications violated SOX Section 302 for filing a false or misleading certification because they purportedly knew that Accredo's internal controls were inadequate. Apparently, according to Professor Bullard, it does not matter whether the financials were actually misstated or misleading. It also does not change his opinion that Accredo never restated any of its financials or that none of Accredo's external auditors ever withdrew any of their unqualified audit opinions. Based on his purported review of only a few of the depositions and documents in this case, he provides a legal conclusion that Mr. Stevens and Mr. Kimbrough violated a provision of a statute that has no private right of action and is not even mentioned in the Complaint.

In addition, Professor Bullard misrepresents certain documents on which he purportedly relies in the Bullard Reports. For example, he cites to an NASD letter and opines that "Accredo itself stated in a letter to the NASD that Kimbrough and Stevens had additional knowledge of relevant and *material* potential problems with the accounts receivable as of February 12, 2003." (Bullard Report at 17 (emphasis added).) During his deposition, however, he acknowledged that the NASD letter nowhere mentions the word "material" as is suggested in his Report. (Bullard

Dep. 200:22-201:4.) In fact, like most of his answers, when confronted with contradictions or misleading aspects of the Bullard Reports, Professor Bullard danced around the answer, and ultimately finally admitted the lack of clarity in his Reports: "That's a document that [Plaintiffs] thought was relevant, and I read it, and my characterization of it probably could've been clearer without using the term material, because that term really goes back to the allegations that I assumed to be true. At that point I had no independent opinion as to whether the potential problems were material." Nevertheless, from a review of the Bullard Report, the trier of fact could certainly read his statements and not only improperly conclude that the NASD letter stated that the Defendants were aware of "material" problems, but that Professor Bullard made a factual conclusion based on his own analysis, both of which would be false. This is the exact type of confusion Section 403 of the Federal Rules of Evidence was intended to prevent.

Moreover, Professor Bullard's bare and unsupported conclusions that Accredo did not have appropriate internal controls regarding its A/R Reserve are equally misleading and confirm that the only basis for his conclusions rest on incomplete information. Outside of general discussions about what internal controls should entail under SOX, paragraph 38 of the Bullard Rebuttal Report contains the only specific examples presented by Professor Bullard concerning what internal controls he believes should have been in place related to the A/R Reserve:

> With respect to the calculation of accounts receivable reserves, reasonable internal controls necessarily would include the periodic review of the most current data available. This is why Johnson considered aging bucket percentages to be something that needed to be updated 'in the normal course of business.

(Bullard Rebuttal Report at 24.) If Professor Bullard had reviewed the depositions of the various external auditors in this matter and their work papers, including the work of E&Y (Accredo's external auditors), he would have understood that Accredo took these very steps to ensure the adequacy of the A/R Reserve. (*See* Defendants' Statement of Undisputed Facts, ¶¶ 24, 25, 28

13

(Drummond Dep. 217:14-218:25; Weld Dep. 169:1-170:25; 173:10-174:13; Glennon E. Moyers Expert Report, p 14; E&Y Working Paper for SPS Division at June 13, 2002, EY003007; E&Y Working Paper for SPS Division at June 30, 2002, ADCO 122 0414, 0416; E&Y Working Paper for SPS Division at Sept. 30, 2002, ADCO 122 0299-00; E&Y Working Paper for SPS Division at Dec. 31, 2002, EY000436; Nov. 18, 2002 E-mail from Pam Mason to Sam Daniel and attached SPS Reserve Analysis, ACDO-SD 047402-03, 047406-09; May 12, 2003 E-mail from Sam Daniel to Brian Johnson and Pam Mason and attached Triangles, ACDO-SD 107749-50, 107845, 107942, 108047, 108171; Gentiva calculation of A/R Reserve based on updated cash collection at Mar. 31, 2002, PWC 002393-401 (filed under seal); Updated triangles as of Mar. 31, 2002, PWC 002377-83, EY003007 (filed under seal); Gentiva calculation of A/R Reserve based on updated cash collection as Sept. 30, 2001, PWCDBS 0003789-808 (filed under seal); Gentiva Sept. 30, 2001 Allowance Summary, PWCDBS 0003781-88 (filed under seal); Gentiva June 30, 2001 Client Allowance and Estimate Calculation, PWCDBS 0003454-57; Gentiva calculation of A/R Reserve based on updated cash collection at Mar. 31, 2001, PWCDBS 0003218-43 (filed under seal); Gentiva calculation of A/R Reserve based on updated cash collection at Dec. 30, 2001, PWCDBS 0001900-27 (filed under seal); Corona Dep. 203:20-206:21; Updated Collection Rate Triangulations for Nov. 2002, ADCO 125 8714-82; Updated Collection Rate Triangulations for Dec. 2002, ADCO 125 8783-8807-47; Updated Collection Rate Triangulations for Jan. 2003, ADCO 125 9106-54).)

