UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

| | |
|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION This Document Relates To: ALL ACTIONS. | ) Civil Action No. 03-2216-BBD ) ) <u>CLASS ACTION</u> ) ) LEAD PLAINTIFFS' MOTION *IN* ) *LIMINE* NO. 11 LIMITING EXPERT ) TESTIMONY FROM ) CHRISTOPHER M. JAMES TO ) THOSE OPINIONS SET FORTH IN ) HIS EXPERT REPORTS ) |

Lead Plaintiffs, Louisiana School Employees' Retirement System and Debra Swiman ("Lead Plaintiffs") and the Class of investors who purchased Accredo stock between June 16, 2002 and April 7, 2003, respectfully move for an Order precluding Defendants' designated expert, Christopher M. James ("James"), from offering testimony at trial that there is no causation or that the Class suffered no damages. The basis for the motion is that, to date, James has not offered an opinion that there is no causation or that the Class suffered no damages. This motion is made pursuant to Federal Rules of Civil Procedure 26(a) and 26(e) and Federal Rules of Evidence 702 and 703.

I.   BACKGROUND

This case arises out of Defendants' alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. The central issues to be decided at trial by the jury are whether Defendants disseminated materially false and misleading statements or omissions, with scienter, and whether the eventual disclosure of the truth caused Accredo's shareholders damage. *Dura*, 544 U.S. at 341-42; *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001).

Lead Plaintiffs allege that Defendants' false statements and omissions throughout the Class Period covered up the materially overstated value of the receivables acquired in Accredo's acquisition of Gentiva's Specialty Pharmaceutical Services Division ("SPS") and obfuscated the fact that the SPS acquisition would not be immediately accretive. Prior to the market's opening on April 8, 2003, Accredo disclosed in a press release that it was "examining the adequacy of the reserves of the accounts receivable that it acquired on June 13, 2002 as part of its purchase of [SPS]" and that it was revising downward fiscal year 2003 revenue and earnings estimates. Accredo's stock value plummeted 44%, from a price of $25.40 per share on April 7, 2003 to a price of $14.29 per share at the close of business on April 8, 2003.

II.     ARGUMENT

    A.     James' Expert Testimony Should Be
           Limited to Opinions Set Forth in His Reports

Defendants designated James to offer alleged expert testimony on the issue of damages. Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert to submit a report that includes "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions. . ."

On December 21, 2007, James submitted his expert report pursuant to Fed. R. Civ. Pro. 26(a)(2)(B) regarding "potential damages as a result of the misstatements or omissions related to the accounts receivable that Accredo acquired when it purchased [SPS] on June 13, 2002, as alleged in the [Complaint]." *See* Expert Report of Christopher M. James ("Report"), attached to the Declaration of Timothy A. DeLange in Support of Plaintiffs' Motion *In Limine* No. 11 Limiting Expert Testimony From Christopher M. James to Those Opinions Set Forth In His Expert Reports ("DeLange Decl.") as Exhibit ("Ex.") A, at 2. On February 22, 2008, James submitted a rebuttal report to "respond to the conclusions in the Hakala Report." *See* Expert Rebuttal Report of Christopher M. James ("Rebuttal Report"), attached to the DeLange Decl. as Ex. B, at 1.

In both the Report and the Rebuttal Report, James offers an opinion quantifying the maximum amount of damages caused by the April 8, 2003 announcement regarding the accounts receivable. Specifically, in the Report, James opines that "at most, investors would experience a potential loss of future cash flows to the company in the amount of the charge that Plaintiffs assert should have been recorded, net of taxes (or approximately $37.5 million)." *See* James Report at 3. In the Rebuttal Report, James opines "that the impact of the announcement ***related***

2

to the allowance for doubtful accounts receivable was a *maximum* of $1.26." *See* Rebuttal Report at 2, 30 (emphasis added).  Notably, James did not opine on causation in either the Report or the Rebuttal Report.  In other words, nowhere did he assert that the April 8, 2003 announcement did not cause damages to Accredo shareholders.  During his deposition on April 24, 2008, James testified that his Report and Rebuttal Report contained the entirety of his opinions to be rendered in this case, and that "[a]t this point in time I don't anticipate providing any opinions outside of those that are summarized in my report."  *See* Transcript of James' deposition testimony ("James Tr."), attached to the DeLange Decl. as Ex. C at 61:11-13.

With regard to the magnitude of damages, James was unequivocal that he intends to offer an opinion at trial that the maximum damages here are $1.26 per share:

> Q: Next opinion. . .
>
> "Having properly parsed out the price effect related to the change in earnings expectations as a result of the April 8th, 2003 announcement, my analysis shows that the impact of the announcement related to the allowance for doubtful accounts receivable was a maximum of $1.26 per share."  Do you see that?
>
> A: Yes.
>
> Q: Is that an opinion you intend to offer at trial?
>
> A: Yes.

James Tr. 196:19-197:13.

Since his deposition on April 24, 2008, James has not submitted any additional reports pursuant to Fed. R. Civ. P. 26(a)(2)(B), and has not supplemented his report in accordance with Fed. R. Civ. P. 26(e).  Accordingly, James' purported expert opinions at trial are limited to those opinions set forth in the Report and Rebuttal Report, namely that the impact of the announcement related to the allowance for doubtful accounts receivable was a maximum of

$1.26.  Accordingly, James should be precluded from offering a new opinion at trial that there are no damages.  *See* Fed. R. Civ. P. 26(a)(2)(B) (expert report must include complete statement of all opinions to be offered at trial); Fed. R. Civ. P. 26(e) (setting forth requirements for supplementing required disclosures under Fed. R. Civ. P. 26).

