UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

| | | |
|---|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 03-2216-BBD |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) ) | LEAD PLAINTIFFS' MOTION *IN LIMINE* NO. 12 TO PRECLUDE THE REPORTS AND TESTIMONY OF PROPOSED EXPERT RANDALL THOMAS, ESQ. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................ii-v

I.     INTRODUCTION .............................................................................1

II.    PROPOSED TESTIMONY ...............................................................2

III.   ARGUMENT ....................................................................................3

    A.     Thomas' "Expert" Opinions Are Unreliable,
        Rendering His Testimony Inadmissible ..................................3

    B.     Thomas' Reports and Proposed Testimony
        Improperly And Inaccurately Opine About the Law ...............5

        1.     Legal Standard ..........................................................5

        2.     Thomas' Opinion About Reliance On Independent Auditors
            Is Inaccurate and Irrelevant.......................................6

        3.     The Thomas Reports Offer A Contrived And Misleading
            Materiality Standard...................................................7

        4.     The Thomas Reports Inaccurately State That An Allowance
            for Doubtful Accounts Is A Forward-Looking Statement ..........8

        5.     The Thomas Rebuttal Improperly Attempts To Instruct The
            Jury On The Law Related To The Truth On The Market
            Defense ......................................................................9

    C.     Thomas Improperly Offers Facts Without Personal
        Knowledge ...........................................................................10

    D.     The Thomas Reports Improperly Invade The Province of
        The Jury ...............................................................................11

        1.     Legal Standard ........................................................11

        2.     Thomas Weighs Evidence, And Offers Opinions On
            Numerous Elements Of § 10(b) ...............................12

IV.    CONCLUSION.................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adalman v. Baker, Watts & Co.*,
807 F.2d 359 (4th Cir. 1986) ................................................................5

*Aguilar v. Int'l Longshoremen's Union Local # 10*,
966 F.2d 443 (9th Cir. 1992) ................................................................6

*In re Air Crash Disaster at New Orleans*,
795 F.2d ................................................................................6, 12

*In re Apollo Group Sec. Litig.*,
2007 U.S. Dist. LEXIS 85799 (D. Ariz. 2007)................................12

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................8

*Beech Aircraft Corp. v. U.S.*,
51 F.3d 834 (9th Cir. 1995) ................................................14

*Berry v. City of Detroit*,
25 F.3d 1342 (6th Cir. 1994) ................................................5, 10

*Berson v. Applied Signal Technology, Inc.*,
2008 WL 2278670 (9th Cir. 2008) ................................................9

*Bourjaily v. U.S.*,
483 U.S. 171 (1987)................................................................2

*Brewer v. Lincoln Int'l Corp.*,
148 F. Supp. 2d 792 (W.D. Kan. 2000) ................................8

*Burkhart v. Washington Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997)................................................5

*Champagne Metals v. Ken-Mac Metals*,
458 F.3d 1073 (10th Cir. 2006) ................................................10

*City of Tuscaloosa v. Harcros Chems.*,
158 F.3d 548 (11th Cir. 1998) ................................................14

*Daubert v. Merrill Dow Pharma., Inc.*,
509 U.S. 579 (1993)................................................................1, 2, 4

*Dukes v. State*,
428 F. Supp. 2d 1298 (N.D. Ga. 2006)................................6

*GST Telecomms., Inc. v. Irwin,*
    192 F.R.D. 109 (S.D.N.Y. 2000) .......................................................12

*In re Initial Public Offering Sec. Litig.,*
    174 F. Supp. 2d 61 (SDNY 2001) ......................................................5

*Klaczak v. Consol. Med. Transp. Inc.,*
    2005 U.S. Dist. LEXIS 13607 (N.D. Ill. 2005) ...................................12

*Kumho Tire Co., Ltd. v. Carmichael,*
    526 U.S. 137 (1999) ...........................................................................5

*Law v. NCAA,*
    185 F.R.D. 324 (D. Kan. 1999) .........................................................10

*Marx & Co. v. Diners' Club, Inc.,*
    550 F.2d 505 (2d Cir. 1977) .........................................................12, 14

*Montgomery v. Aetna Cas. & Sur. Co.,*
    898 F.2d 1537 (11th Cir. 1990) ..........................................................6

*Nieves-Villanueva v. Soto-Rivera,*
    133 F.3d 92 (1st Cir. 1997) ...............................................................5

