UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

| | | |
|---|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION | ) ) ) | Civil Action No. 03-2216-BBD |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | LEAD PLAINTIFFS' *DAUBERT* MOTION/MOTION *IN LIMINE* #24 TO PRECLUDE THE TESTIMONY OF |
| | ) | PROPOSED EXPERT J. ALLEN OVERBY |

# TABLE OF CONTENTS

**Page**

I.      Introduction ...........................................................................................................1

II.     Proposed Testimony of J. Allen Overby ..............................................................3

III.    Argument ...............................................................................................................4

     A.      Overby's Statements of the Law and Legal Conclusions Are Inadmissible ...........5

     B.      Overby's Testimony Usurps the Province of the Jury by Weighing the Evidence .................................................................................................................7

          1.      Overby Weighs Evidence and Offers "Opinions" on Materiality .............9

          2.      Overby Draws Subjective Inferences on Defendants' State of Mind ........10

          3.      Overby Offers Conclusions About What Defendants Purportedly Knew at the Time of Their Stock Sales ......................................................12

          4.      Overby Opines on Whether Defendants' Disclosures Were "Meaningful and Cautionary" ....................................................................13

     C.      Overby Lacks Personal Knowledge of the Facts ...................................................13

     D.      Overby's Proffered Testimony Is Inadmissible Because His Opinions Are Unreliable ..............................................................................................................14

     E.      Overby Is Not Qualified to Offer an Expert Opinion ...........................................19

IV.     Conclusion ...........................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adalman v. Baker, Watts & Co.*,
   807 F.2d 359 (4th Cir. 1986) .......................................................................5, 7

*Aguilar v. Int'l Longshoremen's Union Local # 10*,
   966 F.2d 443 (9th Cir. 1992) ............................................................................5

*Beech Aircraft Corp. v. United States*,
   51 F.3d 834 (9th Cir. 1995) .............................................................................12

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) .............................................................................5

*Burkhart v. Wash. Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997) ........................................................................1

*Champagne Metals v. Ken-Mac Metals, Inc.*,
   458 F.3d 1073 (10th Cir. 2006) .......................................................................13

*City of Tuscaloosa v. Harcros Chems.*,
   158 F.3d 548 (11th Cir. 1998) ...................................................................12, 13

*Daubert v. Merrell Dow Pharms.*,
   43 F.3d 1311 (9th Cir. 1995) ...........................................................................17

*Daubert v. Merrill Dow Pharms.*,
   509 U.S. 579 (1993)............................................................................... *passim*

*Dukes v. State*,
   428 F. Supp. 2d 1298 (N.D. Ga. 2006), *aff'd*,
   212 Fed. Appx. 916 (11th Cir. 2006)...............................................................16

*GST Telecomms., Inc. v. Irwin*,
   192 F.R.D. 109 (S.D.N.Y. 2000) ....................................................................8, 9

*In re Air Crash Disaster at New Orleans*,
   795 F.2d 1230 (5th Cir. 1986) ......................................................................3, 16

*In re Apollo Group Sec. Litig.*,
   527 F. Supp. 2d 957 (D. Ariz. 2007) .................................................................8

*In re Initial Public Offering Sec. Litig.*,
   174 F. Supp. 2d 61 (S.D.N.Y. 2001).................................................................5

**Page**

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................11

*Klaczak v. Consol. Med. Transp. Inc.*,
   No. 96 C 6502, 2005 U.S. Dist. LEXIS 13607
   (N.D. Ill. May 26, 2005) ...........................................................................11

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)...................................................................................19

*Law v. NCAA*,
   185 F.R.D. 324 (D. Kan. 1999)................................................................13

*Marx & Co. v. Diners' Club, Inc.*,
   550 F.2d 505 (2d Cir. 1977)............................................................. *passim*

*Molecular Tech. Corp. v. Valentine*,
   925 F.2d 910 (6th Cir. 1991) ................................................................1, 6

*Montgomery v. Aetna Cas. & Sur. Co.*,
   898 F.2d 1537 (11th Cir. 1990) ................................................................5

*Nelson v. Tenn. Gas Pipeline Co.*,
   243 F.3d 244 (6th Cir. 2001) ....................................................................5

*Nichols v. Am. Nat'l Ins.*,
   154 F.3d 875 (8th Cir. 1998) ..................................................................10

*Nieves-Villanueva v. Soto-Rivera*,
   133 F.3d 92 (1st Cir. 1997).......................................................................5

*O'Conner v. Commonwealth Edison Co.*,
   13 F.3d 1090 (7th Cir. 1994) ..................................................................17

*Peterson v. City of Plymouth*,
   60 F.3d 469 (8th Cir. 1995) ......................................................................5

*SEC v. Lipson*,
   46 F. Supp. 2d 758 (N.D. Ill. 1999) ....................................................9, 10

*Snap-Drape, Inc. v. Comm'r*,
   98 F.3d 194 (5th Cir. 1996) ......................................................................5

*Specht v. Jensen*,
   853 F.2d 805 (10th Cir. 1988) ..................................................................6

**Page**

*Thompson v. State Farm Fire & Cas. Co.*,
    34 F.3d 932 (10th Cir. 1994) ........................................................................10

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976)........................................................................9, 10

*United States v. Barile*,
    286 F.3d 749 (4th Cir. 2002) ........................................................................12

*United States v. Benson*,
    941 F.2d 598 (7th Cir. 1991),
    *amended by* 957 F.2d 301 (7th Cir. 1992) ........................................................9

*United States v. Binder*,
    769 F.2d 595 (9th Cir. 1995), *overruled on other grounds*,
    *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997)................................9

*United States v. Feliciano*,
    223 F.3d 102 (2d Cir. 2000)........................................................................5

*United States v. Leo*,
    941 F.2d 181 (3rd Cir. 1991) ........................................................................5

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988), *rev'd in part on reh'g on other grounds*,
    856 F.2d 5 (2d Cir. 1988)........................................................................7

*United States v. Sinclair*,
    74 F.3d 753 (7th Cir. 1996) ........................................................................5

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ........................................................................16

*Weston v. Wash. Metro. Area Transit Auth.*,
    78 F.3d 682 (D.C. Cir. 1996)........................................................................5

