UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| In re ACCREDO HEALTH, INC. SECURITIES LITIGATION | Civil Action No. 03-CV-2216 - BBD |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | |
| ALL ACTIONS. | |

LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 3

      A.     Procedural History .............................................................................................. 3

      B.     The Settlement Should Be Approved As Fair,
             Reasonable And Adequate .................................................................................. 6

      C.     The Proposed Settlement Satisfies The Sixth Circuit
             Standards For Approval Of Class Action
             Settlements .......................................................................................................... 8

             1.     The Likelihood Of Ultimate Success On The
                     Merits Balanced Against The Amount And
                     Form Of Relief Offered In The Settlement ................................... 9

             2.     The Complexity, Expense, And Likely
                       Duration Of The Litigation Favors
                     Settlement ........................................................................................ 12

             3.     The Stage Of The Proceedings And The
                       Amount Of Discovery Completed Favors
                     Settlement ........................................................................................ 14

             4.     The Settlement Was The Result Of "Arm's-
                     Length" Negotiations Among Competent
                     And Experienced Counsel With The
                     Assistance Of An Experienced Mediator .................................... 15

             5.     The Favorable Reaction Of Class Members
                     Supports The Settlement ................................................................. 16

              6.     The Public Interest Favors Settlement ......................................... 17

      D.     The Plan of Allocation Is Fair And Reasonable And
              Should Be Approved .......................................................................................... 18

III.    CONCLUSION ............................................................................................................ 19

## TABLE OF AUTHORITIES

<u>Case</u>                                                                                      <u>Page</u>

*In re Accredo Health, Inc. Sec. Litig.*,
   2006 WL 1716910 (W.D. Tenn. April 19, 2006) ...................................................................5

*In re Apollo Group, Inc. Sec. Litig.*,
   2008 WL 3072731 (D.Ariz. Aug 4, 2008) ...........................................................................12

*In re Apple Computer Sec. Litig.*,
   1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ......................................................12

*In re Art Materials Antitrust Litig.*,
   100 F.R.D. 367 (N.D. Ohio 1983) ................................................................................12, 15

*Bailey v. Great Lakes Canning*,
   908 F.2d 38 (6th Cir. 1990) ...............................................................................................6

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ..........................................................................6, 16

*Bryant v. Universal Servs., Inc.*,
   2000 WL 680258 (E.D. La. May 24, 2000) ........................................................................15

*Castellano v. Young & Rubicam, Inc.*,
   257 F.3d 171 (2d Cir. 2001) .............................................................................................10

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd with respect to settlement and plan of*
   *allocation, vacated and remanded on other grounds*, 264 F.3d 201 (3d Cir. 2001) ...............18

*In re Chicken Antitrust Litig.*,
   810 F.2d 1017 (11th Cir. 1987) ........................................................................................18

*In re Comshare Inc. Sec. Litig.*,
   183 F.3d 542 (6th Cir. 1999) ...........................................................................................10

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) .........................................................................................15

*In re Dun & Bradstreet Credit Serv. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) ......................................................................................9

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................................11

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981), *vacated on other grounds and modified,* 670 F.2d 71
  (6th Cir. 1982) ........................................................................................................6

*Granada Invs., Inc. v. DWG Corp.*,
  823 F. Supp. 448 (N.D. Ohio 1993) .......................................................................7

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................9

*In re Indep. Energy Holdings PLC*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................................7, 15

*Int'l Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006) ......................................................9

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ......................................................11

*Kogan v. AIMCO Fox Chase, L.P.*,
  193 F.R.D. 496 (E.D. Mich. 2000) ....................................................................7, 15

*Manners v. Am. Gen. Life Ins. Co.*,
  1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ...................................................6

*Maywalt v. Parker & Parsley Petroleum Co.*,
  1997 U.S. Dist. LEXIS 97 ....................................................................................19

*In re Nat'l Student Mktg. Litig.*,
  68 F.R.D. 151 (D.D.C. 1974) ...............................................................................12

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006) ...........................................................................9

*Olick v. Parker & Parsley Petroleum Co.*,
  145 F.3d 513 (2d Cir. 1998) .................................................................................19

*In re PaineWebber Ltd. P'ship Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .....................................................................18, 19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................................13

*Randall v. Loftsgaarden*,
  478 U.S. 647 (1986) .............................................................................................10

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................12

*Sirota v. Solitron Devices, Inc.*,
   673 F.2d 566 (2d Cir. 1982) ................................................................................................. 10

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................................... 7, 16

*In re Telectronics Pacing Sys.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................................... passim

*UAW v. GMC*,
   2007 U.S. App. LEXIS 18677 (6th Cir. Aug. 7, 2007) ......................................................... 6, 9