Moreover, if he reviewed the deposition testimony of Accredo employees, including Mr. Kimbrough, Accredo's Corporate Controller, Sam Daniel, and Accredo's Director of Accounting, Pam Mason, he would have seen the testimony and documents that confirmed that the reserve was updated. (*See* Defendants' Statement of Undisputed Facts, ¶¶ 24, 25, 28 (Daniel Dep.

14

47:10-52:16; 187:18-188:17; Kimbrough Dep. 28:3-44:4; 60:19-62:1; Daniel Dep. 34:9-37:1, 41:14-52:17, 70:25-76:23, 85:25-91:20, 186:16-188:6; 198:16-199:9; 462:5-463:19; Johnson Dep. 650:15-654:2; Kimbrough Dep. 17:14-20, 17:25-18:4, 23:1-22, 28:3-44:4, 65:25-69:7; Mason Dep. 171:6-176:16; Moyers Dep. 110:14-113:21; Regan Dep. 167:23-169:1; Stevens Dep. 570:2-570:22; Weld Dep. 173:10-174:13).) Even Plaintiffs' own retained accounting expert, Mr. D. Paul Regan, testified that the percentages used in the calculation of the A/R Reserve were updated. (*See* Regan Dep. 167:23-169:1.)

Equally troubling are the headings in the Bullard Rebuttal Report, such as Section III.A., entitled "The Substantial Error in Accounts Receivable Reserves," which misleads the reader to believe that Professor Bullard is opining as to whether the A/R Reserve contained an error. Not only does Professor Bullard have neither the expertise nor background to opine on such matters, as he is not an accountant or CPA, he also made clear during his deposition that he took no effort to review the depositions, exhibits or work papers of any external auditors in this case. (Bullard Dep. 242:16-18, 321:11-18.)[3] In short, the Bullard Reports are nothing more than a sheep dressed up in wolf's clothing and based on incomplete facts, irrelevant legal analyses, and improper and impermissible conclusions.

### III.   CONCLUSION

For the reasons stated above, the Bullard Reports and related opinions, testimony, and documents should be excluded from the trial of this case. Defendants respectfully request that the Court grant Defendants' Motion to Exclude the Expert Opinions and Testimony of Professor Mercer Bullard.

---

[3] The fact that Professor Bullard reviewed the deposition of Plaintiffs' accounting expert, Paul Regan, does not provide him with the ability to separately opine on an area upon which he is not qualified to testify.

15

Respectfully submitted this 8th day of September, 2008.

> s/ Douglas F. Halijan
> Jef Feibelman  (BPR # 7677)
> Douglas F. Halijan   (BPR # 16718)
> BURCH, PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, TN  38103
> (901) 524-5000
>
> Peter Q. Bassett
> Kelly C. Wilcove
> Scott N. Sherman
> Mark D. Trainer
> ALSTON & BIRD LLP
> 1201 West Peachtree Street
> Atlanta, GA  30309-3424
> (404) 881-7000
>
> Attorneys for Defendants Accredo Health, Inc., David D. Stevens, and Joel R. Kimbrough

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded *via* the Court's electronic filing system, this 8th day of September, 2008 to:

> Tor Gronborg
> Mark Solomon
> Trig R. Smith
> COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
> 401 B Street, Suite 1700
> San Diego, CA  92101
>
> Timothy A. DeLange
> Blair A. Nicholas
> BERNSTEIN LITOWITZ BERGER & GROSSMANN, LLP
> 12544 High Bluff Drive, Suite 150
> San Diego, CA  92130
>
> B.J. Wade
> GLASSMAN EDWARDS WADE & WYATT, P.C.
> 26 N. Second Street Building
> Memphis, TN  38103

> s/ Douglas F. Halijan