   B.  Any New Opinion That Accredo Investors
      Have Suffered No Damages Lacks Reliability

  Federal Rule of Evidence 702 provides:  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the Supreme Court held that the district court has a "gatekeeping" function "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 597.  The reasoning behind this approach is clear: "Scientific expert testimony carries special dangers to the fact-finding process because it 'can be both powerful and quite misleading because of the difficulty in evaluating it.'"  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321, n.17 (9th Cir. 1995), *on remand, cert. denied*, 516 U.S. 869 (1995) (internal citation omitted).  The burden is on the party offering the expert testimony to establish admissibility.  *Bourjaily v. U.S.*, 483 U.S. 171 (1987).

  During his deposition, James hinted that instead of opining that damages related to the April 8, 2003 announcement were a "maximum of $1.26," that there may be zero damages relating to the announcement regarding the allowance for doubtful accounts receivable.  This opinion however, is not contained or supported in either of the Reports and James himself was unable to provide any reliable scientific basis for such an opinion at his deposition.  In fact, instead of providing a solid technical or scientific basis for the opinion, he merely noted that it

4

was "within the realm of possibility." *See* James Tr. at 166:1-10.  This is precisely the type of speculative, unreliable opinion that should be excluded.

As confirmed by his testimony, James' suggested new opinion conflicts with the opinions in his Report and Rebuttal Report, lacks scientific basis, is unreliable, and should be excluded.

> Q: It's a new opinion that you have as you sit here today?
>
> A: No.  I think that, as I've indicated throughout both reports, I think both, that that particular number, and I said, you know, isolating the impact, the best estimate is 1.26 or [$1.26].  But you have to - - if I were going to testify at trial, I would say, you know, from a statistical perspective what we look at is whether we can accept or reject the hypothesis that the price decline is explained by the earnings revisions and changes in earnings guidance, and the statistical and scientific evidence says no.
>
> Now, I've put forth what I think is the point estimate, which is the most likely place in that confidence interval, and say that if you use that point, it's $1.26.  But I would caution a jury to say that from - - you know, if I were asked to, you know, apply my knowledge and if I were going to submit this to a set of my peers, the peers would respond by saying, but you can't say with any degree of statistical certainty that it's not $10.94, and I would say that is correct.
>
> Q: Is it your opinion that none of the stock price decline following the April 8th, 2003 announcement was attributable to the announcement of the accounts receivable reserves?
>
> A: It's certainly possible based on the historical relationship between earnings price and stock price reactions that the answer to that question is none of it.  However, if you were to ask me a separate question, which is within that interval of likely what's the most likely, you know, I'd say if you wanted me to give you a number, if Ms. Wilcove says give me a number, I'd say it's at most $1.26, but you'd have to parse that out between acute and chronic.

James Tr. at 159:4-160:14.

Indeed, James admitted that he cannot say with certainty that the announcement related to the allowance for doubtful accounts receivable caused zero damages:

> Q: Do you have a reasonable degree of certainty that it is zero?
>
> A: I think from a scientific perspective, you say the uncertainty is greater that you cannot conclude that it's different from zero.

5

> Q.   Can you conclude that it is zero?
>
> A:   I think the statistical analysis can't lead you to any conclusion other than I can't reject the hypothesis that it's zero.
>
> Q.   Are you going to testify to the jury that it's zero?
>
> A.   I can't articulate better what I would testify to the jury other than I'm going to tell them what's in my report, and if you ask me to - - can you say with a reasonable degree of certainty that it's not zero, I'm going to say no.
>
> Q.   And what are you going to say when I ask you the question, can you say with a reasonable degree of certainty that it is zero?
>
> A:   I'm going to say to the jury, I can't reject that hypothesis, okay. The data say that given the variability in returns associated with earnings response, that's certainly within the realm of possibility.

James Tr. 164:25-166:10.

As the foregoing testimony makes clear, James' suggested opinion that there are zero damages attributed to the April 8, 2003 announcement relating to the allowance for doubtful accounts receivable has no scientific or technical basis or support, is merely "within the realm of possibility," and lacks all of the indicia of reliability set forth in *Daubert*. Moreover, James' suggested opinion fails to consider other explanations within the "realm of possibility." *See Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 424 (5th Cir. 1987) (holding that where there could be "numerous causes" expert testimony "simply lacks the foundation and reliability necessary" where an expert "simply picks the cause that is most advantageous to [the defendants'] claim"). Thus, James should be precluded from offering testimony that there are zero damages.

III.   CONCLUSION

For the foregoing reasons, James' expert opinions at trial should be limited to those opinions set forth in the Report and Rebuttal Report, namely that the impact of the announcement related to the allowance for doubtful accounts receivable was "a maximum of

6

$1.26." Likewise, James should be precluded from offering a new opinion at trial, to wit, that there are no damages related to the April 8, 2003 announcement.

Dated: September 8, 2008
Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP


          *s/ Timothy A. DeLange*
          TIMOTHY A. DeLANGE

BLAIR A. NICHOLAS
TIMOTHY A. DeLANGE
BRETT M. MIDDLETON
MATTHEW P. JUBENVILLE
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
TOR GRONBORG
JONAH H. GOLDSTEIN
DAVID W. MITCHELL
TRIG SMITH
NATHAN W. BEAR
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel:   (619) 231-1058
Fax:   (619) 231-7423

*Co-Lead Counsel for Plaintiffs Louisiana School Employees' Retirement System and Debra Swiman*

GLASSMAN EDWARDS WADE
   & WYATT, P.C.
B.J. WADE
26 N. Second Street
Memphis, TN 38103
Tel:   (901) 527-4673
Fax:   (901) 521-0904

*Liaison Counsel*

8