*In re NUI Sec. Litig.,*
    314 F. Supp. 2d 388 (D.N.J. 2004) .....................................................9

*Peterson v. City of Plymouth,*
    60 F.3d 469 (8th Cir. 1995) ...............................................................6

*In re PSS World Med., Inc. Sec. Litig.,*
    250 F. Supp. 2d 1335 (M.D. Fla. 2002) ..............................................9

*In re Rezulin Prods Liab. Litig.,*
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................12

*SEC v. Lipson,*
    46 F.Supp.2d 758 (N.D. Ill. 1999) .....................................................12

*Shapiro v. UJB Financial Corp.,*
    964 F.2d 272 (3d Cir. 1992) ...............................................................9

*Snap-Drape, Inc. v. Comm'r of Internal Revenue,*
    98 F.3d 194 (5th Cir. 1996) ...............................................................6

*Specht v. Jensen,*
    853 F.2d 805 (10th Cir. 1988) ............................................................6

*In re Telxon Corp. Sec. Litig.,*
    133 F. Supp. 2d 1010 (N.D. Ohio 2000) .............................................9

*Thompson v. State Farm Fire & Cas. Co.*,
    34 F.3d 932 (10th Cir. 1994) ................................................13

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976).................................................................8, 13

*Turpin v. Merrell Dow Pharms., Inc.*,
    959 F.2d 1349 (6th Cir. 1992) .................................................4

*U.S. v. DeSantis*,
    134 F.3d 760 (6th Cir. 1998) ...................................................8

*United States v. Binder*,
    769 F.2d 595 (9th Cir. 1995), .................................................12

*United States v. Feliciano*,
    223 F.3d 102 (2d Cir. 2000).....................................................5

*United States v. Leo*,
    941 F.2d 181 (3rd Cir. 1991) ...................................................5

*United States v. Sinclair*,
    74 F.3d 753 (7th Cir. 1996) .....................................................6

*Watkins v. Telesmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ...................................................3

*Weston v. Washington Metro. Area Transit Auth.*,
    316 U.S. App. D.C. 321, 78 F.3d 682 (D.C. Cir. 1996) ........6

*Woods v. Lecurveux*,
    110 F.3d 1215 (6th Cir. 1997) ...............................................11

## S<small>TATUTES</small>, R<small>ULES</small> & R<small>EGULATIONS</small>

15 U.S.C. § 78u-5(b)(2)(A)...........................................................9

15 U.S.C. § 78u-5(c)(1)(A)(i)........................................................9

Fed. R. Evid.

    § 401.........................................................................1, 14 , 15

    § 402..................................................................1, 7, 14, 15

    § 403..............................................................................1, 15

    § 602.................................................................1, 10, 11, 15

    § 702.......................................................................... passim

§ 703.................................................................................................................1, 15

§ 704..................................................................................................................11

Securities Act of 1933

§ 11.......................................................................................................................7

Securities Exchange Act of 1934

§ 10(b)...................................................................................................................1

§ 20(a)...................................................................................................................1

Louisiana School Employees' Retirement System and Debra Swiman ("Lead Plaintiffs") and the Class of investors who purchased Accredo stock between June 16, 2002 and April 7, 2003, respectfully submit this Motion *In Limine* To Preclude the Testimony of Defendants' Proposed Expert Randall Thomas, Esq.  This motion is made pursuant to Federal Rules of Evidence 401, 402, 403, 602, 702 and 703.

## I.    **INTRODUCTION**

This case arises out of Defendants' violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").[1]  The central issues are whether Defendants' statements were materially false and misleading, whether Defendants acted with scienter (did Defendants knowingly or recklessly make false or misleading statements) and whether and how much Accredo shareholders were damaged by the fraud.  In an effort to buttress their defense, Defendants seek to present the expert testimony of Professor Randall Thomas, Esq. to provide guidance to the jury regarding, *inter alia*, "good corporate governance practices," "corporate governance disclosure practices," "historical fact materiality" and "forward-looking information materiality."[2]

The admissibility of expert testimony at trial is governed by the Supreme Court's decision in *Daubert v. Merrill Dow Pharma., Inc.*, 509 U.S. 579 (1993), as now codified by Fed. R. Evid. 702. Rule 702 sets forth the test to determine the admissibility of proposed expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts

---

[1]  Defendants in this action are Accredo Health, Inc. ("Accredo"), David D. Stevens and Joel R. Kimbrough.