*Woods v. Lecurveux*,
    110 F.3d 1215 (6th Cir. 1997) ........................................................................7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)........................................................................ *passim*
    §78t(a)........................................................................1, 17, 19

**Page**

Federal Rules of Civil Procedure
  Rule 26(a)(2)(B)(ii)................................................................17

Federal Rules of Evidence
  Rule 401................................................................1, 12, 22
  Rule 402................................................................1, 12, 22
  Rule 403................................................................7, 18
  Rule 602................................................................13, 22
  Rule 701................................................................7
  Rule 702................................................................ *passim*
  Rule 703................................................................14
  Rule 704................................................................7, 5

## SECONDARY AUTHORITIES

27 Charles A. Wright & Victor J. Gold,
  *Federal Practice & Procedure: Evidence* (2007)
   §6025................................................................14

29 Charles A. Wright & Victor J. Gold,
  *Federal Practice & Procedure: Evidence* (2007)
   §6264................................................................12

Lead Plaintiffs Louisiana School Employees' Retirement System and Debra Swiman (together, "Lead Plaintiffs") and the Class of investors who purchased Accredo stock between June 16, 2002 and April 7, 2003, respectfully submit this Motion *in Limine* to Preclude the Testimony of Proposed Expert J. Allen Overby.  This motion is made pursuant to Federal Rules of Evidence 401, 402, 403, 602, 702 and 703. [1]

## I.   Introduction

This case arises out of Defendants'[2] violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  The central issues are whether Defendants' statements were materially false and misleading, whether Defendants acted with scienter (did Defendants knowingly or recklessly make false or misleading statements) and whether and how much Accredo shareholders were damaged by the fraud.  In an effort to buttress their defense, Defendants seek to present the expert testimony of J. Allen Overby, a private attorney whose firm has previously represented Defendants, "to provide expertise regarding the federal securities laws."  Report at 11; Rebuttal Report at 4.  Each courtroom, however, already "comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).  Indeed, *every* Circuit Court of Appeal has rejected the very type of testimony Overby proffers.  *See, e.g.*, *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 919 (6th Cir. 1991) (testimony on securities laws

---

[1]    Mr. Overby's expert report ("Report") is attached as Ex. A to the Declaration of Nathan W. Bear in Support of Lead Plaintiffs' *Daubert* Motion/Motion *in Limine* #24 to Preclude the Testimony of Proposed Expert J. Allen Overby ("Bear Decl.")  Overby's rebuttal report ("Rebuttal") is attached as Ex. B to the Bear Declaration.  Collectively, Exs. A and B will be referred to as the "Overby Reports."  The transcript of Overby's deposition testimony ("Overby Depo.") is attached as Ex. C to the Bear Declaration.

[2]    Defendants are Accredo Health, Inc. ("Accredo"), David Stevens and Joel Kimbrough.

should have been excluded as "it is impermissible for a trial judge to delegate his duty to determine the law of a case to an expert").

Through Overby, Defendants try to present their legal interpretations of materiality, actual knowledge, scienter and liability, and to apply those interpretations to their version of the facts – all through the voice of a legal "expert."  Overby simply renders the Defendants' hoped-for jury conclusions, *inter alia*, that they were not aware of any material, non-public information about Accredo's financial results (Report at 11-12, 15-16; Rebuttal at 6), that they did not act with scienter under §10(b) of the Exchange Act (Report at 12-15; Rebuttal at 4-5), that their insider trading was not illegal or an indicia of scienter (Report at 15-16) and that their disclosures were meaningful and cautionary (Rebuttal at 6-7).  These "opinions" are both inappropriate and inadmissible.

Not only do Overby's opinions include, and are premised on, inadmissible characterizations of the law, but his proposed testimony contains subjective inferences drawn from selective bits of evidence – assessments that by Overby's own admissions are entirely within a juror's independent understanding.  "It is for the jury," not Overby or any other expert, "to evaluate the facts in the light of the applicable rules of law."  *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d Cir. 1977). Overby has no actual knowledge regarding what Defendants knew, when they knew it or what a reasonable investor would consider material, yet these are all subjects on which he opines.  In doing so, Defendants are improperly attempting to have Overby usurp the jury's unique function of selecting and evaluating evidence.

Defendants' efforts to use an expert to help them present their version of the "facts" is all the worse because Overby has no personal knowledge of those facts.  As Overby conceded in his deposition, the vast bulk of his Reports and the conclusions he reaches are merely premised on "the factual underpinning given to me that I worked with." Overby Depo. at 69:6-7. Moreover, Overby's testimony is not the "product of reliable principles or methods" as required by Federal Rule of

- 2 -

Evidence 702. Overby is not even aware of any standards or means of testing his opinions, and admits that he has simply reached subjective conclusions based on a limited review of certain evidence. An expert, however, must "bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Defendants' efforts to introduce another legal advocate under the guise of an expert is improper, attempts to usurp the role of both judge and jury and has been soundly rejected. Accordingly, Lead Plaintiffs respectfully request that the Court issue an order instructing Defendants not to refer to, interrogate any witness concerning, comment on or introduce in any way the Overby Reports or testimony.

## II.      Proposed Testimony of J. Allen Overby

The Overby Reports are comprised of numerous statements of law, assertions of purported fact and subjective conclusions, all labeled by Defendants as expert "opinion." Following the admission that he was "retained . . . to provide expertise regarding the federal securities laws" (Report at 11; Rebuttal at 4), Overby merely provides his own interpretation of the law and facts, including:

Materiality of False Statements:  Overby opines on the legal standard for evaluating materiality and states that he is "not aware of any evidence that would lead me to conclude . . . that the Defendants were aware of material non-public information." Report at 11-12; Rebuttal at 6.

Defendants' State of Mind:  Overby opines on the legal standard for evaluating Defendants' scienter and states that he is "not aware of any evidence that would lead me to conclude . . . that the Defendants acted with scienter." Report at 12-13; Rebuttal at 4-5.

Falsity:  Overby opines that he is "not aware of any evidence that would lead me to conclude" that any of Accredo's SEC filings "were materially false or misleading as of the respective dates they were filed." Report at 13-15.