*Walsh v. Great Atl. & Pac. Tea Co.*,
   726 F.2d 956 (3d Cir. 1983) ................................................................................................. 18

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993) ..................................................................................... 18

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ............................................................................................. 6, 7

## SECONDARY AUTHORITIES

2 Herbert Newberg & Alba Conte,
   *Newberg on Class Actions* § 11.48 (3d. ed. 1992) .................................................................. 16

Elliot J. Weiss & Janet Moser,
   *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities
   Litigation Reform Act Creates*, 76 Wash. U.L.Q. 457, 459 (1998) ........................................... 9

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Louisiana School Employees' Retirement System and Debra Swiman (together, "Lead Plaintiffs") (hereinafter, "Lead Plaintiffs"), respectfully submit this memorandum of law in support of their motion for final approval of (1) the settlement that resolves this consolidated securities class action (the "Action") against defendants Accredo Health, Inc. ("Accredo"), David D. Stevens and Joel R. Kimbrough (collectively, "Defendants"), as set forth in the Stipulation of Settlement dated October 8, 2008 (the "Stipulation"), and (2) the proposed plan of allocation of the settlement proceeds (the "Plan of Allocation").[1]

## I.    INTRODUCTION

Lead Plaintiffs have reached an agreement to settle this securities class action litigation against Defendants for payment of Thirty-Three Million Dollars ($33,000,000) in cash (the "Settlement"). The proposed Settlement was achieved after more than five years of litigation, and less than two months before trial. This Action was vigorously litigated from start to finish and the proposed Settlement was achieved only after more than three years of fact discovery, including the production, review and analysis of more than 2 million pages of documents, more than 35 depositions, the completion of expert discovery and the completion of briefing on the parties' pending motions for summary judgment. Joint Decl., ¶5. The proposed Settlement is the product of extensive negotiations that were overseen by the Honorable Edward A. Infante

---

[1] Pursuant to the Stipulation, Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP and Coughlin Stoia Geller Rudman & Robbins LLP, are simultaneously submitting the Motion For an Award of Attorneys' Fees and Expenses and Supporting Memorandum of Law (the "Fee Memorandum"), as well as the Joint Declaration of Timothy A. DeLange and Tor Gronborg in Support of Final Approval of Settlement; Motion for Award of Attorneys' Fees and Expenses; and Plan of Allocation of Settlement Proceeds (the "Joint Declaration" or "Joint Decl."). The Joint Declaration describes the history of the Action; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the settlement proceeds and the factors upon which that plan is based. The Fee Memorandum discusses the legal standards for approval of the request for attorneys' fees and expenses under the standards applicable in this Circuit, demonstrating the fairness of the request for fees and expenses. Rather than repeating the matters set forth in the Joint Declaration and the Fee Memorandum, Lead Counsel respectfully incorporate those documents herein.

(Ret.), an experienced and well-respected mediator who has facilitated the resolution of dozens of securities class action litigations. *Id.*, ¶6. Both a representative from LSERS and Mrs. Swiman were directly involved and participated in the negotiations and fully support the Settlement. *Id.*, ¶¶7-8.

In reaching the Settlement, Lead Counsel and Lead Plaintiffs considered the numerous risks raised by the arguments Defendants' made in their motion for summary judgment and, if successful, in establishing liability and damages at trial, and determined that the Settlement is in the best interests of the Class.[2] Even though Lead Counsel and Lead Plaintiffs believe that the Action has substantial merit, the Action involved complex legal, factual and accounting issues, as well as difficult issues of proof and loss causation. *Id.*, ¶¶66-67.

Throughout the litigation, Defendants raised significant defenses to liability. For instance, Lead Plaintiffs would have had to prove that the Defendants issued materially false and misleading statements and that the Defendants acted with scienter (*i.e.*, with knowledge or reckless disregard for the falsity of the allegedly false and misleading statements). Defendants vigorously contested liability and raised compelling arguments in their motion for summary judgment that there is no evidence the receivables were overvalued during the Class Period and that the truth about the receivables and the SPS Division's days sales outstanding ("DSO") was already known to shareholders. In addition, Defendants also contested that they acted with scienter. Defendants also argued that the Class' damages were limited because the majority of

---

[2] The "Class" consists of all purchasers and acquirers of Accredo securities during the period June 16, 2002 through April 7, 2003 (the "Class Period"). Excluded from the Class are Defendants, members of the families of individual defendants, any parent, subsidiary, affiliate, partner, officer, executive or director of any Defendant, any entity in which any such excluded party has a controlling interest and the legal representatives, affiliates, heirs, successors, or assigns of any such excluded Person. Also excluded from the Class are those Persons who timely and validly requested exclusion from the Class pursuant to the Notice of Pendency of Class Action dated July 18, 2008 (and do not retract their request) and those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Proposed Settlement of Class Action.

the drop in Accredo's stock price on April 8, 2003, was attributable to the lower estimates of revenues and earnings for Accredo for fiscal 2003 and fiscal 2004 and not the alleged fraud.