[2]  *See* Expert Report of Randall Thomas, Esq. ("Report"), attached hereto as Ex. A to the Declaration of Timothy DeLange in Support of Lead Plaintiffs' Motion *in limine* No. 12 to Exclude the Reports and Testimony of Proposed Expert Randall Thomas, Esq. ("DeLange Decl.") at 11-25; Rebuttal Report of Randall Thomas. Esq. ("Rebuttal"), attached hereto as Ex. B to the DeLange Decl. at 16-18.  Together, the Report and the Rebuttal are referred to as the Thomas Reports.  Excerpts from Thomas' deposition ("Thomas Depo.") are attached as Ex. C to the DeLange Decl.

or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court observed that expert evidence can be a powerful tool in assisting the jury in understanding the issues in a case, but can also be "quite misleading because of the difficulty of evaluating it." *Daubert*, 509 U.S. at 595. Because of this risk, the judge, in weighing possible prejudice against probative value, exercises more control over experts than lay witnesses. *Id.* The burden is on the party offering the expert testimony to establish admissibility. *Bourjaily v. U.S.*, 483 U.S. 171, 176 (1987). As detailed below, Defendants cannot carry their burden and Thomas' expert reports and testimony should be deemed inadmissible.

Presumably, Defendants plan to offer Thomas' testimony as "specialized knowledge," as none of his opinions regarding corporate governance or materiality fall into the category of scientific or technical knowledge. These opinions must be scrutinized carefully, however, because at bottom, they are nothing more than Defendants' attempts to present their version of the facts, and their legal conclusions regarding materiality, scienter and falsity in this case. The Thomas Reports do not aid the jury in performing its function of weighing the facts and applying the law. Instead, they are nothing more than improper interpretation, summary of the facts and misleading legal conclusions based on this one-sided consideration of the facts. Defendants' efforts to introduce a legal advocate under the guise of an expert is improper, attempts to usurp the role of both judge and jury, and should be rejected.

Accordingly, Lead Plaintiffs respectfully request that the Court issue an order precluding the testimony of Randall Thomas, Esq.

## II.   PROPOSED TESTIMONY

The Thomas Reports are comprised of numerous statements of law, assertions of purported fact and subjective conclusions, all labeled by Defendants as expert "opinions." These one-sided interpretations of the law and facts, include that:

2

-Accredo's reliance on Ernst & Young LLP to purportedly execute due diligence on the SPS allowance for doubtful accounts methodology was in accordance with "good corporate governance practices."  Report at 14; Tr. at 21:19-22:9.

-Accredo's disclosures concerning the SPS Division's allowance for doubtful accounts receivable complied with the requirements of "good corporate governance disclosure practices" Report at 14; Tr. at 21:19-22:22.

 -Accredo had no material information to disclose prior to April 7, 2003 relating to the methodology used to calculate the SPS Division's allowance for doubtful accounts *because Accredo had a good faith belief* that the methodology it was using to calculate the SPS Division's allowance for doubtful accounts receivable was appropriate.  Report at 24-25; Tr. at 21:19-22:22.

-An allowance for doubtful accounts is a projection, and is therefore a forward-looking statement.  Defendants' lack of scienter and application Private Securities Litigation Reform Act's ("PSLRA") safe harbor provisions therefore "justify dismissal of the Plaintiffs' Complaint."  Report at 17, 22-23, 25; Rebuttal at 16-18, Tr. at 21:19-23:7.

-The "truth on the market" defense should be applied here to negate the elements of scienter and falsity.  Rebuttal at 12-16.

None of these so-called opinions meets the standards for admissible expert testimony.

## III.   ARGUMENT

### A.   Thomas' "Expert" Opinions Are Unreliable, Rendering His Testimony Inadmissible

The fact that Thomas is not offering "scientific" testimony does not allow him to escape the requirements of *Daubert* and Federal Rule of Evidence 702.  *See Watkins v. Telesmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seem exactly backwards that experts who purport to rely on... practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.")  Experience can form the

foundation for an expert's testimony, but the expert still has the burden of establishing that that experience is acceptable and reliable.  "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, ***and*** how that experience is reliably applied to the facts."  Fed. R. Evid. 702, Advisory Committee's Notes, 2000 Amendments.