<u>Defendants' Insider Trading</u>:  Overby opines that he is "not aware of any evidence that would lead me to conclude" that any of Defendants' Class Period stock sales "were made while any such defendant was aware of material non-public information."  Report at 15-16.

<u>Defendants' Liability</u>:  Overby opines that "violations of the certification requirements of Section 302 and 906 of the Sarbanes-Oxley Act do not give rise to a private right of action."  Rebuttal at 4.

<u>Weighing Evidence</u>:  Overby opines that correspondence between Defendants and the National Association of Securities Dealers did not acknowledge "material potential problems with the allowance for doubtful accounts."  Rebuttal at 5-6.

<u>Disclosures to Shareholders</u>:  Overby opines that Accredo's public filings "contained meaningful cautionary language."  Rebuttal at 7.

None of these so-called opinions meets the standards for admissible expert testimony.

## III. Argument

The Supreme Court has observed that "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty of evaluating it.'"  *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 595 (1993).[3]  Because of this risk, the judge, in weighing possible prejudice against probative value, exercises more control over experts than lay witnesses.  *Id.*[4]  The burden is on the party

---

[3]      All emphasis is added and citations omitted unless otherwise noted.

[4]      The admissibility of expert testimony at trial is governed by the Supreme Court's decision in *Daubert* as now codified at Fed. R. Evid. 702.  Rule 702 sets forth the test to determine the admissibility of proposed expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, ***and***

offering the expert testimony to establish admissibility. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). As detailed below, Defendants cannot carry their burden and Overby's opinions should be deemed inadmissible.

### A.   Overby's Statements of the Law and Legal Conclusions Are Inadmissible

The principle that expert opinion concerning the law is inadmissible is "'so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.'" *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001). The Sixth Circuit, along with *every other Circuit Court of Appeals*, has explicitly held that experts may not invade the court's province by testifying on issues of law. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("We also believe this testimony was received in violation of the Federal Rules of Evidence. . . . *It is the responsibility of the court, not testifying witnesses, to define legal terms*. The expert's testimony in this regard invaded the province of the court.").[5] Yet, that is exactly what Overby does.

_____

(3) the witness has applied the principles and methods reliably to the facts of the case.

[5]   *See also Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) (excluding expert legal opinion "because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial"); *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000) ("'[i]n evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony [that] states a legal conclusion'"); *United States v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991) (stating that "it is not permissible for a witness to testify as to the governing law"); *Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996) ("An expert witness may not deliver legal conclusions on domestic law."); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir. 1986) ("From beginning to end, it is obvious that Appellants proffered [the person] as an expert witness to testify in substantial part to the meaning and applicability of [law]. This flies squarely in the face of the precedent – and the logic of that precedent . . . ."); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law."); *United States v. Sinclair*, 74 F.3d 753, 757-58 n.1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury."); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.

Overby concedes that he was ***"retained . . . to provide expertise regarding the federal securities laws"*** and offers opinions on the legal standards for liability, materiality and scienter under the Exchange Act.  *See, e.g.*, Report at 11-16; Rebuttal Report at 4-7.  Indeed, during his deposition, Overby provided the following description of his opinions: "I'm telling you that this is ***my analysis of what the statute requires***, and that analysis is based in part on citing to the relevant case law."  Overby Depo. at 25:7-10.  The rule prohibiting legal testimony, such as this, is clear:

> ***"A witness cannot be allowed to give an opinion on a question of law***. . . .
> In order to justify having courts resolve disputes between litigants, it must be posited
> as an a priori assumption that there is one, but only one, legal answer for every
> cognizable dispute.  ***There being only one applicable legal rule for each dispute or
> issue, it requires only one spokesman of the law, who of course is the judge. . . . To
> allow anyone other than the judge to state the law would violate the basic concept***."

*Specht*, 853 F.2d at 807.

In the context of the securities laws, the Sixth Circuit held in *Molecular Tech.*, 925 F.2d at 919, that testimony from an expert concerning the requirements of the law should have been excluded, as it has been "***repeatedly held that it is impermissible for a trial judge to delegate his duty to determine the law of a case to an expert***."  The Second Circuit, in *Marx*, 550 F.2d at 509-10, also held that a proposed expert on securities law should have been precluded from rendering his legal opinion as it invaded the court's authority to instruct the jury on the law:

---

1995) ("To that end, his testimony was not a fact-based opinion, but a statement of legal conclusion. The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony."); *Aguilar v. Int'l Longshoremen's Union Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("matters of law [are] for the court's determination. As such, they were inappropriate subjects for expert testimony"); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (*en banc*) ("'There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge. . . . To allow anyone other than the judge to state the law would violate the basic concept'"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

> With the growth of intricate securities litigation over the past forty years, we must be
> especially careful not to allow trials before juries to become battles of paid advocates
> posing as experts on the respective sides concerning matters of domestic law.

*Id.* at 511.  Similarly, the Second Circuit held that an expert's conclusion, like Overby's here, on whether a defendant's conduct established a fraudulent scheme under the securities laws was impermissible testimony.  *United States v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988), *rev'd in part on reh'g on other grounds*, 856 F.2d 5 (2d Cir. 1988).  Following the *Marx* reasoning, the Fourth Circuit in *Adalman*, 807 F.2d 359, also held that a party in a securities case could not introduce expert testimony regarding the legal requirements on disclosure of information to investors:

> From beginning to end, it is obvious that Appellants proffered Casgar as an
> expert witness to testify in substantial part to the meaning and applicability of the
> securities laws to the transactions here, giving his expert opinion on the governing
> law.  This flies squarely in the face of the precedent – and the logic of that precedent
> – set out in *Marx, supra*. . . .  Thus, the court sustains the action of the court below in
> excluding the testimony . . . .

*Id.* at 368

Overby concedes that he has only been retained "to provide expertise regarding the federal securities laws" (Report at 11; Rebuttal at 4) and claims that he has "***expertise in applying or giving advice with respect to the legal standard here***" (Overby Depo. at 84:19-21), but that is precisely the type of testimony that has long been and is appropriately prohibited.