Even assuming Lead Plaintiffs were successful in overcoming the motion for summary judgment, Lead Plaintiffs would still have to prove at trial that the alleged statements were materially false and misleading and that Defendants acted with the requisite frame of mind. Moreover, even if ultimately successful in establishing falsity and scienter, the issues of loss causation and damages would be hotly contested at trial. In particular, Lead Plaintiffs would need to establish that the alleged misrepresentations and omissions related to accounts receivable caused the damages suffered by the Class *and* quantify the amount of such damages. Lead Plaintiffs and Defendants strongly disagreed on the import and meaning of many of the documents produced and the witnesses' testimony in the case. Moreover, each side retained highly qualified experts supporting their respective positions on determinative issues. There could be no way of predicting which interpretations, inferences or testimony this Court or a jury would accept. The Court or a jury could have sided with Defendants' on some or all of the issues. *Id.*, ¶67.

II.     ARGUMENT

    A.     Procedural History

During and after April 8, 2003, several securities class actions were filed in the United States District Court for the Western District of Tennessee, Western Division (the "Court") on behalf of a class of purchasers of the securities of Accredo Health, Inc. ("Accredo"). On June 19, 2003, the Court entered an order consolidating all of these cases under the caption entitled *In re Accredo Health, Inc. Securities Litigation*, Civil Action No. 03-2216-BBD (the "Litigation"). On June 30, 2004, the Court issued an order appointing LSERS and Mrs. Swiman as Co-Lead

3

Plaintiffs pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") and appointed the law firms of Bernstein Litowitz Berger and Grossmann LLP and Coughlin Stoia Geller Rudman and Robbins LLP as Co-Lead Counsel pursuant to § 21D(a)(3)(B)(v) of the Exchange Act. Joint Decl., ¶17.

On September 15, 2004, Lead Plaintiffs filed the Consolidated Complaint For Violation Of The Federal Securities Laws (the "Complaint"). The Complaint asserted claims against Accredo, David D. Stevens and Joel R. Kimbrough (the "Individual Defendants") under §§ 10(b) and 20(a) Exchange Act on behalf of shareholders who acquired Accredo securities on the open market between June 16, 2002 and April 7, 2003. On November 1, 2004, Defendants moved to dismiss the Complaint, arguing that it failed to identify any false statements, failed to allege the requisite strong inference of scienter, and that the Complaint's allegations of motive and opportunity contained logical inconsistencies. *Id.*, ¶¶23-24.

On December 15, 2004, Lead Plaintiffs filed their opposition to the motion to dismiss. In the opposition brief, Lead Plaintiffs identified each of the false and misleading statements and identified facts establishing a strong inference of scienter for each defendant, including the Individual Defendants' knowledge of the SPS Division's accounts receivable and their knowledge of Accredo's financial results. On April 11, 2005 the Court denied Defendants' motion to dismiss in its entirety, finding that the Complaint "specified the statements alleged to have been misleading, the reasons why the statements are misleading, and the facts on which Plaintiffs' beliefs are based" and that the Complaint sufficiently alleged a strong inference of scienter. *Id.*, ¶¶25-26.

On July 25, 2005, Lead Plaintiffs moved to certify a class of "all persons and entities who acquired Accredo Health, Inc. securities on the open market between June 16, 2002 and April 7,

4

2003," and to appoint LSERS and Mrs. Swiman as class representatives pursuant to Fed. R. Civ. P. 23. In support of their motion, Lead Plaintiffs retained an expert on market efficiency and included a declaration opining that Accredo traded in an efficient market throughout the Class Period. On September 23, 2005, Defendants opposed class certification and included an expert declaration that the market for Accredo securities was not efficient. *Id.*, ¶¶39-42.

On March 2, 2006, the Court held oral argument. On March 7, 2006, Magistrate Judge Tu M. Pham issued a Report and Recommendation that LSERS and Mrs. Swiman were well-qualified class representatives, and that class certification should be granted. *In re Accredo Health, Inc. Sec. Litig.*, 2006 WL 1716910 (W.D. Tenn. April 19, 2006). In April 2006, this Court adopted Judge Pham's Report and Recommendation in full.