Here, Defendants have failed to make any such showing.  Thomas' Reports say nothing other than that his opinions are based on his "***personal experience***…in advising directors and officers concerning good corporate governance practices…my academic study of corporate governance practices, mergers and acquisitions, corporate disclosure practices, the federal securities and state corporate laws, corporate due diligence practices and a number of other areas."  Report at 2 (emphasis added).  Thomas further admits that many of the phrases and concepts he cites in his report are heretofore unheard of, of his own invention, and have not been subjected to rigorous peer review.  *See* Tr. at 248:21-249:11;250:17-251:10; 264:7-15 (historical fact materiality is "my way of characterizing what the courts' standard of materiality as it applies to historical facts, backward-looking information, so to speak."); 273:21-274:10.  Finally, Thomas fails to identify any principles or methods he applied, other than citations to cases and portions of the federal securities laws.  Such testimony which is merely the *ipse dixit* of the expert is not reliable and is properly excluded under *Daubert*.  *See Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (excluding testimony as "[p]ersonal opinion, not science, is testifying here.")

A further fundamental principle of Federal Rule of Evidence 702 and the *Daubert* progeny is that, to be admissible, expert testimony must be the "product of reliable principles and methods."  In other words, the "expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."  Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.  While there is no single test for determining

4

when expert testimony is the product of reliable principles and methods, indicia courts have traditionally looked to are whether the expert's technique has been tested, whether it has been subject to peer review and publication and whether the conclusions reached can be evaluated for accuracy. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-150 (1999).

As detailed below, many of Thomas' legal constructions appear to have been manufactured for purposes of this litigation, are inaccurate, and lack any authoritative support. Accordingly, Thomas' opinions clearly do not stem from known or verifiable principles or methods. Further, his "methodology" has not been subject to peer review or tested for accuracy, rendering his conclusions are inherently fact-specific, and unreliable. *Id.*

### B.   Thomas' Reports and Proposed Testimony Improperly And Inaccurately Opine About the Law

#### 1.   Legal Standard

The principle that expert opinion concerning the law is inadmissible is "so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle." *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (SDNY 2001). Each courtroom "comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997). The Sixth Circuit, along with ***every other Circuit Court of Appeals***, has explicitly held that experts may not invade the court's province by testifying on issues of law.[3] *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("We also believe

---

[3] *See also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) (excluding expert legal opinion "because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial"); *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000) ("in evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony [that] states a legal conclusion"); *United States v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991) (stating that "it is not permissible for a witness to testify as to the governing law"); *Weston v. Washington Metro. Area Transit Auth.*, 316 U.S. App. D.C. 321, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996) ("An expert witness may not deliver legal conclusions on domestic law"); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir. 1986) ("From beginning to end, it is obvious that Appellants proffered [the person] as an expert witness to testify in substantial part to

5

this testimony was received in violation of the Federal Rules of Evidence . . . . ***It is the responsibility of the court, not testifying witnesses, to define legal terms***.  The expert's testimony in this regard invaded the province of the court.")  Yet, in his Reports, Thomas offers numerous opinions about a variety of inaccurate and contrived legal "principles."  Thomas brings no specialized knowledge or skill to the courtroom that the judge and jury do not already possess.  As a result, he cannot be qualified as an expert in this case.  Fed. R. Evid. 702.  *See In re Air Crash Disaster at New Orleans*, 795 F.2d at 1233 (expert opinions must "bring to the jury more than the lawyers can offer in argument"); *Dukes v. State*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006), *aff's*, 212 Fed. Appx. 916 (11th Cir. 2006) (expert testimony excluded under Rule 702 as "no different from that which Plaintiff's lawyers will argue during their closing statements.").