## B.  Overby's Testimony Usurps the Province of the Jury by Weighing the Evidence

In conjunction with offering improper legal conclusions, Overby goes far beyond the type of testimony contemplated by Federal Rule of Evidence 702 and enters the province of "oath helping" by merely interpreting the evidence which is before the fact finder, explaining, in effect, what result should be reached.[6]  Overby simply sets forth an incomplete selection of "facts" and then provides a

---

[6]   Historically, the objection to such opinions was that they involved the "ultimate issue."
While Federal Rule of Evidence 704 altered the rules to provide that an opinion involving the

conclusion about how seminal issues, including the materiality of Defendants' false statements and whether the Defendants acted with scienter, should be decided.  Report at 11-16; Rebuttal at 4-7.  The jury, however, can readily assess actual evidence and decide for itself whether Defendants' false statements and omissions would have been material to a reasonable investor and what the Defendants knew or should have known at the time they made those statements.  There is no question that "expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence.  In such cases, '*[t]he fact finder is . . . fully capable of understanding the evidence and deciding the issues* through the use of its common knowledge and common sense.'"  *In re Apollo Group Sec. Litig.*, 527 F. Supp. 2d 957, 962 (D. Ariz. 2007).

As the Second Circuit held in *Marx*,

> such testimony "amounts to no more than an expression of the [witness'] general belief as to how the case should be decided." *McCormick on Evidence* §12, at 26-27. *The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case*. *McCormick on Evidence* §12, at 27. *It is for the jury to evaluate the facts in light of the applicable rules of law* . . . .

550 F.2d at 510.  The district court's holding in *GST Telecomms., Inc. v. Irwin*, 192 F.R.D. 109 (S.D.N.Y. 2000) is also on point:

> "*When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's*.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination."

ultimate issue is not *per se* objectionable, it did not open the door to all such opinions.  "The abolition of the ultimate issue rule does not lower the bar so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  *These provisions afford ample assurances against the admission of opinions which would merely tell the [trier of fact] what result to reach, somewhat in the manner of the oath helpers of an earlier day*."  Fed. R. Evid. 704, Advisory Committee Notes; *see also Woods v. Lecurveux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

*Id.* at 111.[7]   In short, "[t]he Court should not shift to such witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed and to essentially decide the case." *Id.*   Following are examples of Overby's inappropriate fact-finding.

### 1.   Overby Weighs Evidence and Offers "Opinions" on Materiality

In his Reports, Overby provides a limited rendition of selected evidence and then concludes that Defendants were not aware of any material, non-public information regarding Accredo's accounts receivables.  Report at 11-12; Rebuttal at 6-7.  Overby, of course, does not know what Defendants were aware of during the Class Period.  Indeed, ascertaining what Defendants knew and when they knew it is one of the seminal questions that are reserved for the fact-finders to determine after considering all of the evidence.  Regardless of how it is couched, expert testimony is inadmissible when it "***consists of nothing more than drawing inferences . . . that [the expert is] no more qualified than the jury to draw***." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *amended by* 957 F.2d 301 (7th Cir. 1992).  Despite conceding that he has no expertise in accounting or finance, Overby also lists a selection of purported facts and then concludes that Accredo's Class Period financial statements were not "materially false or misleading as of the respective dates they were filed."  Report at 13-15.  Again, whether or not those filings were false or misleading is a conclusion that can and will be reached by the jury.

Determinations of materiality plainly require "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).  There is no need or

---

[7]      *See also United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1995), *overruled on other grounds*, *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (admission of expert witness whose "effect . . . was to 'improperly buttress' [witness] credibility" was reversible error); *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1999)(expert's experience did not "specially equip him to divine what [the defendant] truly believed" about the reliability of financial reports).

value in having a lawyer posing as an expert, tell a jury what he believes would be viewed by a reasonable person as "having significantly altered the 'total mix' of information made available." *Id.* at 449.  Indeed, jurors "regularly determine what constitutes the conduct of a 'reasonable' person... by bringing their own common sense  and life experiences to bear." *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 939, 941 (10th Cir. 1994) (affirming exclusion of expert on bad faith denial of insurance claims, where it was an "issue that a jury is capable of assessing for itself").  Overby's subjective judgments are "at worst, rank speculation [and] at best, they are credibility choices that are within the province of the jury." *Lipson*, 46 F. Supp. 2d at 763.[8]

2.      **Overby Draws Subjective Inferences on Defendants' State of Mind**

Based on a purported review of portions of the evidence in this case, Overby also concludes that he is aware of no evidence that Defendants acted with scienter, the required state of mind under the federal securities laws.  Report at 12-15; Rebuttal Report at 4-5.  Overby, again, has no actual

---

[8]      Overby also "opined" that a May 2, 2003 letter from Defendants to the National Association of Securities Dealers ("NASD") "does not characterize this [accounts receivable] information as material." Rebuttal at 5-6.  In his deposition, Overby admitted his opinion was little more than that the word "material" does not appear in the May 2, 2003 correspondence:

Q:      Your opinion here, are you just opining that the NASD letter does not contain the word "material"?

A:      Yeah, that's a long way of saying that.

Q:      Are you opining on what the letter characterizes or how you interpret the letter, or just that it doesn't contain that word?

A:      It doesn't contain that word, and I saw nothing that would lead me to conclude that – well, it doesn't contain that word . . . .

Overby Depo. at 333:17 – 334:1.  The jury needs no assistance in assessing the plain language of Defendants' correspondence or deciding whether or not that correspondence, or any other document, evidences the Defendants' knowledge of undisclosed material information. *Nichols v. Am. Nat'l Ins.*, 154 F.3d 875, 883 (8th Cir. 1998) (opinion is "not helpful if it draws inferences or reaches conclusions within the jury's competence or within the exclusive function of the jury").

knowledge or insight into what Defendants knew or what their state of mind was during the Class Period.  In fact, testifying as to Defendants' "intent, motives or states of mind" is not a proper subject for expert testimony, but rather an attempt to "improperly . . . assume the role of advocates" for the party's case.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  Stated precisely, "***precedent teaches that proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury which is equally if not much better suited to make these assessments than the parties' competing experts***."  *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 U.S. Dist. LEXIS 13607, at *31 (N.D. Ill. May 26, 2005).