Following the Court's order, fact discovery commenced, and continued until January 2008. Throughout that time, Lead Plaintiffs pursued an exhaustive discovery plan, including: (1) preparing and serving document requests and interrogatories on Defendants; (2) preparing and serving document and deposition subpoenas on third parties; (3) obtaining, organizing, reviewing and analyzing more than 2.5 million pages of documents produced by Defendants and third parties; (4) moving to compel production of documents and answers to interrogatories; and (5) deposing more than 35 material witnesses, including all of the Individual Defendants, often for multi-day depositions. Joint Decl., ¶27.

On December 21, 2007, the parties exchanged opening expert reports. Lead Plaintiffs designated and exchanged expert reports from four experts in accounting, damages, accounts receivables and Sarbanes-Oxley/corporate governance. Defendants designated and exchanged expert reports from four experts in accounting, damages, corporate governance and scienter. On February 15, 2008, the parties exchanged rebuttal expert reports. *Id.*, ¶47.

Thereafter, on May 9, 2008, Lead Plaintiffs filed an affirmative motion for partial summary judgment on the elements of loss causation and materiality. On May 16, 2008, Defendants filed a motion for summary judgment on the elements of scienter, materiality, loss causation and damages. Defendants' motion was accompanied by a 45-page memorandum and more than 2,500 pages of evidence in support. On July 2, 2008, Lead Plaintiffs filed a 49-page memorandum in opposition, supported by more than 6,100 pages of documentary and testimonial evidence. Trial was set to commence on October 20, 2008. *Id.*, ¶¶52-53.

### B. The Settlement Should Be Approved As Fair, Reasonable And Adequate

The law favors the settlement of class actions. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified,* 670 F.2d 71 (6th Cir. 1982) (recognizing "that the law generally favors and encourages the settlement of class actions"). District Courts throughout the Sixth Circuit concur and adhere to this policy favoring settlement of class actions. *See, e.g., In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement"); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ. A. 3-98-0266, 1999 WL 33581944, at *19 (M.D. Tenn. Aug. 11, 1999) (noting the court "should consider the 'overriding public interest in favor of settlement of class action lawsuits' bearing in mind that compromise is the essence of settlement").[3]

Pursuant to Rule 23(e), a court should approve a class settlement if it is fair, adequate, and reasonable, and in the best interest of the class. *UAW v. GMC*, Nos. 06-1475/2064, 2007 U.S. App. LEXIS 18677, at *35 (6th Cir. Aug. 7, 2007); *Bailey v. Great Lakes Canning*, 908 F.2d 38, 42 (6th Cir. 1990); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). In making

---

[3] Unless otherwise indicated, all emphasis is added and all citations are omitted herein.

such a determination, a court is not required to "decide the merits of the case or resolve unsettled legal questions." *UAW*, 2007 U.S. App. LEXIS 18677, at \*36; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001) (a court "is not 'to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties'"); *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993) ("[i]n exercising its discretion, a Court should not decide the merits of an action or attempt to substitute its own judgment for that of the parties").

The view of experienced counsel favoring the settlement is also entitled to great weight. *See Vukovich*, 720 F.2d at 922-23 (stating the "court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000) (noting "when significant discovery has been completed, the Court should defer to the judgment of experienced trial counsel who has evaluated the strength of his case"). Where, as here, a settlement is endorsed as fair by experienced and sophisticated counsel after rigorous arm's-length negotiations, there is a strong initial presumption that the compromise is fair and reasonable. *See In re Indep. Energy Holdings PLC*, No. Civ. 00-6689 (SAS), 2003 WL 22244676, at \*4 (S.D.N.Y. Sept. 29, 2003) ("Finally, the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). Moreover, the Settlement here is endorsed by informed Court-appointed Lead Plaintiffs who are

both sophisticated institutional investors and who substantially participated in the negotiation of the settlement – a significant factor in the post-PSLRA era. Joint Decl., ¶¶65-69.

The Settlement provides a substantial benefit for the Class. The $33 million cash recovery is a substantial recovery for the Class, especially considering the risks of defeating Defendants' motion for summary judgment and the likelihood of no recovery at all. Defendants raised compelling arguments in their motion for summary judgment that there is no evidence that the receivables were overvalued during the Class Period and that the truth about the receivables and the SPS Division's DSO was already known to shareholders. In addition, Defendants argued that the majority of the drop in Accredo's stock price on April 8, 2003, was attributable to the lower estimates of revenues and earnings for Accredo for fiscal 2003 and fiscal 2004 and not the alleged fraud.