### 2.   Thomas' Opinion About Reliance On Independent Auditors Is Inaccurate and Irrelevant

Thomas begins his report by asserting that that Accredo's decision to rely on audits performed by Ernst & Young LLP as part of its purported SPS financial due diligence was "in accordance with good corporate governance practices," and proceeds to detail what he believes are "good corporate governance practices in using independent professional firms."  Report at 11, 14.  This opinion is unreliable and inadmissible for a number of reasons.  First, as detailed above, this

---

the meaning and applicability of [law]. This flies squarely in the face of the precedent -- and the logic of that precedent. . . ."); *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law"); *United States v. Sinclair*, 74 F.3d 753, 757-58 n.1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury"); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) ("To that end, his testimony was not a fact-based opinion, but a statement of legal conclusion. The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony"); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("matters of law [are] for the court's determination. As such, they were inappropriate subjects for expert testimony"); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (en banc) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law").

opinion was manufactured solely for purposes of this litigation, and Thomas has never opined on this specific matter in a court of law.  Tr. 200:5-10;

More important, however, is the fact that Thomas admitted at his deposition that this opinion relates to the concept of due diligence, a defense which relates only to claims under § 11 of the Securities Act of 1933.  *See* Tr. at 214:2-216:25.  Here, Lead Plaintiffs are only asserting claims under §10 (b) of the Exchange Act to which the due diligence defense is not available to Defendants. Although Professor Thomas recognizes that there are no § 11 claims at issue here, he nevertheless offers the irrelevant opinion regarding Accredo's reliance.  As "[e]vidence which is not relevant is not admissible," the Court should preclude any evidence or testimony relating to this opinion.  Fed. R. Evid. 402.

### 3. The Thomas Reports Offer A Contrived And Misleading Materiality Standard

Thomas' next opinion relates to materiality, a legal standard that he admits is well-developed, and has been "adopted by the federal courts in a broad variety of cases involving federal securities laws and, for that matter, by the SEC, as well, in a broad variety of matters relating to SEC enforcement actions."  Tr. at 165:14-25.

Rather than leave materiality for the judge to instruct, and the jury to apply, Thomas attempts to improve upon it by manufacturing three materiality standards he calls "historical fact materiality," "forward-looking information materiality" and "good corporate governance disclosure practice." Report at 11-25.  The crux of his new standards is that "materiality can take on different meanings depending on whether the information that might need to be disclosed is historical information, or information concerning future contingent events."  *Id.*  at 17-18.  Thomas, however, admits that these phrases and concept are of his own invention, and that they have not been subjected to rigorous peer review.  *See* Tr. at 248:21-249:11; 250:17-251:10; 264:7-15 (historical fact materiality is "my

way of characterizing what the courts' standard of materiality as it applies to historical facts, backward-looking information, so to speak."); 273:21-274:10.

None of these standards have been adopted by any court. Far worse, these purported legal terms paint an inaccurate picture of the current state of the law on materiality.   In § 10(b) actions, a false statement or omission is material if there is a substantial likelihood that the misrepresentation "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Materiality is a mixed question of law and fact and "[d]eterminations of materiality are generally issues that are left to juries." *Brewer v. Lincoln Int'l Corp.*, 148 F. Supp. 2d 792, 803 (W.D. Kan. 2000) (citing *U.S. v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)).

Further, the PSLRA, which sets forth the law regarding forward-looking statements, did not change the definition of materiality and contains no reference to Prof. Thomas' phrase of "forward-looking information materiality."

### 4. The Thomas Reports Inaccurately State That An Allowance for Doubtful Accounts Is A Forward-Looking Statement

Thomas' next purported opinion states that "allowance for doubtful accounts receivable are projections and inherently forward-looking statements." Report at 17-18, 23. The phrase "forward-looking statement" derives from the PSLRA which provides a safe-harbor for forward-looking (i.e. predictive) statements that are accompanied by "meaningful cautionary language." 15 U.S.C. § 78u-5(c)(1)(A)(i).  Notably, Thomas' opinion ignores the plain language of the PSLRA which states that any "…forward-looking statement…(2) that is…(A) contained in a financial statement prepared in accordance with generally accepted accounting principles . . . ." ***does not qualify for the safe-harbor.*** 15 U.S.C. § 78u-5(b)(2)(A).  Further, case law holds that any statement outside the context

of the financial statements relating to reserves and their adequacy are not forward-looking.  *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 281 (3d Cir. 1992) (noting that there is "nothing unique about representations . . . regarding loan loss reserves that removes them from the purview . . . of the federal securities laws").[4]

Given this framework of applicable statutory and case law, Thomas' statement that allowances for doubtful accounts are forward-looking statements is an incorrect statement of the law and is contrary to this Court's prior rulings.  *See* Order Denying the Motion of Defendants' To Dismiss the Consolidated Complaint [Docket No. 119] ("MTD Order").  This miscalculation is not surprising given that Thomas is not an expert in the GAAP and GAAS provisions which govern accounting for allowances for doubtful accounts.  *See* Tr. 66:14-23; 68:20-69:15; 80:6-8; 84:4-2292:4-7.  Lastly, Thomas admits that he has never opined about the PSLRA safe harbor, and that part of his potential testimony would merely be related to explaining to the jury "what it is that the PSLRA safe harbor is and what sorts of factual findings might support its application in different circumstances"  *See* Tr. at 189:16-190:8.  Therefore, Thomas' opinion that allowances for doubtful accounts are projections, and therefore qualify as forward-looking statements under the PSLRA should be disallowed.