Overby has, in fact, conceded that his assertions regarding the Defendants' scienter, like those regarding materiality, are merely the result of inferences he has drawn from reviewing a limited set of testimony and deposition exhibits:

> Q:     Is there any way you can ***determine scienter without applying the facts to the law***?
>
> A:      ***No***, ***I think scienter and materiality inherently involve having some factual predicate as part of your analysis***.

Overby Depo. at 30:8-12.

> Q:      As part of your ***analysis of scienter***, did you do an analysis about whether the defendants here knew or could have known of any errors with their loss reserves?
>
> A:      I mean, ***I considered an underlying factual predicate based on the evidence that was given to me and applied the standard*** cited in the report.

Overby Depo. at 218:7-14.

Overby also conceded, as he must, that a juror would be capable of drawing the same inferences by reviewing evidence in this case:  "But I think, certainly, others could – ***I don't pretend to say that I'm the only person who could do this*** work."  Overby Depo. at 39:14-17; "I would think ***anyone could repeat what I did***."  Overby Depo. at 241:23-24.  Overby does not offer any specific skill or specialized knowledge other than, apparently, applying his familiarity with the securities laws to the facts at hand.  That, however, is what the jury will do with the Court's instruction on the

law.  Indeed, it is well-established that proposed testimony is inadmissible where the opinion can be derived by the fact finder from common sense, common experience, the fact finder's own perceptions or just simple logic.  *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995); *see also* 29 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure: Evidence* § 6264 (2007).  The fact finder here can and will be able to determine the Defendants' state of mind and do not need to be told by Overby what their determination should be.  "[B]ecause the trier of fact is entirely capable of determining whether or not to draw such conclusions," Overby's testimony is irrelevant under Federal Rules of Evidence 401 and 402 and fails under Federal Rule of Evidence 702.  *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 565 (11th Cir. 1998); *see also Marx*, 550 F.2d at 510.[9]

### 3.     Overby Offers Conclusions About What Defendants Purportedly Knew at the Time of Their Stock Sales

Delving again into what Defendants knew and when they knew it, Overby opines that he is "not aware of any evidence that would lead me to conclude in my expert opinion that any of [Defendants' stock] sales were made while any such defendant was aware of material non-public information pertaining to the SPS Division."  Report at 15-16.  Overby has no knowledge or expertise regarding what Defendants actually knew.  Overby's opinion is simply based on his personal view of that evidence provided to him by Defendants' counsel.  And, Overby is certainly no more capable than the jury to assess whether Defendants were in the possession of material non-public information at the time of their insider trading.  *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (expert testimony on legal conclusions does little more than tell the fact finder what

---

[9]     Given that the Court has already held that Lead Plaintiffs pled a strong inference of scienter, Overby's opinion appears to contradict the findings of the Court.  *See* Order Denying Motion of Defendants to Dismiss the Consolidated Complaint (Docket No. 119).  Moreover, should the Court deny Defendants' pending Motion for Summary Judgment, the Court will already have determined that Overby's opinion that there is "no evidence" of materiality or scienter is incorrect.

conclusion to reach and is of little use).  Because the jury is perfectly capable of determining on its own what Defendants knew at the time of their stock sales, Overby's testimony is irrelevant, prejudicial and inadmissible.

### 4. Overby Opines on Whether Defendants' Disclosures Were "Meaningful and Cautionary"

In his Rebuttal, Overby also purports to evaluate Accredo's SEC filings and opines that "the Company's public disclosures contained meaningful cautionary language with respect to the allowance for doubtful accounts."  Rebuttal at 6-7.  The jury, however, is perfectly capable of determining whether or not any disclosures are meaningful and cautionary and, in fact, will be required to do just that at trial.  Other than stating he has "expertise regarding the federal securities laws," Overby has offered no basis for why a jury needs any assistance in evaluating Defendants' SEC filings or disclosures or why a jury would need assistance in determining whether those disclosures were meaningful and cautionary to a reasonable investor.  Once again, "because the trier of fact is entirely capable of determining whether or not to draw such conclusions," Overby's testimony is irrelevant and inadmissible under the Federal Rules of Evidence.  *City of Tuscaloosa*, 158 F.3d at 565.

### C. Overby Lacks Personal Knowledge of the Facts

Overby's proposed testimony as to underlying facts is also in violation of Federal Rule of Evidence Rule 602.  His Reports are replete with recitations of purported historical fact as if he had direct personal knowledge of those facts.  *See e.g.* Report at 9 ("Accredo management did not believe the reserve was materially understated."); Rebuttal at 6 ("Management did not believe the calculation performed by Mr. Johnson was accurate.")  Overby's "opinion" testimony does not provide "that he was only assuming the facts he asserted," but instead "sounds like a ***confirmation*** (rather than an ***assumption***)" of facts.  *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006); *see also Law v. NCAA*, 185 F.R.D. 324, 341 (D. Kan. 1999) (proposed

expert could not testify "as a channeler, seeking to present non-expert, otherwise inadmissible hearsay"); 27 C. Wright *et al*., *Federal Practice & Procedure: Evidence* §6025, at 248 ("When experts testify as to facts and not opinions, Rule 703's exemption from the personal knowledge requirement does not apply.").[10]   As even a cursory review of Overby's Reports will confirm, the vast majority of the Reports simply consist of recitations of purported facts with no opinion or analysis.  Moreover, Overby does not even indicate the source of these purported facts, other than asserting that he reviewed "[c]ertain of the materials made available to me."  Report at 5; Rebuttal at 3.  *See also* Overby Depo. at 155:23-156:13.  This backdoor means of trying to get Defendants' self-serving version of this fraud before the jury is improper and renders Overby's testimony irrelevant and inadmissible.

> **D.      Overby's Proffered Testimony Is Inadmissible Because His Opinions Are Unreliable**

A fundamental principle of Federal Rule of Evidence 702 and the *Daubert* progeny is that, to be admissible, expert testimony must be the "product of reliable principles and methods."  In other words, the "expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded."  Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.  While there is no single test for determining when expert testimony is the product of reliable principles and methods, indicia courts have traditionally looked to whether the expert's technique has been tested, whether it has been subject to peer review and publication and whether the conclusions reached can be evaluated for accuracy.  *Daubert*, 509 U.S. at 590-94.  In this case, Overby's testimony stems from no known or verifiable principle or method.