Defendants' damage expert opined that the damages caused by the alleged fraud were between zero and, at most, $32.2 million. Thus, Lead Counsel and Lead Plaintiffs believe there are serious questions as to whether a more favorable monetary result against the Defendants could be attained after the ruling on Defendants' motion for summary judgment, then trial and the inevitable post-trial motions and appeals. The Settlement achieves a prompt, certain and substantial recovery for Class members, and is unquestionably superior to the distinct possibility that, if this Action proceeded to a ruling on the pending summary judgment motions, and ultimately to trial, there could be no recovery at all. As discussed below, analysis of the relevant factors demonstrates that the proposed Settlement merits this Court's approval.

C.    The Proposed Settlement Satisfies The Sixth Circuit
       Standards For Approval Of Class Action Settlements

In determining whether a proposed settlement is fair, adequate, and reasonable, courts in the Sixth Circuit look to the following factors: (1) the likelihood of success on the merits; (2) the

8

complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the opinions of class counsel and class representatives; (5) the reaction of absent class members; (6) the nature of the negotiations; and (7) the public interest. *UAW*, 2007 U.S. App. LEXIS 18677, at \*35; *Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at \*22 (E.D. Mich. July 13, 2006); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990). As set forth below, the Settlement satisfies these standards and should be approved.

      1.      The Likelihood Of Ultimate Success On
              The Merits Balanced Against The Amount
              <u>And Form Of Relief Offered In The Settlement</u>

One of the factors courts in this Circuit consider in approving a class action settlement is the plaintiffs' likelihood of success on the merits balanced against the amount and form of relief offered in settlement. *Telectronics*, 137 F. Supp. 2d at 1010-12. As in every complex case of this nature, the Lead Plaintiffs faced formidable obstacles to recovery. While Lead Plaintiffs and Lead Counsel believe that they could prove the claims asserted (and negotiated the proposed settlement on that basis), there was no guarantee that they would prevail on Defendants' motion for summary judgment, and if successful, at trial and ultimately collect after post-trial motions and appeals, a judgment larger than the \$33 million obtained for the Class in the Settlement. Indeed, post-PSLRA rulings make it clear that the risk of no recovery has increased substantially since the PSLRA was adopted in 1995.[4]

---

[4] *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). The court in *Ikon* went on to describe a number of additional factors that have made litigation of securities class actions more difficult, stating "The Act . . . substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs." *Id.* at 194-195; *see also* Elliot J. Weiss & Janet Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities Litigation Reform Act Creates*, 76 Wash. U.L.Q. 457, 459 (1998) (noting that the PSLRA made it more difficult to set forth a claim and survive a motion to dismiss).

Securities litigation generally involves complex issues of fact and law, and this case is no exception. To establish liability under § 10(b), Lead Plaintiffs would bear the burden of proving that Defendants participated in the dissemination of false or misleading information, that the information was material to investors in determining whether to invest in Accredo common stock, that the information inflated the market price of Accredo common stock, caused damage to the Class, and that each Defendant acted with scienter. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (establishing the elements of materiality, loss causation, and scienter posed substantial hurdles to recovery).

This case – and the motion for summary judgment and trial in particular – presented several risks. Defendants raised compelling arguments in their motion for summary judgment that there was no evidence that the receivables were overvalued during the Class Period. Defendants also argued that the truth about the receivables was already known to shareholders because the SPS Division's DSOs were publicly disclosed throughout the Class Period. Defendants vigorously contested that they acted with scienter, arguing that is was logically inconsistent for Defendants to intentionally overpay for the SPS Division if they knew the receivables were overvalued and that they had "no reason to hide" the overvalued reserves.

Lead Plaintiffs also faced substantial difficultly in proving damages. Proof of damages in securities litigation requires complex expert testimony. Traditionally, damages in a securities fraud action are the investors' "out-of-pocket" loss. *See Randall v. Loftsgaarden*, 478 U.S. 647, 661-62 (1986). Under this measure of damages, a defrauded investors may recover the difference between the price paid for the securitiy and the "fair value" of that security as of the date of his or her purchase. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir. 1982). Defendants cannot be held liable for any decline in the value of securities caused by factors

10

unrelated to the alleged fraud. *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 188 (2d Cir. 2001). Moreover, to establish damages, Lead Plaintiffs would have to demonstrate loss causation – that they suffered damages when the truth of Defendants' fraud became known to the market. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Here, Defendants strenuously argued that the majority of the drop in Accredo's stock price on April 8, 2003, was attributable to the lower estimates of revenues and earnings for Accredo for fiscal 2003 and fiscal 2004, and that Lead Plaintiffs could not prove the amount of the drop that was attributable to the announcement regarding the reserves. Accordingly, there was a significant risk that Defendants' motions for summary judgment would ultimately be granted, in full or in part, leaving little or no recovery for the Class.