### 5. The Thomas Rebuttal Improperly Attempts To Instruct The Jury On The Law Related To The Truth On The Market Defense

In the Rebuttal, Thomas not only attempts to instruct the jury on the proper standard for establishing the truth on the market defense, but then summarily concludes that it is applicable in this case.  The Rebuttal explicitly usurps the role of the judge and instructs: "The truth in the market defense states that an alleged misrepresentation is immaterial if the information is already known to

---

[4] *See also Berson v. Applied Signal Technology, Inc.*, 2008 WL 2278670, at *6 (9th Cir. 2008) (accounts receivable are not forward-looking); *In re NUI Sec. Litig.*, 314 F. Supp. 2d 388, 401-06, 416 (D.N.J. 2004) (company's financial statements that failed to account for bad debt not forward-looking); *In re PSS World Med., Inc. Sec. Litig.*, 250 F. Supp. 2d 1335, 1340, 1351 (M.D. Fla. 2002) (same); *In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1032 (N.D. Ohio 2000) (same).

the stock market through stock analysts' reports, company disclosures, or other sources, because the misrepresentation cannot then defraud the market." Rebuttal at 12-13. It continues by citing case law, and arguing about the applicability of the cases to the facts in this case. *Id.* at 13. ("*Wielgos* is a particularly instructive case…"). Thomas himself admitted that part of his possible testimony at trial would be to "…simply explain what the truth in the market defense is, how it's applied, and why it's applied…" *See* Tr. at 183:24-184:3. He further admitted that he has never opined on the truth in the market defense. *See* Tr. at 182:19-24.

This opinion on the truth in the market defense unnecessary invades the duty of the judge to instruct the jury on the law. *Berry,* 25 F.3d at 1353.

### C.   Thomas Improperly Offers Facts Without Personal Knowledge

Large portions of the Thomas Reports contain no opinion or analysis and are simply a slanted recitation of the facts underlying this case, in violation of Federal Rule of Evidence Rule 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter…"). Thomas was not a percipient witness to any of these events and has no first hand knowledge of what may or may not have been done, known or believed by Defendants or any third parties. See Tr. at 44:23-46:7; 141:6-17; 143:23-144:6 (confirming lack of personal knowledge).

Despite this lack of personal knowledge of the facts, Thomas' Reports "sound like a **confirmation** (rather than an **assumption**)" of facts. *Champagne Metals v. Ken-Mac Metals*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006); *see also Law v. NCAA*, 185 F.R.D. 324, 341 (D. Kan. 1999) (proposed expert could not testify "as a channeler seeking to present non-expert, otherwise inadmissible hearsay"); C. Wright, *et al*., Federal Practice and Procedure § 6025 (2007 ed.)("When experts testify as to facts or other matters which do not constitute expert opinions, Rule 703's

exemption from the personal knowledge requirement does not apply.").[5]  The Thomas Reports are replete with recitations of purported historical fact as if he had direct personal knowledge of those facts.  *See e.g.* Report at 3-4 ("Accredo's management and Board of Directors had great confidence in E&Y's abilities to carry out its assigned tasks…"); Rebuttal at 17 ("…Accredo personnel had no knowledge that these estimates would subsequently need to be revised."); Report at 19 ("[Johnson's] calculations produced wide ranges for these estimates that were thought to be erroneous and unrealistic by everyone at Accredo").  Without personal knowledge, Thomas' testimony regarding the facts in this matter is irrelevant and inadmissible pursuant to Fed. R. Evid. 602.