---

[10]      *See also* Lead Plaintiffs' Memorandum in Support of Motion to Exclude and Strike Attorney Affidavits of J. Allen Overby and Randall Thomas (Docket No. 401-2), at 4-6 for additional examples of purported facts for which Overby has no personal knowledge.

Overby's Reports say nothing other than that his opinions "are based on my work, including my consideration of such legal precedent and requirements as I have deemed appropriate or relevant, together with my knowledge and experience, and the facts . . . contained in the documents I reviewed." Report at 11. Overby does not identify any principles or methods he applied, other than citations to a few cases and portions of the federal securities laws. And, with regard to half of his opinions, Overby does not even do that. *See* Report at 11-16; Rebuttal at 4-7. While stating during his deposition that he used some "methodology," Overby all but conceded that his testimony did not comply with Rule 702: "Here, I think you can take it to mean that ***I didn't use any fixed body of standards or checklists to do what I did.***" Overby Depo. at 200:17-20.

Overby further concedes that there was no reliable basis for his opinions, no way to test his conclusions and that employing his "methodology" could easily lead to different conclusions:

Q:   The general approach you are referring to, is there any peer reviewed articles or materials that you could point us to that would describe that methodology?

A:   ***I'm not aware that such a standard exists*** Can you point me to one? I could measure my conduct against it.

Q:   I was hoping you could. Is there – the methodology that you used here, is it testable in any way?

A:   ***I would think that anyone could repeat what I did.*** I mean, I have listed for you the materials that were available to me. I have described how I went through those materials and I tried to consider the things that I read in light of the analysis that I have been requested to make. ***Seems pretty straight forward to me.***

Q:   Well, would they – ***if someone did that, would they necessarily come to the same conclusions you did?***

A:   ***I don't think they would necessarily have to. I mean, both of the – scienter and materiality are both fact dependent, fact dependent and interrelated inquiry; so someone else might come through this and have a different factual predicate upon which they used for their analysis or might reach a different conclusions [sic].*** I couldn't speculate as to what somebody else might do.

Overby Depo. at 241:13-242:16. These concessions confirm what is clear from Overby's Reports: that his "methodology" has not been tested and has not been subject to peer review and publication

- 15 -

and that Overby's conclusions cannot be tested for accuracy and are an inherently fact-specific and unreliable result.  *Daubert*, 509 U.S. at 590-94   At best, Overby's methodology is simply the subjective review of evidence that he admits "anyone can repeat" and "seems pretty straight forward."  If that is the case, however, Overby brings no specialized knowledge or skill to the courtroom and does not qualify as an expert.  Fed, R. Evid. 702.  *See Air Crash Disaster*, 795 F.2d at 1233 (expert opinions must "bring to the jury more than the lawyers can offer in argument"); *Dukes v. State*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006), *aff'd*, 212 Fed. Appx. 916 (11th Cir. 2006) (expert testimony excluded under Rule 702 as "no different from that which Plaintiff's lawyers will argue during their closing statements").

The fact that Overby is not offering scientific testimony does not allow him to escape the requirements of *Daubert* and Federal Rule of Evidence 702.  *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on . . . practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.").  Experience can form the foundation for an expert's testimony, but the expert still has the burden of establishing that that experience is acceptable and reliable.  "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, *and* how that experience is reliably applied to the facts."  Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.  Overby has failed to make any such showing.  Rather, he testified:

> Q:      I mean, if someone wanted to replicate what you did, is there a manual or anything that they could follow?
>
> A:      No, it would be hard to replicate my judgment and experience.

Overby Depo. at 39:9-13.

Where, as here, an expert simply sets forth his experience and a subjective opinion, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments; *see also O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106-07 (7th Cir. 1994)  (expert testimony based on completely subjective methodology held properly excluded).[11]  As stated by the Ninth Circuit, in a holding remarkably applicable to Overby's testimony, "[w]e've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's not enough." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

Even if Overby was able to point to a testable principle or methodology that he used, he failed to comply with the basic requirement of Fed. R. Civ. P. 26(a)(2)(B)(ii) and identify the materials he ***considered*** in forming his opinions.  Rather, Overby states that he "read and considered various information," but then lists all of the materials that were "***made available*** to [him]."  Report at 5.  *See also* Rebuttal at 3 ("the following additional materials were ***available*** to me").  During his deposition, Overby acknowledged both that he had ***not*** considered, or even reviewed, all of the materials listed in his report and that he had no way of knowing what materials he had or had not actually considered:

Q:      Well, did you read everything you had access to?

A:      No, I couldn't say that.

Overby Depo. at 33:11-13.

Q:      How do I know what you did and didn't read?

A:      I don't know. I mean, I have a specific – I know I read through many of these, and I'm confident I read through most of them, almost all of them.

---

[11]      As addressed *infra*, Overby has not even sufficiently set forth the basis for any claim that he has sufficient experience to opine on matters concerning §§10(b) and 20(a) of the Exchange Act, the federal securities laws at issue in this case.

> Q:      Tell me whose depositions you know you read?
>
> A:      Kimbrough and Johnson, Stevens, Daniel. I'm sure, again, many others.
>
> Q:      Who?
>
> A:      Those are the ones that I have a specific recollection of having read.
>
> Q:      Did you keep track of which depositions you read?
>
> A:      I don't think I kept a written list.

Overby Depo. at 155:23-156:13.   Thus, despite having in front of him the list of deposition transcripts Defendants' counsel provided to him (Report at 6), Overby could only recall reviewing the testimony of four of 27 witnesses.  Overby also could not identify what documentary evidence he actually considered, as opposed to just received:

> Q:      At any point in writing the factual background, did you try and keep track of what pieces of evidence formed the basis for any information you put down?
>
> A:      I don't have like an annotated version of this, no.
>
> Q:      Did you keep track at all about what pieces of evidence would support a given statement here?
>
> A:      I didn't try to keep a list.  I tried to satisfy myself that I had a good factual predicate for my analysis that was supported by the documentation that I was reviewing.

Overby Depo. at 287:17-288:4.  How could Overby's methodology possibly be reliable or testable, as required by Rule 702, when even he does not know what he considered (or missed) in reaching his opinions?