If successful in opposing summary judgment, Lead Plaintiffs would then have had to prove to a jury that each Defendant acted with scienter, *i.e.*, knowingly or recklessly misrepresenting Accredo's reserve for accounts receivable throughout the Class Period. If successful in establishing falsity and scienter, Lead Plaintiffs would then need to establish that the alleged misrepresentations and omissions related to accounts receivable caused the damages suffered by the Class *and* quantify the amount of such damages. Lead Plaintiffs and Defendants each retained highly qualified experts supporting their respective positions on determinative issues. There could be no way of predicting which interpretations, inferences or testimony a jury would accept. The jury could have sided with Defendants' on some or all of the issues.

In short, while Lead Plaintiffs and Lead Counsel believe that the claims asserted have substantial merit, if the litigation continued, Lead Plaintiffs and the Class would bear the risks of establishing liability that would have been vigorously challenged by Defendants. Absent settlement, this contest would have ultimately developed into a battle of competing facts and

inferences, competing experts and a credibility toss-up to be decided by the jury.[5]  By contrast,
the $33 million settlement is immediately realizable by the Class, and eliminates all of these
risks.

2.    The Complexity, Expense, And Likely
      Duration Of The Litigation Favors Settlement

The complexity, expense and likely duration of the litigation are additional factors
considered in determining the fairness of a settlement.  *Telectronics*, 137 F. Supp. 2d at 1013; *In
re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983).  Here, there is little
doubt that this securities class action involved complex factual and legal issues.  As discussed
above and in the Joint Declaration, the various obstacles with which Lead Plaintiffs were
confronted "flow from the complexities and difficulties inherently involved in shareholder
securities fraud litigation."  *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974).
Indeed, the primary issues in this case relate to Accredo's failure to adequately reserve for the
Company's accounts receivable.  Calculations of reserves for accounts receivable involve a
series of complicated formulas that include a number of assumptions and estimates.  Lead
Plaintiffs retained an industry expert who spent substantial time assisting Lead Counsel in
understanding the pharmaceutical industry and the DSOs in such industry.  Lead Plaintiffs also
retained an accounting expert who spent enormous time analyzing Accredo's calculations of its
reserves for accounts receivable throughout the Class Period.  Lead Counsel worked extensively

---

[5]  Moreover, even if Lead Plaintiffs prevailed through summary judgment, risks to the class remain.  Even a
meritorious case can be lost at trial.  *See In re JDS Uniphase Corp. Sec. Litig.*, Civ. No. C-02-1486-CW, 2007 WL
4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was
dismissed and plaintiffs were ordered to pay defendants the costs of defending the action).  Further, a successful jury
verdict does not eliminate the risk to the class.  *See In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT,
Slip Copy, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) (overturning verdict and granting defendants' motion for
judgment as a matter of law).  *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS
15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the individual defendants
and ordered a new trial with respect to the corporation); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997)
(reversing $81 million jury verdict for securities fraud).

with both these experts, who prepared expert reports, were deposed and were preparing for their trial testimony. Joint Decl., ¶¶46-51.

Lead Plaintiffs also retained a damages expert who spent hundreds of hours researching and analyzing Accredo's stock price, analyst reports and preparing an event study. Lead Plaintiffs' damage expert prepared an expert report and, after review of Defendants' damages expert's report, prepared a rebuttal report. Lead Plaintiffs' damage expert was deposed and was preparing for trial. Defendants' expert argued that the majority of the drop in Accredo's stock price on April 8, 2003, was attributable to the lower estimates of revenues and earnings for Accredo for fiscal 2003 and fiscal 2004 and not the alleged fraud. Defendants' damage expert opined that the damages caused by the alleged fraud were zero and, at most, \$32.2 million.

If Lead Plaintiffs successfully defeated Defendants' summary judgment motion, the trial of this Action would run several weeks, and involve numerous attorneys, witnesses, experts, and the introduction of voluminous documentary evidence. Even if successful at trial, Defendants would undoubtedly appeal, leading to additional delay and expense. Thus, even if the Class were to recover a larger judgment after trial, which is certainly not guaranteed or even likely, the additional delay, through trial, post-trial motions and appeals, would deny the Class any recovery for years. Joint Decl., ¶¶66-67. By contrast, the Settlement secures a substantial and certain benefit for the Class in this highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