### D. The Thomas Reports Improperly Invade The Province of The Jury

#### 1. Legal Standard

As detailed below, Thomas goes far beyond the type of expert testimony contemplated by Federal Rule of Evidence 702 (a "product of reliable principles or methods") and enters the province of "oath helping" by merely interpreting the evidence which is before the fact finder and explaining what result should be reached.[6]  In doing so, Defendants are improperly attempting to have Thomas usurp the function of the jury.  There is no question that "expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence.  In such cases, "*[t]he fact finder . . . is fully capable of understanding the evidence and deciding the issues* through the use of its common

---

[5] *See also* Lead Plaintiffs' Memorandum in Support of Motion to Exclude and Strike Attorney Affidavits of J. Allen Overby and Randall Thomas [Docket No. 401-2], at 6-8 for additional examples of purported facts for which Thomas has no personal knowledge.

[6] Historically, the objection to such opinions was that they involved the "ultimate issue."  While Federal Rule of Evidence 704 altered the rules to provide that an opinion involving the ultimate issue is not *per se* objectionable, it did not open the door to all such opinions.  "The abolition of the ultimate issue Rule does not lower the bar so as to admit all opinions.  Under Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. *These provisions afford ample assurance against the admission of opinions which would merely tell the [trier of fact] what result to reach, somewhat in the manner of the oath helpers of an earlier day*."  Fed. R. Evid. 704 Advisory Committee's Note; *see also Woods v. Lecurveux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

11

knowledge and common sense." *In re Apollo Group Sec. Litig.*, 2007 U.S. Dist. LEXIS 85799, at *16 (D. Ariz. Nov. 9, 2007).  As many courts have recognized, the Court should not shift the responsibility to find and interpret the facts from the jury to expert witnesses.[7]

### 2. Thomas Weighs Evidence, And Offers Opinions On Numerous Elements Of § 10(b)

Based on a purported review of portions of the evidence in this case, Thomas concludes that Plaintiffs are incapable of proving numerous elements of their § 10(b) claim to the jury, and, at times, inappropriately requests that the Court "dismiss" Plaintiffs' claims.  Rebuttal at 17-18.

First, Thomas opines that "all of the materials I have read in this matter suggest that Accredo personnel had no knowledge that these estimates would subsequently need to be revised."  Rebuttal at 17.  Again, Thomas has no actual knowledge or insight about Defendants' scienter during the Class Period.  In fact, testifying as to Defendants' "intent, motives or state of mind" is not a proper subject for expert testimony, but rather an attempt to "improperly . . . assume the role of advocates" for the party's case.  *In re Rezulin Prods Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  Stated precisely, "***precedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury which is equally if not much better suited to make these assessments than the parties' competing experts***."  *Klaczak v. Consol. Med. Transp. Inc.*, 2005 U.S. Dist. LEXIS 13607 at *31 (N.D. Ill. May 26, 2005).  Thomas' attempt to do so here is likewise improper.

---

[7] *See also GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000); *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1995), *overruled on other grounds*, *United States v. Morales*, 103 F.3d 1031 (9th Cir. 1997) (admission of expert witness whose "affect... was to 'improperly buttress' [witness] credibility" was reversible error); *SEC v. Lipson*, 46 F.Supp.2d 758, 763 (N.D. Ill. 1999) (expert's experience did not "specially equip him to divine what [the defendant] truly believed" about the reliability of financial reports); *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986) (an expert must "bring to the jury more than the lawyers can offer in argument."); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977).

Thomas' opinions that plaintiffs cannot prove materiality because Defendants were not in possession of any material information prior to April 7, 2003 and that they had a good faith belief that the allowance for doubtful accounts was accurately valued are equally improper. Determinations of materiality plainly require "delicate assessments of the inferences a '*reasonable shareholder*' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus.*, 426 U.S. at 438 (emphasis added).  There is no need or value in having an expert tell the jury what *he* believes would be viewed by a reasonable person as "having significantly altered the 'total mix' of information made available."  *Id.* at 449.  Indeed, jurors "regularly determine what constitutes the conduct of a 'reasonable' person... by bringing their own common sense and life experiences to bear."  *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939 (10th Cir. 1994) (affirming exclusion of expert on bad faith denial of insurance claims, where it was an "issue that a jury is capable of assessing for itself").  Thomas admits that in determining that Accredo had a "good faith belief," he was doing nothing more than making a "factual assessment based on my review of the information [cited in] my report and my supplemental report and the other information that I mentioned previously."  *See* Tr. at 291:1-5.  But this is the role of the jury, not Thomas.