       In sum, Overby concedes, on the one hand, that nobody could replicate or test his opinions, because they are not the product of any discernable principles or methods.  On the other hand, Overby claims that "anybody could repeat what I did," because he simply selected facts he thought might be relevant and tacked on subjective opinions about those facts.  In either event, these concessions confirm that Overby's testimony is not admissible or reliable under Federal Rules of Evidence 403 and 702.

- 18 -

### E.      Overby Is Not Qualified to Offer an Expert Opinion

To offer an expert opinion, a witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The Court must focus on whether a witness is shown to have specific expertise in the area at issue that qualifies him as an expert with respect to each opinion offered. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).  Even if it were appropriate to present testimony as an expert "regarding the federal securities laws," which it is not, Overby is not qualified to do so.  Overby has never litigated or tried a case involving the federal securities laws, has never published any articles on the subject or even, apparently, prepared any briefs regarding §§10(b) or 20(a) of the Exchange Act.  Overby Depo. at 86:16-88:24.  Overby's purportedly relevant experience is limited to two years of work at the SEC and eight years as a private attorney in the Corporate and Securities Practice Group at Bass, Berry & Sims PLC.[12] Overby Depo. at 11:5-17.  With regard to his time at the SEC and Bass, Berry & Sims, however, Overby insisted that client confidentiality prevented from discussing or even identifying any specific experience that would demonstrate that he had any specialized knowledge or experience (as opposed to just general knowledge of the federal securities laws) that would allow him to opine in this case. *See, e.g.*, Overby Depo. at 117:24-118:1 ("I think it would be difficult for me to talk about the engagement and what I did without raising issues with respect to privilege.")  Indeed, even with regard to the few cases that Overby had any involvement in and was willing to identify, only one of them even involved §10(b) of the Exchange Act and none involved §20(a) of the Exchange Act.  The following deposition exchanges exemplify Overby's inability to identify any specific work or experience that would qualify him as an expert on §§10(b) or 20(a) of the Exchange Act:

---

[12]      During Overby's tenure at Bass, Berry & Sims, the firm has represented Accredo, Accredo's successor, Medco, and defendant David Stevens on numerous occasions.  Overby Depo. at 339:21-340:14.

Q:      Does JDN Realty have anything to do with Section 10(b)?

A:      Again, I think the order speaks for itself.  Beyond that, I don't think I can answer your question.

Overby Depo. at 119:7-11.

Q:      Anything in [the JDN Realty Order] with regard to Section 10(b)?

A:      I do not see 10(b) listed amongst the cited sections.

Q:      Is there anything at all you can tell me about the JDN Realty matter that would lend credence to your being an expert on 10(b)?

A:      I think I will have to decline to comment about what I did for them on the cited basis.

Overby Depo. at 119:21-120:4.

Q:      The Genesco matter, did it involve Section 10(b) [of] the Exchange Act?

A:      Stipulate a number to the ones where the answer is I can't talk to you about it without running into issues of client confidentiality [and] privilege.

Q:      Based on the order that you have in front of you, did Genesco involve Section 10(b) of the Exchange Act?

A:      Let's see.  What charges are listed?  The order itself does not reference Section 10(b).

Q:      So, is there any information that you can give me regarding the Genesco matter that would let me evaluate whether or not it provided you with expertise on Section 10(b)?

A:      Any information beyond what is in the order?

Q:      Correct.

A:      Not that I can think of.

Overy Depo. at 123:21-124:14.   While Overby may choose to hide behind the claim of confidentiality and incant that some overall experience has imbued him with specialized knowledge that would assist a jury, the burden is on him to specifically demonstrate that specialized knowledge and he has failed to do so.

Even assuming *arguendo* that Overby did qualify as an expert in the federal securities laws, and that such expertise could be presented, his opinions in this case have no basis in any such expertise.  As Overby has repeatedly admitted, he did not bring any specialized knowledge or skill to bear in reaching his opinons:

> Q:      And this iterative process, is there anywhere, any academic literature or anything you are aware of that would identify how someone could go about a review of material for scienter, materiality?
>
> A:      Not that I'm aware of. ***I think anybody could do what I did*** if you sat down with the same body of information and, you know, you worked your way through it.

Overby Depo. at 199:20-200:3.

Overby is right that "anybody could do what [he] did" and, in fact, a jury will evaluate the evidence and make legal determinations as to the materiality of Defendants' false statements and the Defendants' scienter.  Accordingly, Overby offers no specialized knowledge that will assist the trier of fact and his testimony is inadmissible under Federal Rule of Evidence 702.

**IV.     Conclusion**

Overby's proffered testimony is nothing more than a thinly-veiled attempt to assert Defendants' view of the law, their version of the facts and their desired verdict.  For all of the foregoing reasons, Lead Plaintiffs respectfully request that, pursuant to Federal Rules of Evidence 401, 402, 403, 602, 702 and 703, this Court should issue an order instructing Defendants not to refer to, interrogate any witness concerning, comment on or introduce in any way expert testimony of J. Allen Overby.

DATED:  September 8, 2008                    Respectfully submitted,

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             MARK SOLOMON
                                             TOR GRONBORG
                                             JONAH H. GOLDSTEIN
                                             DAVID W. MITCHELL
                                             TRIG R. SMITH
                                             NATHAN W. BEAR


                                             _____
                                                    s/ TOR GRONBORG
                                                   TOR GRONBORG

                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)

                                             BERNSTEIN LITOWITZ BERGER &
                                               GROSSMANN LLP
                                             BLAIR A. NICHOLAS
                                             TIMOTHY A. DELANGE
                                             BRETT M. MIDDLETON
                                             MATTHEW P. JUBENVILLE
                                             12481 High Bluff Drive, Suite 300
                                             San Diego, CA  92130
                                             Telephone:  858/793-0070
                                             858/793-0323 (fax)

                                             Co-Lead Counsel for Plaintiffs

- 22 -

GLASSMAN, EDWARDS, WADE
  & WYATT, P.C.
B.J. WADE, #5182
26 N. Second Street Building
Memphis, TN  38103
Telephone:  901/527-4673
901/521-0940 (fax)

Liaison Counsel

S:\CasesSD\Accredo\Trial\MIL00053839-Overby Testimony.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 8, 2008.