3.      The Stage Of The Proceedings And The
Amount Of Discovery Completed Favors Settlement

To ensure that plaintiffs had access to sufficient information to evaluate their case and to
assess the propriety of a settlement, the stage of the proceedings and the extent of discovery
conducted are additional factors that are considered in determining the fairness of a settlement.
*Telectronics*, 137 F. Supp. 2d at 1014-15.  Here, this litigation was pending for over five years
and the parties were preparing for an October 20, 2008, trial date when the Settlement was
reached.  By that time, Lead Counsel had: (1) conducted an extensive investigation into the facts
alleged; (2) served numerous written discovery requests on Defendants and various third parties,
including interrogatories, document requests and requests for admissions; (3) reviewed and
analyzed over two and a half million pages of documents produced by Defendants and third
parties; (4) took some 35 depositions of fact witnesses; (5) completed expert discovery, including
the exchange of expert reports and rebuttal reports, document discovery and the depositions of
all designated experts; (6) fully briefed Lead Plaintiffs' motion for partial summary judgment;
(7) opposed Defendants' motions for summary judgment; (8) participated in three mediation
sessions; and (9) prepared for trial, including preparation of a joint pre-trial memoranda,
designation of witnesses, exhibits and deposition testimony, preparation of jury instructions,
filing 22 motions *in limine* and the filing of two *Daubert* motions to exclude testimony from
Defendants' experts.  Joint Decl., ¶5.

There is no question that Lead Plaintiffs and Lead Counsel were in an excellent position
to evaluate the strengths and weaknesses of their allegations against Defendants, and the
defenses raised thereto, as well as the substantial risks of continued litigation, and to conclude
that the Settlement provides a fair, adequate and reasonable recovery, and is in the best interest
of the Class.  Having sufficient information to properly evaluate the Action, Lead Plaintiffs have

14

managed to settle this Action on terms very favorable to the Class and without the substantial additional expense, risk and uncertainty of continued litigation. This factor weighs in favor of this Court's approval of the Settlement.

      4.    The Settlement Was The Result Of "Arm's-Length"
             Negotiations Among Competent And Experienced
             Counsel With The Assistance Of An Experienced Mediator

In appraising the fairness of the proposed settlement, the court is entitled to rely heavily on the opinion of competent counsel. *Telectronics*, 137 F. Supp. 2d at 1015-16; *Art Materials*, 100 F.R.D. at 371. This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of plaintiffs' case and the probable course of future litigation. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Kogan*, 193 F.R.D. at 502. As set forth above and in the Joint Declaration, Lead Counsel have conducted a thorough investigation, reviewed and analyzed more than two and a half million pages of documents, deposed more than 35 fact witness, completed expert discovery, including eight expert depositions, opposed summary judgment and prepared for trial. Lead Counsel are thus fully capable of evaluating the merits of their case against Defendants and the reasonableness of the Settlement. Joint Decl., ¶5.

In evaluating the proposed Settlement and the opinion of counsel, the court may examine the negotiating process that took place between the parties to confirm that there was no collusion. *Kogan*, 193 F.R.D. at 502-03. Here, the proposed Settlement is the product of intensive, arm's-length negotiations between counsel – with the active participation of representatives from the Lead Plaintiffs – that extended over several years and involved three full-day face-to-face mediation sessions with highly respected and experienced mediators. *See Indep. Energy*, 2003 WL 22244676, at *4 ("Finally, the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation,

is further proof that it is fair and reasonable."); *see also Bryant v. Universal Servs., Inc.*, No. CIV. A. 99-2944, 2000 WL 680258, at *3 (E.D. La. May 24, 2000) (finding no collusion because "[t]he parties reached the settlement here after mediation led by an impartial third party"). During settlement negotiations, Lead Plaintiffs and Lead Counsel made it clear that, while they were prepared to fairly assess the strengths and weaknesses of the claims asserted, they would continue to litigate rather than settle for less than fair value.

As a result of the negotiation process, Lead Counsel – who are highly experienced in securities class action litigation – have made a considered judgment that the proposed Settlement is fair and reasonable, and provides a substantial benefit to the Class.  *See* Joint Decl., ¶¶65-68. This fact supports the Court's approval of the proposed Settlement. *See Sumitomo Copper*, 189 F.R.D. at 280-81 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

### 5. The Favorable Reaction Of Class Members Supports The Settlement

To further support approval of a settlement, courts look to the class's reaction to the settlement. *Brotherton*, 141 F. Supp. 2d at 906.  Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Id.* Moreover, "a relatively small number of class members who object is an indication of a settlement's fairness." *Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.48 (3d. ed. 1992)).