In applying the law and concluding about the elements in this manner, Thomas does not apply any specific skill or specialized knowledge other than, apparently, applying his "deep" familiarity with the securities laws to the facts.  Tr. 152:25-153:11; 170:15; 184:4:195:13.  That, however, is what the jury will do after the Court's instructs it on the law.  At many points, in fact, he merely accepts established facts as true, and adds nothing further.  *See* Tr. at 116:22-117:7 (noting that he is not an expert in audit examinations, and that in forming his opinions, he simply accepted the accounting of E&Y and D&T as true).  At others, he admits to simply offering his "personal" (rather than expert) opinion on the facts at issue:

13

Q.      I apologize.  I thought I had, at least on this one some indication that this was your

opinion because you introduce this, 'In my view.'

A.      Well, there are opinions and there are opinions, so maybe you should be clear about

whether or not you are mentioning expert opinion.

Q.      This is not an expert opinion?

A.      ***This is my personal opinion of the evidence.***

*See* Tr. at 176:17-25 (emphasis added).

Indeed, it is well-established that proposed testimony is inadmissible where the opinion can

be derived by the fact finder from common sense, common experience, the fact finder's own

perceptions or just simple logic.  *Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 842 (9th Cir. 1995); *see

also* Wright & Gold, 29 Federal Practice and Procedure: Evidence § 6264.  Here, the fact-finder here

is capable of applying the law to the facts without assistance from Thomas, including whether (1)

Defendants' acted with the requisite state of mind; (2) whether the total mix of available to investors

would have been altered had Defendants disclosed the state of the allowance for doubtful account

prior to April 8, 2003; and (3) Defendants' statements were false and misleading given the

information they had access to internally.[8]  "[B]ecause the trier of fact is entirely capable of

determining whether or not to draw such conclusions," Thomas' testimony is irrelevant under

Federal Rules of Evidence 401 and 402 and fails under Federal Rule of Evidence 702.  *City of

Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 565 (11th Cir. 1998); *see also Marx*, 550 F.2d at 510.

---

[8]  *See* Tr. at 172:17-173:4 (Q.   So you are basically just interpreting here some depositions and some documents you
read, correct?...A.   As I testified earlier, I am reviewing the information that has been provided to me in this case.  The
information on this point, I believe, is very clear that the sworn testimony of all of the witnesses from Accredo about this
particular issue was that Mr. Johnson's model was, in fact, in error.).

IV.     **CONCLUSION**

Thomas' proffered testimony is nothing more than Defendants' attempt to reassert their view of the law, their version of the facts and their desired verdict.  For all of the foregoing reasons, Plaintiffs respectfully request that, pursuant to Federal Rules of Evidence 401, 402, 403, 602, 702 and 703, this Court should issue an order precluding the expert testimony of Randall Thomas, Esq.

Dated: September 8, 2008                            Respectfully submitted,

                                                   BERNSTEIN LITOWITZ BERGER
                                                      & GROSSMANN LLP


                                                      *s/ Timothy A. DeLange*
                                                   TIMOTHY A. DeLANGE

                                                   BLAIR A. NICHOLAS
                                                   TIMOTHY A. DeLANGE
                                                   BRETT M. MIDDLETON
                                                   MATTHEW P. JUBENVILLE
                                                   12481 High Bluff Drive, Suite 300
                                                   San Diego, CA 92130
                                                   Tel:    (858) 793-0070
                                                   Fax:    (858) 793-0323

                                                   COUGHLIN STOIA GELLER
                                                      RUDMAN & ROBBINS LLP
                                                   TOR GRONBORG
                                                   DAVID W. MITCHELL
                                                   TRIG SMITH
                                                   NATHAN W. BEAR
                                                   JONAH H. GOLDSTEIN
                                                   655 West Broadway, Suite 1900
                                                   San Diego, CA 92101
                                                   Tel:    (619) 231-1058
                                                   Fax:    (619) 231-7423

                                                   *Co-Lead Counsel for Plaintiffs Louisiana
                                                   School Employees' Retirement System and
                                                   Debra Swiman*

                                                   GLASSMAN EDWARDS WADE
                                                      & WYATT, P.C.
                                                   B.J. WADE
                                                   26 N. Second Street

Memphis, TN 38103
Tel:     (901) 527-4673
Fax:     (901) 521-0904

*Liaison Counsel*