<u>s/ TOR GRONBORG</u>
TOR GRONBORG

COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: torg@csgrr.com

# Mailing Information for a Case 2:03-cv-02216-BBD-gbc

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George E. Barrett**
  gbarrett@barrettjohnston.com

- **Nathan W. Bear**
  NBear@csgrr.com,stremblay@csgrr.com

- **Saul C. Belz**
  sbelz@glankler.com,apospisil@glankler.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Linda F Burnsed**
  lburnsed@cbslawyers.net

- **Karen M. Campbell**
  kcampbell@appersoncrump.com

- **F. Guthrie Castle , Jr**
  fgc@castle-law.com

- **Stanley M. Chernau**
  s.chernau@chernau.com

- **Timothy A. DeLange**
  timothyd@blbglaw.com,brettm@blbglaw.com,samj@blbglaw.com,kristinas@blbglaw.com,matthe

- **Amy Ferguson Dudek**
  adudek@glankler.com,apospisil@glankler.com

- **Jef Feibelman**
  jfeibelman@bpjlaw.com,cbiscoe@bpjlaw.com

- **Tor Gronborg**
  torg@csgrr.com,e_file_sd@csgrr.com

- **Douglas F. Halijan**
  dhalijan@bpjlaw.com,mmarshall@bpjlaw.com

- **Dixie W. Ishee**
  woodcarltonishee@bellsouth.net

- **Matthew P. Jubenville**
  matthewj@blbglaw.com

- **Emily C. Komlossy**
  ekomlossy@faruqilaw.com

- **Quitman Robins Ledyard , II**
  bledyard@borodandkramer.com

- **Brett M. Middleton**
  brettm@blbglaw.com

- **Timothy L. Miles**
  tmiles@barrettjohnston.com

- **David W. Mitchell**
  davidm@csgrr.com

- **Blair N. Nicholas**
  blairn@blbglaw.com

- **Russell F.A. Riviere**
  russellr@blbglaw.com

- **Kevin Hunter Sharp**
  ksharp@dsattorneys.com

- **Scott N. Sherman**
  scott.sherman@alston.com

- **Gary K. Smith**
  gsmith@appersoncrump.com,clunsford@appersoncrump.com,kcampbell@appersoncrump.com

- **Trig R. Smith**
  trigs@csgrr.com

- **Mark D. Trainer**
  mark.trainer@alston.com

- **B. J. Wade**
  bwade@gewwlaw.com

- **Allison Wannamaker**
  wannamakera@thomasonlaw.com

- **Kelly C. Wilcove**
  kelly.wilcove@alston.com,valerie.nouman@alston.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Ramzi Abadou**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Guri Ademi**
ADEMI & O'REILLY, LLP
3620 East Layton Ave.
Cudahy, WI 53110

**Shpetim Ademi**
ADEMI & O'REILLY, LLP
3620 East Layton Ave.
Cudahy, WI 53110

**Lauren S. Antonino**
CHITWOOD & HARLEY
1230 Peachtree St., N.E.
2900 Promenade II
Atlanta, GA 30309

**Peter Q. Bassett**
ALSTON & BIRD
1201 West Peachtree St.
Atlanta, GA 30309-3424

**Javier Bleichmar**
BERNSTEIN LITOWITZ BERGER & GROSSMAN
1285 Ave of the Americas
38th Floor
New York, NY 10019

**Martin D. Chitwood**
CHITWOOD HARLEY & HARNES LLP
1230 Peachtree St., N.E.
2900 Promenade II
Atlanta, GA 30309

**Patricia A. Connell**
ERNST & YOUNG
5 Times Square
New York, NY 10036-6530

**Gregory M. Egleston**
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

**Nadeem Faruqi**
FARUQI & FARUQI, LLP
369 Lexington Avenue
10th Floor
New York, NY 10017

**Mark C. Gardy**
ABBEY GARDY, LLP
212 East 39th St.
New York, NY 10016

**Carol V. Gilden**
MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN, P.C.
191 N. Wacker Dr.
Ste. 1800
Chicago, IL 60606-1615

**Karen M. Hanson**
LOCKRIDGE GRINDAL NAUEN, PLLP
100 Washington Ave., South
Ste. 2200
Minneapolis, MN 55401

**Ronald B. Hauben**
ERNST & YOUNG
5 Times Square
New York, NY 10036-6530

**Marc S. Henzel**
LAW OFFICES OF MARC S. HENZEL
273 Montgomery Ave.
Ste. 202
Bala Cynwyd, PA 19004

**Fred Taylor Isquith**                                              **, Esq**
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY 10016

**Douglas S. Johnston**
BARRETT JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, TN 37201-1601

**Nancy Kaboolian**
ABBEY GARDY, LLP
212 East 39th St.
New York, NY 10016

**William S. Lerach**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Mel E. Lifshitz**
BERNSTEIN LIEBHARD & LIFSHITZ, LLP
10 East 40th Street
New York, NY 10016

**Richard A. Lockridge**
LOCKRIDGE GRINDAL NAUEN, PLLP
100 Washington Ave., South
Ste. 2200
Minneapolis, MN 55401

**Douglas M McKeige**
BERNSTEIN LITOWITZ BERGER & GROSSMAN
1285 Ave of the Americas
38th Floor
New York, NY 10019

**Eitan Misulovin**
BERNSTEIN LITOWITZ BERGER & GROSSMAN
1285 Ave of the Americas
38th Floor
New York, NY 10019

**Michael E. Moskovitz**
MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN, P.C.
191 N. Wacker Dr.
Ste. 1800
Chicago, IL 60606-1615

**Gregory M. Nespole**                                              **, Esq**
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
270 Madison Ave.
New York, NY 10016

**Darren J Robbins**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
655 W. Broadway
Ste. 1900
San Diego, CA 92101

**Robert M. Roseman**
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market St.
Ste. 2500
Philadelphia, PA 19103

**David A. Rosenfeld**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
200 Broadhollow Rd.
Ste. 406
Melville, NY 11747

**Samuel H. Rudman**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
200 Broadhollow Rd.
Ste. 406
Melville, NY 11747

**Mark Solomon**
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Marc A. Topaz**
SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087