Here, the favorable reaction of the members of the Class supports the reasonableness of the Settlement and the fee request. At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, Gilardi has effected a notice program that has consisted of: (1) disseminating

16

the Notice of: (1) Pendency of Class Action, and (2) Hearing on Proposed Settlement and Attorneys' Fee Petition and Right To Share In Net Settlement Fund (the "Notice") and the Proof of Claim and Release Form. As of January 14, 2009, the Notice has been mailed to 48,341 potential Class members and their nominees. *See* Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice ("Sylvester Decl."), Ex. 1, ¶9. The Notice advised Class members of the proposed Settlement, the proposed Plan of Allocation and the request for an award of attorneys' fees and expenses. The Notice further advised Class members of their right to object or seek exclusion from the Class, and explained that this right needed to be exercised by January 28, 2009. Additionally, a summary notice was published on December 5, 2008 in *The Commercial Appeal* and *Investor's Business Daily. Id.*, ¶12. The Notice and Proof of Claim form were and remain available on the claims administrator's website, and on the websites of Lead Counsel. *Id.*, ¶11; Joint Decl., ¶72. Further, on or about November 26, 2008, Gilardi established a toll-free number to handle shareholder inquiries. Sylvester Decl., ¶10. To date, Gilardi has received 52 phone calls. *Id.*

While the time for objecting has not yet expired, to date *no Class Member has objected* to either the Settlement, the Plan of Allocation, or the request for an award of attorneys' fees and expenses. Joint Decl., ¶4.

### 6. The Public Interest Favors Settlement

As detailed above, the Settlement for $33 million in cash provides a substantial recovery to a large Class of shareholders and demonstrates the viability of the private enforcement of the securities laws. Moreover, as explained above, it is certainly possible that the Class would receive no recovery at all. The Settlement puts an end to protracted litigation that, absent

settlement, could have resulted in a trial in this Court, with jurors from this District. Thus, the public interest favors settlement.

      D.      The Plan of Allocation Is Fair And
                 Reasonable And Should Be Approved

The Notice contains the Plan of Allocation, which details how the proceeds from the Settlement are to be divided among authorized Class members. A trial court has broad discretion in approving a plan of allocation. *In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987). The test is simply whether the proposed plan, like the Settlement itself, is fair, reasonable and adequate. *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 264 (D.N.J. 2000), *aff'd with respect to settlement and plan of allocation, vacated and remanded on other grounds*, 264 F.3d 201 (3d Cir. 2001); *In re PaineWebber Ltd. P'ship Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983) (stating the "court's principal obligation is simply to ensure that the fund distribution is fair and reasonable").

In determining whether a proposed plan of allocation is fair, courts look primarily to the opinion of counsel. *See PaineWebber*, 171 F.R.D. at 133 (stating "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information"); *see also White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court . . . affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds). Here, working with their damage expert, Lead Counsel have developed a Plan of Allocation that reflects in a simple and straightforward manner their damages theory of the case. *See* Declaration of Scott Hakala in Support of the Proposed Plan of Allocation,

18

attached as Exhibit 4 to the Joint Declaration, ¶7. Accordingly, the Plan of Allocation will result in a fair distribution of the available proceeds among Class members. *Id.*

Courts also consider the reaction of a class to a plan of allocation. *Maywalt v. Parker & Parsley Petroleum Co.*, No. 92 Civ. 1152 (RWS), 1997 U.S. Dist. LEXIS 97, at **11-12 (S.D.N.Y. Jan. 6, 1997), *aff'd sub nom.*, *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513 (2d Cir. 1998); *PaineWebber*, 171 F.R.D. at 126. The Notice described the proposed Plan of Allocation in detail, and indicated that the deadline for objecting to the Plan of Allocation was January 28, 2009. As of January 14, 2009, **no Class Member has objected to the Plan of Allocation**. Accordingly, the Plan of Allocation should be approved as fair, reasonable and adequate.

III.    CONCLUSION

Based upon the foregoing and upon the entire record herein, Lead Plaintiffs respectfully request that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate, and in the best interests of the Class.

Dated: January 14, 2009                          Respectfully submitted,

                                                 BERNSTEIN LITOWITZ BERGER
                                                    & GROSSMANN LLP


                                                     /s/ Timothy A. DeLange
                                                 TIMOTHY A. DeLANGE

                                                 BLAIR A. NICHOLAS
                                                 TIMOTHY A. DeLANGE
                                                 BRETT M. MIDDLETON
                                                 MATTHEW P. JUBENVILLE
                                                 12481 High Bluff Drive, Suite 300
                                                 San Diego, CA 92130
                                                 Tel:    (858) 793-0070
                                                 Fax:    (858) 793-0323

19

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
TOR GRONBORG
DAVID W. MITCHELL
TRIG SMITH
NATHAN W. BEAR
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel:   (619) 231-1058
Fax:  (619) 231-7423

*Co-Lead Counsel for Plaintiffs Louisiana School Employees' Retirement System and Debra Swiman*

GLASSMAN EDWARDS WADE
   & WYATT, P.C.
B.J. WADE
26 N. Second Street
Memphis, TN 38103
Tel:   (901) 527-4673
Fax:  (901) 521-0904

*Liaison Counsel*

20